# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KIMBERLY EDELSTEIN,
    Plaintiff,

Case No. 1:17-cv-305
Barrett, J.
Litkovitz, M.J.

vs.

JUDGE GREG STEPHENS, *et al.*,
    Defendants.

**REPORT AND
RECOMMENDATION**

Plaintiff Kimberly Edelstein brings this action alleging violations of her rights under federal and state law by defendants Judge Greg Stephens, Butler County, Ohio, Michael Gmoser and Dan Ferguson. Plaintiff filed an amended complaint on July 21, 2017. (Doc. 20). This matter is before the Court on defendants' motion for partial dismissal of the amended complaint (Doc. 22), plaintiff's response in opposition (Doc. 26), defendants' reply in support of the motion (Doc. 27), and plaintiff's sur-reply (Doc. 28-1). Plaintiff has also filed a motion to stay a decision on the motion to dismiss as to Count II of the amended complaint only. (Doc. 30). Defendants have not filed a response to plaintiff's motion.[1]

Plaintiff has requested oral argument on defendants' motion. (Doc. 26). The legal and factual issues involved in this case are not complex and they have been fully briefed by the parties. Pursuant to S.D. Ohio Civ. R. 7.1, the Court therefore finds that oral argument is not "essential to the fair resolution" of this case and denies plaintiff's request.

## I. Background

Defendants have summarized the facts of the amended complaint that are relevant to the Counts they move to dismiss in their memorandum in support of their motion to dismiss. (Doc.

---

[1] Defendants also filed a motion to dismiss the complaint (Doc. 13) and an amended motion to dismiss the complaint (Doc. 14) on June 16, 2017. These motions have been mooted by the filing of plaintiff's amended complaint.

22 at 3-5). Plaintiff has incorporated defendants' summary of the facts into her response. (Doc. 26 at 1). The Court therefore adopts defendants' summary of the facts alleged by plaintiff in the amended complaint for purposes of the motion to dismiss. These allegations of fact are set forth below:

Plaintiff was employed as a staff attorney/magistrate for eight and one-half years by Judge Patricia S. Oney. (Doc. 20, ¶ 9). Plaintiff had been allowed paid time off to observe the Jewish holidays which she had requested by Judge Oney. (¶ 13). On July 28, 2016, Judge Stephens approved plaintiff's request to take eight non-consecutive days off in October to observe the Jewish holidays and requested that she inform the rest of his staff of the specific days she would be out of the office. (¶¶ 25, 27).

On or about August 1, 2016, Judge Stephens informed plaintiff that he was terminating her employment because she did not fit in with his staff. (¶¶ 30, 32). Judge Stephens told plaintiff that the problem was not her work performance and that he would not contest unemployment benefits. (¶¶ 34, 36). He further agreed to provide a letter of recommendation but would not reconsider his decision to let her go after plaintiff said she was responsible for supporting a family of five. (¶ 37). Plaintiff requested that Judge Stephens allow her to stay for an additional three months, which Judge Stephens denied. (¶¶ 38, 39). Judge Stephens provided false and negative comments about plaintiff to unnamed prospective employers. (¶¶ 42, 43).

Judge Stephens and Prosecuting Attorney Gmoser were friends when Judge Stephens worked in the Prosecutor's Office, and Gmoser published false statements to a potential employer of plaintiff concerning her employment record and work performance. (¶¶ 188-190). The statements Edelstein attributes to Gmoser are that her work was "disjointed"; he had trouble "getting stuff back from her on foreclosures"; and he "had problems getting things." (¶ 191).

Plaintiff never worked for or with Gmoser and he had no knowledge of her work performance. Gmoser's statements were made in bad faith, were known to be false, and were made with reckless disregard for the truth. (¶ 197). Gmoser made these statements in support of his friend Judge Stephens in retaliation for plaintiff "litigating against Defendant Stephens and Defendant Butler County, Ohio." (¶ 200). These statements have caused harm to plaintiff's personal and professional reputation. (¶ 201).

Assistant Prosecutor Dan Ferguson, when asked his opinion about Edelstein, stated to a potential employer, "Oh she's horrible." (¶ 208). Ferguson was not in a position to provide a reference, and he made the statement in support of his friend Judge Stephens and in retaliation for plaintiff litigating against Judge Stephens and Butler County. (¶¶ 211, 217).

Plaintiff and Judge Stephens entered into an oral agreement to provide each other three months' notice in the event either party wished to terminate the employment relationship, allegedly altering her previously at-will status. (¶¶ 228, 235). Judge Stephens terminated plaintiff's employment without providing notice, purportedly in breach of the oral agreement. (¶¶ 241-242). Plaintiff had no work performance issues in the nine years she was employed by Judges Oney and Stephens. (¶ 266). She was performing her own job duties and most of the duties of Judge Stephens' personal assistant, and she was handling the entire civil docket for Judge Stephens. (¶ 268). Judge Stephens was not angry or nasty with plaintiff until she requested the Jewish holidays off for October 2016. (¶ 270). Judge Stephens had his Judicial Assistant Melinda Barger present when he terminated plaintiff, and Barger was "smirking at plaintiff while she was being terminated." (¶¶ 271-72). Judge Stephens permitted his staff to provide negative comments about plaintiff to attorneys, court staff and potential employers, and the manner in which Judge Stephens terminated plaintiff gave the impression to other employees

3

of the court and attorneys of the local bar that plaintiff's termination was due to misconduct by her.  (¶¶ 277-78, 291).

Judge Stephens conveyed to plaintiff that she would have job security so long as her work performance was good, and she was led to believe she would not be terminated without just cause.  (¶¶ 322, 325).

Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) against Butler County on January 31, 2017, claiming religious discrimination under Title VII and retaliation.  Her charge was dismissed on February 8, 2017.

## II. Defendants' motion to dismiss (Doc. 22)

Defendants move to dismiss the following Counts of plaintiff's amended complaint with prejudice under Fed. R. Civ. P. 12(6) for failure to state a claim upon which relief can be granted: Counts I, IV, VI, VII, VIII, X, XI, XII, XIII, XIV, XV in part, XVI, XVII, XVIII and XX.  Defendants move to dismiss Count II for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

### A. Count II – Government Employee Rights Act of 1991

Defendants raise a subject matter jurisdiction challenge to plaintiff's claim brought in Count II under the Government Employee Rights Act of 1991 (GERA), 42 U.S.C. § 2000e-16a *et seq*.  (Doc. 22 at 6-7).  The GERA protects certain State employees from discrimination based on religion and other protected bases, including employees chosen by an elected public office holder in a political subdivision of any State to be a member of the elected official's personal staff.  42 U.S.C. § § 2000e-16b(a)(1), 16c(a)(1).  Section 2000e-16c sets forth the applicable enforcement procedures.  It provides in relevant part:

> Any individual referred to in subsection (a) of this section may file a complaint alleging a violation, not later than 180 days after the occurrence of the alleged

violation, with the Equal Employment Opportunity Commission, which, in accordance with the principles and procedures set forth in sections 554 through 557 of Title 5, shall determine whether a violation has occurred and shall set forth its determination in a final order. If the Equal Employment Opportunity Commission determines that a violation has occurred, the final order shall also provide for appropriate relief.

. . . .

Any party aggrieved by a final order under subsection (b) of this section may obtain a review of such order under chapter 158 of Title 28. For the purpose of this review, the Equal Employment Opportunity Commission shall be an "agency" as that term is used in chapter 158 of Title 28.

42 U.S.C. § 2000e-16c(b)(1), (c).

Plaintiff claims that she is entitled to protection under the GERA as a member of the personal staff of Judge Stephens, an elected state official, and that defendant Stephens violated the Act by discriminating against her on the basis of her religion when he terminated her employment after she requested time off from work to observe the Jewish High Holidays. (Doc. 20, ¶¶ 68-75).

Defendant contends that the district court lacks jurisdiction over plaintiff's GERA claim. Defendant argues that under the statutory scheme, a claimant who wishes to pursue a GERA claim must first file a complaint with the EEOC, which shall set forth its determination in a final order. 42 U.S.C. § 2000e-16c(c). Defendant argues that if the complainant is dissatisfied with the EEOC's determination, she may obtain review from a federal court of appeals pursuant to chapter 158 of Title 28; however, there is no provision under the Act for judicial review of a claim by the federal district courts. (Doc. 22 at 6-7, citing *Dyer v. Radcliffe*, 169 F. Supp.2d 770, 775-76 (S.D. Ohio 2001), and collecting cases). Defendant asserts that plaintiff filed an EEOC charge under Title VII, not GERA as the statute requires, and that in any event the district court lacks jurisdiction to consider the claim.

Plaintiff concedes that if the EEOC renders a final decision on a complaint filed under the GERA, the district court does not have jurisdiction over the GERA claim that is the subject of the complaint. (Doc. 26 at 2). However, plaintiff argues that it was the legislative intent that an aggrieved individual not be required to first file an administrative complaint with the EEOC; if the individual opts not to file a complaint with the EEOC, then the district court has "initial jurisdiction" over the GERA claim; and if the EEOC declines to review the GERA complaint, the district court likewise has jurisdiction. (*Id*. at 1-7).

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction may present a facial or factual challenge to the Court's subject matter jurisdiction. *See DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citations omitted). A facial attack on the Court's subject matter jurisdiction alleged in the complaint "merely questions the sufficiency of the pleading." *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). When resolving a facial challenge, the Court accepts the factual allegations of the complaint as true. *DLX, Inc.*, 381 F.3d at 516. If the motion presents a factual challenge, the Court may consider evidence outside the pleadings to determine if jurisdiction exists. *See Nichols v. Muskingum College*, 318 F.3d 674, 677 (6th Cir. 2003). In a factual challenge to the Court's jurisdiction, there is no presumption of truthfulness in favor of the non-moving party. *U.S. v. A.D. Roe Co., Inc.*, 186 F.3d 717, 722 (6th Cir. 1999). Whenever subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. *Cartwright v. Garner*, 751 F.3d 752, 759-60 (6th Cir. 2014). Here, defendants' Rule 12(b)(1) motion presents a facial challenge to Count II of the amended complaint because it challenges the sufficiency of plaintiff's pleading.

Although it does not appear that the Sixth Circuit has addressed the precise jurisdictional

6

issues raised by defendants' motion to dismiss, other federal courts to have addressed these issues appear to be in agreement on the correct interpretation of the GERA. First, these courts have held that if an individual who falls within the purview of the GERA, 42 U.S.C. § 2000e-16c, wishes to file a discrimination claim against her employer, the claim must first be filed with the EEOC. 42 U.S.C. § 2000e-16c(b)(1). *See Helm v. Kansas*, No. 08-2459-JAR, 2010 WL 11527151, at *7 (D. Kan. Mar. 18, 2010), *aff'd*, 656 F.3d 1277 (10th Cir. 2011); *Crain v. Butler*, 419 F. Supp.2d 785, 788 (E.D. N.C. 2005); *Fischer v. New York State Dept. of L.*, 12CIV.0421, 2014 WL 12674462, at *1 (S.D.N.Y. June 20, 2014); *Stitz v. City of Eureka Springs, Ark.*, 9 F. Supp.2d 1046, 1056 (W.D. Ark. 1998). The EEOC determines whether a violation has occurred and issues an opinion through a final order. *Fischer*, 2014 WL 12674462, at *1 (citing 42 U.S.C. § 2000e-16c(b)(1)). "Any party aggrieved by a final order" of the EEOC "may obtain a review of such order under chapter 158 of Title 28 [28 U.S.C. §§ 2341-2350]."[2] 42 U.S.C. § 2000e-16c(c). A party cannot obtain judicial review until the EEOC has issued a "final order." *Dyer*, 169 F. Supp.2d 770, 775. In accordance with the terms of the statute, multiple federal courts have held that judicial review of an EEOC's GERA order lies exclusively in a court of appeals and district courts lack jurisdiction to hear claims covered by GERA. *See, e.g., DePriest v. Milligan*, No. 4:12-cv-00235, 2015 WL 151092, at *10 (E.D. Ark. Jan. 12, 2015), *aff'd*, 823 F.3d 1179 (8th Cir. 2016); *Banks v. First Judicial Dist.*, 544 F. App'x 79, 81 (3d Cir. 2013); *Helm*, 2010 WL 11527151, at *7; *Kelley v. City of Albuquerque*, 542 F.3d 802, 808 n. 4 (10th Cir. 2008); *Crain*, 419 F. Supp.2d at 788; *Stitz*, 9 F. Supp.2d at 1056-57.

The Court finds the language of the statute is clear, and the reasoning of the cases cited

---

[2] "Two provisions of chapter 158 of title 28 create jurisdiction in the courts of appeals to review certain federal agency decisions": 28 U.S.C. §§ 2342, 2349(a). *Umuhoza v. U.S. Dept. of Homeland Sec.*, No. 3:05-cv-164, 2008 WL 11352573, at *8 (S.D. Ohio Aug. 28, 2008).

above is persuasive. Plaintiff has not cited any authorities that call the holdings of these cases into question. Plaintiff was required to first obtain a final decision from the EEOC before seeking judicial review of her GERA claim, and she could obtain judicial review only in the court of appeals. Because the district court does not have jurisdiction to review a decision of the EEOC on a GERA complaint, this Court lacks subject matter jurisdiction over plaintiff's GERA claim. Defendants' motion to dismiss Count II under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction should be granted. Plaintiff's motion to stay a decision on defendants' motion to dismiss the claim pending a decision by the EEOC on plaintiff's corrected charge submitted to the agency under the GERA (Doc. 30) should be denied as a stay would serve no purpose.[3]

## B. Count IV- Equal Protection Claim

Defendants move to dismiss the remaining claims they address in their motion under Fed. R. Civ. P. 12(b)(6). In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Nevertheless, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While the Court must accept all

---

[3] Plaintiff states that she resubmitted her administrative GERA charge to the EEOC on October 13, 2017, for clarification of whether the EEOC is exercising jurisdiction over the charge and to allow the EEOC an opportunity to consider the charge on the merits. (Doc. 30).

well-pleaded factual allegations as true, the Court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

Plaintiff alleges in Count IV that defendant Butler County violated her Equal Protection rights through its facially neutral custom or policy under Ohio Rev. Code § 325.19 designating Christmas as a "legal holiday." (Doc. 20, ¶¶ 86-102). Section 325.19 provides in relevant part:

> In addition to vacation leave, a full-time county employee is entitled to eight hours of holiday pay for New Year's day, Martin Luther King day, Washington-Lincoln day, Memorial day, Independence day, Labor day, Columbus day, Veterans' day, Thanksgiving day, and Christmas day, of each year.

Ohio Rev. Code Ann. § 325.19(D)(1). Plaintiff alleges Butler County's policy allows Christians to observe a religious holiday without utilizing vacation time; allows Christians to exercise their First Amendment right to freely exercise their religion without retribution, threat of job loss, or fear of reprisals; and protects only Christians' right to freely exercise their religion by observing Christmas while not protecting other individuals' right to freely exercise their religion. Plaintiff alleges the policy does not promote a compelling state interest. Plaintiff alleges the facially neutral policy or custom is applied in a discriminatory manner because members of other religions must use vacation time to observe their religion and are vulnerable to termination for

requesting a religious holiday off of work. Plaintiff alleges the policy does not provide a reasonable accommodation for employees who practice a religion other than Christianity. Plaintiff alleges Butler County's policy placed substantial pressure on her to violate her religious beliefs or risk losing her job because as an observant Jew, she was required to abstain from work on The High Holidays. Plaintiff alleges the policy violated her right to the free exercise of her religion as guaranteed by the First Amendment and her right to equal protection of the laws under the Fourteenth Amendment. Plaintiff alleges Butler County's deprivation of her equal protection rights allowed its official, defendant Stephens, to terminate her for requesting time off of work for the Jewish High Holidays. She alleges she has been damaged as a direct result of Butler County's custom and/or policy.

Defendant Butler County argues that its recognition of Christmas as a paid policy under Ohio Revised Code § 325.19, together with its failure to implement a policy that would protect non-Christians who seek time off for different religious holidays, did not violate plaintiff's equal protections rights. (Doc. 22 at 7-9). Defendant relies on Sixth Circuit case law holding that a comparable federal statute declaring Christmas day to be a legal public holiday, 5 U.S.C. § 6103, does not violate the First Amendment establishment clause or a non-Christian's equal protection rights and that there is a legitimate, secular purpose for establishing Christmas as a "legal public holiday." *Ganulin v. U.S.*, 71 F. Supp.2d 824, 837 (S.D. Ohio 1999), *aff'd*, 238 F.3d 420 (6th Cir. 2000). Defendant also relies on Sixth Circuit case law for the proposition that while an employee is entitled to reasonable accommodations for the exercise of his or her religion, the employer is not required to accommodate the employee in the manner the employee finds most desirable. *Creusere v. Bd. of Educ. of City Sch. Dist. of City of Cincinnati*, 88 F. App'x 813, 819-20 (6th Cir. 2003).

In response, plaintiff alleges that defendant's argument is flawed because it misconstrues the nature of her claim. (Doc. 26 at 14-17). Plaintiff asserts that she brings her claim under the free exercise clause of the First Amendment, not the establishment clause. Plaintiff alleges that Butler County's "holiday policy" has the effect of restricting her right to freely exercise her religion because she can be terminated for taking time for work, she can be denied time off work for the Jewish holidays, and she must use vacation time or make up hours if she takes time off. Plaintiff alleges that Butler County has not created a policy that allows for an accommodation but has left it to supervisors to handle such circumstances, and supervisors may refuse to provide a reasonable accommodation to an employee as occurred here.

In reply, defendants challenge plaintiff's claim that Butler County's policy, which adopted Ohio Revised Code § 325.19 and made Christmas one of eight paid legal holidays, violated plaintiff's equal protection rights. Defendants deny that the policy allowed plaintiff to be terminated for requesting or for taking time off work to practice her religion, and defendants argue that plaintiff had the same rights as other employees under the policy to request time off for certain religious observances and to be accommodated if her employer could reasonably do so without undue hardship. (Doc. 27 at 5, citing 42 U.S.C. § 2000e(j) ("The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.")).

The Equal Protection clause of the Fourteenth Amendment requires that the government treat similarly situated persons in a like manner. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The Equal Protection clause prohibits disparate treatment that is

"deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Oyler v. Boles,* 368 U.S. 448, 456 (1962). The First Amendment's Free Exercise Clause, made applicable to state and local governments by the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. "At a minimum, the protections of the Free Exercise Clause pertain if the law at issue discriminates against some or all religious beliefs or regulates or prohibits conduct because it is undertaken for religious reasons." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993) (citing *Braunfeld v. Brown,* 366 U.S. 599, 607 (1961) (plurality opinion); *Fowler v. Rhode Island,* 345 U.S. 67, 69-70, 73 (1953)). In the context of the free exercise clause, "a law that is neutral and of general applicability need not be justified by a compelling state interest even if the law has the incidental effect of burdening a particular religious practice." *Ward v. Members of Bd. of Control of E. Michigan U.*, 700 F. Supp.2d 803, 817 (E.D. Mich. 2010)

Plaintiff has not stated a claim to relief against Butler County for a violation of her First Amendment and equal protection rights. In essence, plaintiff's claim against Butler County is that the County promulgated a facially neutral custom or policy designating Christmas as a paid legal holiday, which was applied against her in a discriminatory manner and in a manner that violated her right to freely exercise her religion. Plaintiff's claim against Butler County does not implicate the free exercise clause of the First Amendment. Butler County's policy establishing Christmas as a paid legal holiday for county employees is a neutral law that does not discriminate against a particular religion or set of religious beliefs or prohibit any conduct because it is undertaken for religious reasons. *See Church of the Lukumi Babalu Aye, Inc.*, 508 U.S. at 532. Plaintiff has not alleged any facts to show that Butler County's neutral policy of

general applicability designating Christmas as a paid legal holiday, as applied to her, violated her First Amendment right to freely exercise her religion.

Nor has plaintiff stated a claim to relief against Butler County for a violation of her equal protection rights under the theory that by adopting Christmas as a paid legal holiday, Butler County treated her differently than similarly situated individuals based on her religion. The Sixth Circuit has acknowledged that because there are "legitimate secular purposes for establishing Christmas as a legal public holiday," it follows that the establishment of Christmas day as a legal public holiday neither violates an individual's fundamental rights nor discriminates against her based on her religion or other suspect criteria. *Ganulin*, 71 F. Supp.2d at 837-38. Plaintiff has not alleged any facts to show there are unique circumstances in this case such that application of the paid Christmas holiday policy violated her fundamental rights or discriminated against her based on her religion.[4] Insofar as plaintiff alleges the policy enabled her supervisor to treat her unlawfully by terminating her based on her religion, plaintiff has not stated a plausible claim to relief against Butler County. The Butler County policy establishing Christmas as a paid legal holiday did not somehow relieve plaintiff's supervisors of their obligation to reasonably accommodate plaintiff's religion. *See Creuseure*, 88 F. App'x at 818-19 (a reasonable accommodation is all the law requires, even though the accommodation may be less than ideal). To the extent plaintiff's supervisors failed to comply with their legal obligations to reasonably accommodate plaintiff's religion, their failure to abide by the law cannot logically be attributed to Butler County's policy establishing Christmas as a paid legal holiday. To the

---

[4] Plaintiff alleges in her sur-reply that she was "denied the right to use vacation time for a religious holiday observance when she was terminated for even asking for the reasonable accommodation. However, Defendant Stephens [sic] other staff, who were friends of his, did not have a problem getting time off, regardless of whether a religious holiday was involved or not." (Doc. 28-1 at 5). This allegation is not properly considered in connection with defendants' motion to dismiss. Plaintiff makes this allegation for the first time in her sur-reply to the motion to dismiss and it is not part of the amended complaint.

contrary, plaintiff concedes her previous supervisor had accommodated her religion in the past. Plaintiff does not allege any facts which suggest that similar accommodations could not continue to be made under Butler County's policy so as to satisfy her employer or supervisor's legal obligations to reasonably accommodate her religion.

Plaintiff has failed to state a claim to relief against Butler County for violation of her First Amendment and equal protection rights based on Butler County's paid Christmas holiday policy. Count IV of the amended complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).

## C. Count VI – Substantive due process claim against defendant Stephens

Plaintiff alleges in Count VI of the amended complaint that defendant Stephens violated her right to substantive due process under the Fourteenth Amendment by terminating her employment "suddenly and without notice." (Doc. 20, ¶ 111). Plaintiff alleges she was a "public figure" and terminating her in this manner "created the impression that [she] had committed a serious violation of procedure, law or ethics and devastated [p]laintiff's reputation in the legal community." (*Id.*, ¶ 112). She alleges defendant Stephens' actions were an arbitrary abuse of power by a government official and that he acted with malice, ill will, and/or a spirit of revenge and further, upon information and belief, Stephens used his status as a sitting judge and his official power to discriminate against plaintiff and to damage her reputation in the legal community, which affected her career. Plaintiff further alleges that Stephens deprived her of the "fundamental rights of property and liberty without due process." (*Id.*, ¶ 114). She claims that upon information and belief, over a period of eight months he published and/or knowingly made false statements to members of the legal community about plaintiff's reputation and professionalism which constituted defamation per se. She alleges he stated that plaintiff "was a poor worker, to wit: Plaintiff procrastinated, Plaintiff destroyed work product, Plaintiff was

dishonest, Plaintiff was abusive to co-workers, and Plaintiff acted unprofessionally in the workplace." Plaintiff alleges these comments affected her professional connections and reputation and resulted in her being unable to secure employment and effectively prevented her from continuing in her career. Plaintiff alleges as a result of the continued actions she was deprived of property and liberty because she could not successfully pursue her career, pay back her student loans, or support her family. Plaintiff alleges that as a result of defendant Stephens' actions, she suffered damages including loss of income and benefits, loss of career, loss of reputation, pain and suffering, mental and emotional distress, loss of benefits, and loss of self-esteem. (*Id.*, ¶¶ 110-24).

Defendant Stephens moves to dismiss plaintiff's substantive due process claim on the ground the circumstances leading to and following plaintiff's discharge from public employment do not state a claim for violation of her substantive due process rights. Defendant argues that under settled law, a public employee cannot bring a substantive due process claim based on improper discharge from employment. (Doc. 22 at 9, citing *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir. 1992); *Holthaus v. Bd. of Educ., Cincinnati Public Schools*, 986 F.2d 1044 (6th Cir. 1993)). Defendant further contends that to state a cognizable substantive due process claim, the alleged facts must demonstrate conduct that was intended to injure her, that was unjustified by any government interest, and that is conscience-shocking in nature. (*Id.* at 11, citing cases). Defendant argues that plaintiff's allegations do not satisfy this standard.

In response, plaintiff alleges that her substantive due process claim is not based on her termination alone but also on "defamation and abuse of official power to deliberately and maliciously ruin Plaintiff's career, reputation and employment opportunities." (Doc. 26 at 18). She claims that by "disseminating derogatory comments about [her] and terminating her

15

employment in a manner to create an impression among the legal community that she had engaged in professional misconduct," defendant deprived plaintiff of her liberty and violated her substantive due process rights. (*Id*. at 18-19). Plaintiff alleges that liberty encompasses an individual's right to engage in her chosen occupation. (*Id*., citing cases). Plaintiff alleges that the United States Supreme Court has repeatedly held that an individual is deprived of a liberty interest when the government stigmatizes a person or casts aspersions on them and thereby causes a loss of other employment opportunities. (*Id*. at 18, citing *Paul v. Davis*, 424 U.S. 693, 705, 724 (1976) (citing *Cafeteria Workers v. McElroy*, 367 U.S. 886, 898 (1961)); *Siegert v. Gilley*, 500 U.S. 226, 242 (1991)).[5] Plaintiff argues that a substantive due process claim can be premised on the publication of defamatory statements that are part of a "'personal unwarranted attack' on the plaintiff's reputation and character." (*Id*. at 21, citing *Myers v. Delaware County, Ohio*, No. 2:07-cv-844, 2008 WL 4862512 (S.D. Ohio Nov. 7, 2008); *Waters v. Drake*, 105 F. Supp.3d 780, 801 (S.D. Ohio 2015)).

In reply, defendant Stephens asserts that plaintiff's allegations do not satisfy the elements of a claim for a violation of substantive due process rights based on deprivation of a liberty interest because plaintiff's termination from her at-will personal staff position did not deprive her of a government right or entitlement; she has not alleged facts showing she was unable to use her law license or obtain gainful employment; and the statements she alleges defendant made are not "conscience-shocking." (Doc. 27 at 6-10).

The Fourteenth Amendment to the United States Constitution forbids a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const.

---

[5] Plaintiff cites the United States Supreme Court's decision in *Siegert* for the proposition that "stigmatization deprives a person of liberty when it causes loss of present or future government employment." (Doc. 26 at 18, citing *Siegert*, 500 U.S. at 242). Plaintiff has cited the dissenting opinion in *Siegert*. The relevant holding of the majority in *Siegert* is discussed *infra*.

amend XIV, § 1. There are two categories of claims under the substantive due process clause: (1) claims asserting that unreasonable and arbitrary official actions resulted in the deprivation of a substantive right specified in the Constitution, other than the deprivation of procedural due process rights guaranteed by the Fourteenth Amendment; and (2) claims "directed at official acts which may not occur regardless of the procedural safeguards accompanying them," for which the test is "whether the conduct complained of shocks the conscience of the court." *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993) (citing *Parratt v. Taylor*, 451 U.S. 527, 536 (1981); *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989)); *Doe v. Ohio State U.*, 239 F. Supp.3d 1048, 1077-78 (S.D. Ohio 2017). "[O]nly the most egregious official conduct" violates the substantive due process clause under the "shocks the conscience" standard. *Id.* at 1078 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

Substantive due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Beydoun v. Sessions*, 871 F.3d 459, 466 (6th Cir. 2017) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). "The interests protected by substantive due process are . . . much narrower than those protected by procedural due process." *Id.* (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003). The rights protected under the substantive due process clause are only "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* at 466-67 (quoting *Glucksberg*, 521 U.S. at 720-21 (internal quotations and citations omitted). These generally include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Myers,* 2008 WL 4862512, at *9 (quoting *Glucksberg,* 521 U.S. at

720) (internal citations omitted)). "A fundamental right will only be implicated by government action that, at a minimum, '*significantly* interferes with the exercise of a fundamental right.'" *Beydoun*, 871 F.3d at 467 (quoting *Zablocki v. Redhail*, 434 U.S. 374, 388 (1978) (emphasis added by *Beydoun*)).

Injury to reputation alone is not a protected "liberty" interest. *Siegert*, 500 U.S. at 232 (citing *Paul,* 424 U.S. at 708-709). A claim for reputational harm is cognizable only if both elements of a "stigma plus" test are met: i.e., the governmental action "both damaged [a plaintiff's] reputation (the stigma) and . . . 'deprived [him or her] of a right previously held under [the] law' (the plus)." *Beydoun*, 871 F.3d at 469 (quoting *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 502 (6th Cir. 2007) (quoting *Paul,* 424 U.S. at 708). In *Ohio State U.*, 239 F. Supp.3d at 1076, this Court has set forth the five factors that a plaintiff must show in order to make out a due process claim based on a "liberty" interest in the plaintiff's reputation: (1) "the reputational harm or 'stigmatizing statements' must occur in connection with 'the loss of a governmental right, benefit, or entitlement,'" *Mertik*, 983 F.2d at 1363, *Med Corp., Inc. v. City of Lima*, 296 F.3d 404, 414 (6th Cir. 2002); (2) the reputational injury must foreclose the plaintiff's "freedom to take advantage of other employment [or educational] opportunities," *Ludwig v. Bd. of Trustees of Ferris State U.*, 123 F.3d 404, 410 (6th Cir. 1997); (3) the statements alleged to have caused reputational harm "must be made public"; (4) the plaintiff must claim the statements were false, *Id.*; and (5) the public dissemination of the statements "must have been voluntary," *Id.*

The second category of claims protected by the substantive component of the due process clause covers claims directed at conduct that "shocks the conscience of the court." *Id.* at 1077 (citing *Mertik,* 983 F.2d at 1367-68; *Myers*, 2008 WL 4862512, at *9-10). To satisfy the

18

constitutional standard, "something more than misleading statements must be shown." *Miller v. Delaware County Com'rs*, No. 2:13-cv-501, 2014 WL 457552, at *7 (S.D. Ohio Feb. 4, 2014).

Applying this law to the allegations of the complaint, the Court finds that plaintiff has failed to state a claim to relief against defendant Stephens for violation of her substantive due process rights. Plaintiff alleges that defendant Stephens' statements and the manner in which he terminated her employment damaged her reputation and harmed her future employment prospects. Accepting plaintiff's factual allegations as true, she has not alleged a deprivation of a fundamental interest that is protected by the Fourteenth Amendment. Plaintiff's allegations do not show that defendant Stephens' manner of terminating her employment and his statements both damaged her reputation *and* deprived her of a right previously held under the law so as to satisfy the "stigma-plus" test. *See Beydoun*, 871 F.3d at 467; *see also Paul*, 424 U.S. at 708-709 (plaintiff who alleged that officials stigmatized his reputation so as to seriously impair his future employment opportunities by including his photo in a "flyer" of "active shoplifters" that was distributed before he had been arrested and before the charge was dismissed did not have a liberty interest protected by the Fourteenth Amendment). Plaintiff does not allege "the loss of a governmental right, benefit, or entitlement." *Ohio State U.*, 239 F. Supp.3d at 1076; *Mertik*, 983 F.2d at 1363. Further, the reputational harm plaintiff alleges does not "foreclose [her] freedom to take advantage of other employment [or educational] opportunities." *Id.* (citing *Ludwig*, 123 F.3d 410). While statements plaintiff attributes to defendant Stephens may have hampered her job search, her allegations do not suggest that Stephens' actions and statements curtailed plaintiff's freedom to work in any sense. *See Beydoun*, 871 F.3d at 469.

Further, plaintiff's allegations against defendant Stephens do not satisfy the "shocks the conscience" standard. Plaintiff alleges that Stephens terminated her in a sudden manner without

notice and made statements that she was a poor worker, she procrastinated, she destroyed work product, she was dishonest, she was abusive to co-workers, and she acted unprofessionally in the workplace. These statements do not come close to the types of statement that this Court has previously found sufficiently egregious to "shock the conscience." *See Miller,* 2014 WL 457552, at *7 (*comparing Beck v. Benton,* No. 3:09-cv-2179, 2010 WL 481254, at *4 (N.D. Ohio Feb. 5, 2010) ("a police officer's false statement in the context of an investigation does not shock the conscience") *with Myers,* 2008 WL 4862512, at *10-11 ("a defendant's defamatory press release that a fellow officer had child pornography on his computer 'shocked the conscience' when the defendant knew the pornography was related to an official investigation yet released the statement anyway because of a personal vendetta against the plaintiff, despite advice 'in the strongest terms' that the press release violated department policies."). *See also Waters,* 105 F. Supp.3d at 801 (distinguishing *Myers* on the ground that the allegations at issue in *Myers* involved "knowingly false accusations of criminal conduct against the plaintiff"). The statements plaintiff attributes to defendants Stephens are not so "truly extraordinary in nature" or "egregious" as to qualify as conscience shocking. *Draw v. City of Lincoln Park,* 491 F.3d 550, 556 (6th Cir. 2007); *Ohio State U.,* 239 F. Supp.3d at 1078.

Plaintiff's allegations do not permit a finding that defendant Stephens violated a fundamental liberty interest by terminating her employment suddenly and without notice and by making allegedly defamatory statements about her to third parties. Even assuming defendant Stephens' conduct and statements harmed plaintiff's reputation and hindered her efforts to find employment in her field, his statements and conduct were not of such an extraordinary and egregious nature as to shock the conscience. Count VI of the amended complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim to relief.

### D. Counts VII, VIII- Substantive Due Process Claims against defendants Gmoser and Ferguson

Plaintiff also brings claims against defendants Gmoser and Ferguson for violations of her substantive due process rights. (Doc. 20, ¶¶ 125-42, 143-61). Plaintiff alleges that while acting in their official capacities, these defendants knowingly made false and malicious statements about her with ill will and in a spirit or revenge, or in the alternative negligently and with reckless disregard for the truth. Plaintiff claims the statements have damaged her, including by causing loss of career and loss of reputation. Plaintiff alleges that although Gmoser had no knowledge of plaintiff's job duties, work relationships, credentials, character or work habits, he made or published statements to third parties that she was a poor worker. She contends he made or published statements to members of the legal community that she failed to submit and/or finish her work, she procrastinated, and she failed to perform her duties as a staff attorney and magistrate, to the detriment of other county offices. Plaintiff also alleges that Gmoser contacted her subsequent employer, the Wood County Prosecutor's office, and complained about the lawsuit she had instituted four days earlier against Gmoser and attempted to influence her employer to support Gmoser in this lawsuit and/or terminate plaintiff's employment. Plaintiff asserts that on information and belief, plaintiff's new employer was angry with her for suing Gmoser, a friend of the Prosecutor, and attempted to persuade plaintiff to dismiss the lawsuit. Plaintiff claims she refused and was terminated shortly thereafter. (*Id.*, ¶¶ 125-42). Plaintiff alleges that she had some professional interactions with defendant Ferguson and his staff while she was employed at Butler County, but to her knowledge they were positive interactions and Ferguson did not complain about her. Plaintiff claims that while acting in his official capacity as Assistant Prosecutor for Butler County, Ferguson published and made statements to third parties that plaintiff "was a poor worker, a horrible person, that she procrastinated, and/or Plaintiff failed

to perform her duties as Staff Attorney and Magistrate, to the detriment of other county offices[.]" (*Id.*, ¶¶ 143-161).

Defendants Gmoser and Ferguson move to dismiss plaintiff's substantive due process claims asserted against them on the ground the statements plaintiff attributes to them do not "shock the conscience." (Doc. 22 at 10-12). Plaintiff alleges that a reasonable person could find that defendants' conduct and statements deprived her of a "particular constitutional guarantee or were conscience-shocking and an arbitrary abuse of government power to oppress Plaintiff's rights." (Doc. 26 at 20). Plaintiff relies on *Myers*, 2008 WL 4862512, to show that a substantive due process claim can be premised on the publication of defamatory statements that are part of a "'personal unwarranted attack' on the plaintiff's reputation and character." (*Id.* at 21).

Plaintiff fails to state a substantive due process claim against defendants Gmoser and Ferguson for the same reasons discussed *supra* in connection with Count VI of her amended complaint against defendant Stephens. Plaintiff has not alleged that these defendants deprived her of a fundamental right by making disparaging statements about her work performance and her character or personality, or that Gmoser did so by complaining to her subsequent employer about her filing this lawsuit, attempting to enlist her employer's support, and/or attempting to persuade her employer to terminate her employment. Nor were the statements and conduct plaintiff attributes to Gmoser and Ferguson so egregious that they "shock the conscience." Their statements and conduct are not comparable to the defamatory statements at issue in *Myers*, 2008 WL 4862512. Counts VII and VIII of the amended complaint alleging violations of plaintiff's substantive due process rights by defendants Gmoser and Ferguson should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### E. Count X– Public Policy Claim

Plaintiff alleges in Count X of the amended complaint that defendants' post-termination conduct was in retaliation for plaintiff's pursuit of litigation related to her unlawful termination. She alleges defendants acted deliberately with the intent to harm plaintiff's employment efforts and destroy her career. Plaintiff alleges that retaliation for pursuing litigation related to her alleged unlawful termination is contrary to public policy. (Doc. 20, ¶¶ 173-85).

Defendants move to dismiss plaintiff's Ohio public policy tort claim. (Doc. 22 at 12-13). Defendants allege plaintiff is not entitled to pursue this claim because Ohio Rev. Code § 4112.02 provides an adequate remedy for individuals who claim retaliation for engaging in protected conduct, even if the retaliation occurs post-termination. *See, e.g., Maxwell v. Cuyahoga Metro. Hous. Auth.*, No. 05-cv-2135, 2008 WL 746818, at *17 (N.D. Ohio Mar. 18, 2008) (finding the plaintiff had stated a prima facie case under § 4112.02 based on post-employment retaliation).

In response, plaintiff argues that she has satisfied the elements of a public policy tort claim under Ohio law. (Doc. 26 at 26-30). Plaintiff contends that if the Court finds her retaliation claims are not fully addressed by Ch. 4112, then she should be permitted to proceed on her public policy tort claim for post-employment retaliation related to her discharge.

The elements of the tort of wrongful discharge in violation of public policy under Ohio law are:

> (1) that clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*See v. Cleveland Clinic Found.*, 222 F. Supp.3d 569, 574 (N.D. Ohio 2016) (citing *Leininger v. Pioneer Natl. Latex*, 875 N.E.2d 36, 39-40 (Ohio 2007)). In order to prove the jeopardy element, a plaintiff must show that absent a common law tort claim a clear policy would be compromised. *Leininger*, 875 N.E.2d at 41. "[I]t is unnecessary to recognize a common-law claim when remedy provisions are an essential part of the statutes upon which the plaintiff depends for the public policy claim and when those remedies adequately protect society's interest by discouraging the wrongful conduct." *Id.* at 42-43; *accord Wiles v. Medina Auto Parts*, 773 N.E.2d 526, 531 (Ohio 2002) ("Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests."). In *Leininger*, 875 N.E.2d at 44, the Court held that Ohio Rev. Code Ch. 4112 adequately protects Ohio's policy against age discrimination in employment through the remedies it offers to aggrieved employees. Both state and federal courts have held subsequent to *Wiles* that a common law wrongful discharge claim for violating the public policy established by Chapter 4112 does not exist. *Farrell v. Tipp Mach. & Tool, Inc.*, No. 3:02-cv-418, 2005 WL 2372857, at *10 (S.D. Ohio Sept. 26, 2005) (collecting cases).

Plaintiff has not stated a public policy tort claim under Ohio law. Plaintiff has not shown that she lacks an adequate remedy for retaliation under Ohio Rev. Code Ch. 4112. Plaintiff's public policy tort claim asserted in Count X of the amended complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).[6]

### F. Counts XI, XII- Defamation claims against defendants Ferguson and Gmoser

Plaintiff brings claims for defamation against defendant Gmoser in Count XI of the amended complaint (Doc. 20, ¶¶ 186-203) and against defendant Ferguson in Count XII of the

---

[6] Plaintiff argues in her response that her allegations also satisfy the elements of a First Amendment retaliation claim. (Doc. 26 at 29). The Court need not address this argument because plaintiff did not present a First Amendment retaliation claim in her amended complaint.

amended complaint (*Id.*, ¶¶ 204-220). Plaintiff alleges that on or after February 20, 2017, Gmoser, an elected official of Butler County, while presenting himself as acting within the scope of his employment made false statements to a potential employer of plaintiff regarding plaintiff's employment, character, and work performance. Plaintiff alleges that upon information and belief, Gmoser stated to the potential employer that her "work was 'disjointed,'" that his problem with plaintiff was "getting stuff back from her on foreclosures," and he "had a problem getting things." (*Id.*, ¶ 191). She alleges his statements implied she was a poor worker, she procrastinated, and/or her poor work affected other Butler County offices. Plaintiff alleges that Gmoser had no knowledge of her work habits, character or work ethic, but he misrepresented he did and made the statements as if they were true and based on facts of which he had personal knowledge. Plaintiff alleges the statements related to her reputation and professionalism and constituted defamation per se. She alleges the statements were made in bad faith and for no legitimate business purpose; they were known to be false and/or were made with reckless disregard for the truth; and Gmoser acted with actual malice in making the false statements. Plaintiff also alleges that Gmoser acted with ill will, hatred, and in a spirit of revenge, and with a great probability of causing substantial harm to plaintiff's reputation, when he made negative and/or false statements about her and her work performance to members of the legal community and/or potential employers. Plaintiff alleges Gmoser made these statements in support of his friend, Judge Stephens, and in retaliation for plaintiff litigating against Stephens and Butler County, and Gmoser made the statements knowing that such statements would damage plaintiff's reputation and/or prevent her from securing employment. Plaintiff alleges the statements have harmed her personal and professional reputation and caused other damages, and she alleges that Gmoser is liable for defamation individually and in his official capacity as a

public official of Butler County. (*Id.*, ¶¶ 186-203). Plaintiff essentially repeats these allegations against Ferguson except she alleges that defendant Ferguson stated to the potential employer of plaintiff, "Oh she's horrible" and "clarified this statement with additional statements which implied that Plaintiff was a poor worker, that Plaintiff did not have a pleasant personality, [and] that Plaintiff procrastinated or otherwise did not fulfill her job duties to the detriment of other Butler County offices." (*Id.*, ¶¶ 208, 209).

Defendants Gmoser and Ferguson move to dismiss plaintiff's defamation claims against them on the ground the statements are constitutionally protected opinion and therefore are not defamatory. (Doc. 22 at 14-15, citing *Bentkowski v. Scene Magazine*, 637 F.3d 689, 693-94 (6th Cir. 2011)). They allege that once a determination is made that the alleged statements are not defamatory, the court's inquiry is at an end and the question of actual malice does not come into play. (*Id.* at 15).

In response, plaintiff argues her allegations satisfy the five elements of a defamation claim under Ohio law. (Doc. 26 at 7-8, 10-14). Plaintiff alleges the statements were false, they were about her, they were published without privilege to a third party, the statements were made either negligently or maliciously, and the comments constituted defamation per se as they related to plaintiff's professional reputation. (*Id.* at 8, citing *Gosden v. Louis*, 687 N.E.2d 481 (Ohio App. 9th Dist. 1996)).

Under Ohio law, "defamation occurs when a publication contains a false statement 'made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame or disgrace, or affecting a person adversely in his or her trade, business or profession.'" *Jackson v. Columbus*, 883 N.E.2d 1060, 1064 (Ohio 2008) (quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 651

N.E.2d 1283, 1298 (Ohio 1995)). To state a claim to relief for defamation, plaintiff must allege facts showing: "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Boulger v. Woods*, No. 2:17-cv-186, 2018 WL 527009, at *8 (S.D. Ohio Jan. 24, 2018) (citing *Susan B. Anthony List v. Driehaus*, 779 F.3d 628, 632-33 (6th Cir. 2015) (quoting *Am. Chem. Soc. v. Leadscope, Inc.*, 978 N.E.2d 832, 852, ¶ 77 (Ohio 2012)). Failure to establish any one of these elements is fatal to the claim. *Id.*

To determine whether a statement is an assertion of fact, "Ohio courts consider the totality of the circumstances, including (1) the specific language used; (2) whether the statement is verifiable; (3) the general context of the statement; and (4) the broader context in which the statement appeared." *Id.*, at *9 (citing *Murray v. HuffingtonPost.com, Inc.*, 21 F. Supp.3d 879, 884-85 (S.D. Ohio 2014) (quoting *Bentkowski*, 637 F.3d at 693-94). "[I]t is for the court to decide as a matter of law whether certain statements alleged to be defamatory are actionable or not." *Id.* (citing *Am. Chem. Soc.*, 978 N.E.2d at 853, ¶ 78) (quoting *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 6 Ohio St.3d 369, 372, 453 N.E.2d 666 (1983)).

Plaintiff has failed to state a claim to relief against defendants Gmoser and Ferguson for defamation under Ohio law. Plaintiff has not satisfied the first element of a defamation claim: that a false statement of fact was made. In making this determination, this Court must review each alleged actionable statement and "determine whether the allegedly defamatory statement has a precise meaning and thus is likely to give rise to clear factual implications." *Boulger*, 2018 WL 527009, at *9 (citing *Bentkowski*, 637 F.3d at 694) (quoting *Wampler v. Higgins*, 93 Ohio

St.3d 111, 127-28, 752 N.E.2d 962 (2001)). Accepting plaintiff's allegations as true, none of the statements Gmoser made and/or published satisfy this standard. Defendant Gmoser made or published statements that plaintiff's "work was 'disjointed,' that the problem he had with Plaintiff was 'getting stuff back from her on foreclosures,' and he "had a problem getting things.'" (Doc. 20, ¶ 191). These are vague characterizations of plaintiff's work and issues Gmoser purports to have had with plaintiff's work. The statements are not verifiable by objective means. The fact that plaintiff disagrees with Gmoser's characterizations of her work habits and work product and disputes the accuracy of the characterizations does not make the statements actionable as factual statements under defamation law. Because Gmoser's statements cannot objectively be construed as statements of fact, the Court's inquiry is at an end as to plaintiff's defamation claim against Gmoser. Plaintiff's allegations against Gmoser do not satisfy the essential elements of a defamation claim under Ohio law.

Plaintiff's allegations against defendant Ferguson likewise fail to satisfy the first element of a defamation claim. The only specific statement Ferguson made or published about plaintiff was, "Oh she's horrible." (Doc. 20, ¶ 208). This is a vague statement of opinion that cannot be objectively disproved. Plaintiff alleges that Ferguson "clarified the statement with additional statements which implied that Plaintiff was a poor worker, that Plaintiff did not have a pleasant personality, that Plaintiff procrastinated or otherwise did not fulfill her job duties to the detriment of other Butler County offices." (*Id.*, ¶ 209). Statements that plaintiff was "a poor worker" and "did not have a pleasant personality" are matters of opinion that are not capable of verification. Plaintiff does not allege that Ferguson made a particular statement concerning her failure to "fulfill her job duties to the detriment of other Butler County offices." (*Id.*). Thus, the amended

complaint does not permit a finding that Ferguson made a factual statement to this effect. Plaintiff has not satisfied the first element of her defamation claim against defendant Ferguson.

The allegations of the amended complaint do not permit a finding that any allegedly defamatory statement that plaintiff attributes to Gmoser or Ferguson was "a false statement of fact." *Boulger*, 2018 WL 527009, at *9. Plaintiff has failed to satisfy the first element of a defamation claim as to either individual defendant. Plaintiff's defamation claims asserted against Gmoser and Ferguson in Counts XI and XII of the amended complaint should be dismissed for failure to state a claim to relief.

### G. Counts XIII, XX- Vicarious liability claims against Butler County and defendants Gmoser and Ferguson in their official capacities

Plaintiff seeks to hold Butler County liable for defamation committed by defendants Gmoser and Ferguson while acting in their official capacities (Count XIII) and to hold defendant Gmoser vicariously liable for defamation committed by Ferguson while acting in his official capacity. Because plaintiff has failed to state a claim to relief for defamation against defendants Gmoser and Ferguson, her claims seeking to hold defendants Butler County and Gmoser vicariously liable for defamation should be dismissed.

### H. Count XV- Defamation claim against defendant Stephens based in part on statements to his attorney

Plaintiff alleges in Count XV of the amended complaint that defendant Stephens defamed her by making statements to various third parties regarding plaintiff's character and work performance. (Doc. 20, ¶¶ 245-62). These include statements that Stephens allegedly made to his attorney, Linda Woeber. (*Id.*, ¶ 247). Plaintiff alleges that: "Upon information and belief, between August 1, 2016 to September 20, 2016, Stephens made statements to his attorney, Linda Woeber, that Plaintiff had a temper and caused disturbances at work, that Plaintiff procrastinated,

missed deadlines, and was a poor employee." (*Id.*). Defendant Stephens moves to dismiss plaintiff's defamation claim as it relates to his alleged statements to his attorney on the ground his statements to his attorney are absolutely privileged. (Doc. 22 at 15). Defendant argues his communications with his attorney are entitled to an absolute privilege as (1) communications made during the course of a judicial proceeding, and (2) attorney-client communications covered by Ohio Rev. Code § 2317.02, which governs the attorney-client privilege for communications in Ohio that are not addressed by the common law. Defendant argues that the Court should resolve at this early stage of the case whether the allegations related to communications he made to his attorney must be dismissed from the lawsuit and whether discovery of the communications must be barred.

In response, plaintiff alleges that Stephens' statements to his attorney are not covered by the absolute privilege for statements made during judicial proceedings because the statements were made "approximately ten months prior to suit being filed, and in response to a demand from Plaintiff for compensation. . . ." (Doc. 26 at 9) (emphasis in the original) (citing *Morrison v. Gugle*, 755 N.E.2d 404, 416 (Ohio App. 10th Dist. 2001)). Plaintiff also argues that Stephens' statements to his attorney are not protected by a qualified privilege because plaintiff has made a prima facie showing of malice and the statements are not protected as statements of opinion. (Doc. 26 at 9-14).

In reply, defendant Stephens notes that plaintiff has not responded to his argument that the testimonial privilege provided in Ohio Rev. Code § 2317.02 applies here. (Doc. 27 at 14-15). Defendant further alleges that the absolute privilege applicable to trial and deposition testimony extends to communications involving pending litigation between parties and counsel, and the communications between defendant Stephens and his attorney are covered by this privilege. (*Id.*

at 14, citing *Fallang v. Cormier*, 579 N.E.2d 258, 260 (Ohio App. 12th Dist. 1989) ("the absolute privilege that applies to trial and deposition testimony likewise extends to communications involving pending litigation as between parties, counsel and potential witnesses")). Stephens argues that according to the complaint, plaintiff met with a lawyer the day she was fired for purposes of sending a demand letter claiming religious discrimination; therefore, any communications Stephens had with counsel hired to defend him after that date which were related to plaintiff's claims are covered by the absolute privilege.

A statement made "in a written pleading or brief, or in an oral statement to a judge or jury in open court, is absolutely privileged if it has some reasonable relation to the judicial proceeding in which it appears." *Morrison*, 755 N.E.2d at 416 (citing *Michaels v. Berliner*, 694 N.E.2d 519, 522 (1997) ("*Michaels I* "). The privilege has been extended to extrajudicial communications, but "[w]ithin strict limitations." *Id.* (citing *Krakora v. Gold*, Mahoning App. No. 98-CA-141, 1999 WL 782758 (Sept. 28, 1999) ("privilege extends also to extrajudicial communications preceding actual litigation if proceedings in the trial court are imminent"). However, the privilege does not give an individual free rein to "defame another on the mere condition that a judicial proceeding is mentioned in, or somehow connected to, the defamatory statement.'" *Id.* (quoting *Michaels v. Berliner*, Summit App. No. 20136, 2001 WL 111582 (Feb. 7, 2001) ("*Michaels II* "). Extrajudicial communications therefore "require greater scrutiny." *Id.* (citing *Michaels I*, 694 N.E.2d at 522-523). In order for an extrajudicial communication to come within the purview of absolute privilege, the communication "must be (1) made in the regular course of preparing for and conducting a proceeding that is contemplated in good faith and under serious consideration, (2) pertinent to the relief sought, and (3) published only to those directly interested in the proceeding." *Morrison*, 755 N.E.2d at 416 (citing *Michaels I*, 694 N.E.2d at 522-23);

*Theiss v. Scherer*, 396 F.2d 646 (6th Cir. 1968)). Whether the absolute privilege applies is a question of law. *Id*. at 417 (citing *Surace v. Wuliger*, 495 N.E.2d 939, 941-942 (Ohio 1998); *Mauk v. Brundage*, 67 N.E. 152 (1903)).

Defendant Stephens has not shown that the statements he made to his attorney are covered by the absolute privilege for judicial communications. Accepting the allegations of the complaint as true, Stephens made the alleged defamatory statements to his attorney ten months before plaintiff instituted this lawsuit. The context in which Stephens made the statements and the purpose for which he made the statements are not clear from the allegations of the complaint. Even if the comments were made within the context of the possibility of future litigation, this is not sufficient to bring the communication within the purview of the privilege. *See Morrison*, 755 N.E.2d at 416 (absolute judicial privilege did not apply where at best there had been only a vague threat of some future litigation if the matter was not resolved and the defamatory comments did not concern the subject matter of the litigation). Thus, it is impossible to determine at the pleading stage whether the communications are covered by this privilege.

Defendant Stephens also alleges his communications with his attorney are covered by the attorney-client privilege provided under Ohio Rev. Code § 2317.02. The statute reads in pertinent part:

> The following persons shall not testify in certain respects:
>
> (A)(1) An attorney, concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client, except that the attorney may testify by express consent of the client. . . . However, if the client voluntarily reveals the substance of attorney-client communications in a nonprivileged context or is deemed by section 2151.421 of the Revised Code to have waived any testimonial privilege under this division, the attorney may be compelled to testify on the same subject.

Ohio Rev. Code § 2317.02(A)(1). Section 2317.02(A) "prevents an attorney from testifying concerning communications made to the attorney by a client or the attorney's advice to a client. A testimonial privilege applies not only to prohibit testimony at trial, but also to protect the sought-after communications during the discovery process." *State v. Hendon*, 83 N.E.3d 282, 290-91 (Ohio App. 9th Dist. 2017), *appeal not allowed*, 84 N.E.3d 1063 (Ohio 2017) (quoting *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 937 N.E.2d 533, 538, ¶ 18 (Ohio 2010) (quoting *Jackson v. Greger*, 854 N.E.2d 487, 489 ¶ 7, n.1 (Ohio 2006). Under the terms of the statute, an attorney cannot be compelled to testify concerning a communication made to him by his client absent a waiver of the attorney-client privilege. *Id.* (citing *State v. McDermott*, 73 Ohio App.3d 689, 693, 598 N.E.2d 147 (Ohio App. 6th Dist. 1991)).

The potential applicability of the attorney-client privilege to defendant Stephens' statements to his attorney has no bearing on whether plaintiff has stated a claim to relief for defamation under Rule 12(b)(6). Further, Stephens has not cited any authority to show that he is entitled to assert the privilege to allege immunity from liability for a claim. Plaintiff's defamation claim against Stephens should not be dismissed pursuant to § 2317.02.

Thus, defendant Stephens has not shown that plaintiff's defamation claim against him should be dismissed to the extent the claim is premised on alleged defamatory statements Stephens made to his attorney. The motion to dismiss under Fed. R. Civ. P. 12(b)(6) should be denied as to Count XV.

### I. Counts XVI, XVII – Claims against defendants Stephens and Gmoser for intentional infliction of emotional distress.

Plaintiff brings a claim against defendant Stephens in Count XVI of the amended complaint for intentional infliction of emotional distress based on her termination, an allegedly deliberately false statement Stephens made to the Ohio Bureau of Unemployment Compensation

about his reason for terminating her, and allegedly false and derogatory statements he made to plaintiff's potential employers with the intent to sabotage her efforts to find new employment. (Doc. 20, ¶¶ 263-97). Plaintiff alleges that she had performed her job duties in an "exceptional manner" prior to her termination and the only time Stephens "was angry and/or nasty" with her was when she requested to take time off work for the Jewish holidays. (*Id.*, ¶¶ 269-70). Plaintiff alleges that Stephens had his judicial assistant present when he terminated plaintiff, the judicial assistant was "smirking" while plaintiff was being terminated, Stephens alerted many county court staff members that he was terminating plaintiff before he informed her, and he was angry when he ordered plaintiff to leave the courthouse by noon. (*Id.*, ¶¶ 271-74). Plaintiff alleges she was "humiliated and devastated for being terminated so harshly" when she had done nothing to warrant this action. (*Id.*, ¶ 275). Plaintiff alleges that after her termination, Stephens made negative comments about plaintiff to attorneys and potential employers with malice, ill will, and/or in a spirit of revenge so as to damage her reputation and career. Plaintiff alleges that it was "cruel and unprofessional" for Stephens to terminate her for retaliatory and/or discriminatory reasons and his actions left her distraught and shocked. (*Id.*, ¶¶ 279-80). In addition, plaintiff alleges that Stephens made a false statement to the Bureau of Unemployment Compensation in retaliation for her allegations of discrimination in order to delay or prevent her from receiving unemployment compensation, even though Stephens had suggested she file for unemployment benefits knowing she had no other income to support her family. Plaintiff alleges she felt she was the target of a "public official's personal vendetta," which was "extremely upsetting" to her and caused "severe emotional distress," making her incapable of caring for her children properly. (*Id.*, ¶ 284). Plaintiff alleges that the manner in which she was discharged was "severe and debilitating" and gave the impression to other employees of the court and

members of the local bar that her termination was due to misconduct. (*Id.*, ¶¶ 290-91). Plaintiff alleges that as a result of defendant Stephens' actions she suffered "embarrassment, mental anguish, loss of reputation, loss of career, loss of self-esteem, harm to Plaintiff's relationship with her family, and other emotional harm which caused physical injury in the form of adverse health effects." (*Id.*, ¶ 294).

Plaintiff brings a claim for intentional infliction of emotional distress against defendant Gmoser in Count XVII of the amended complaint. (*Id.*, ¶¶ 298-317). She alleges that Gmoser acted with the same motivations and caused the same types of harm as defendant Stephens did. The gist of this claim against Gmoser is that he made statements about plaintiff, her work performance, and her character to potential employers of plaintiff and to the Wood County Prosecutor, and the latter statements resulted in the termination of plaintiff's job with the Wood County Court. Plaintiff alleges she was "humiliated and devastated a second time" as a result of this second termination. (*Id.*, ¶ 302). Plaintiff alleges that Gmoser knew or should have known that "contacting Plaintiff's employer specifically to complain about Plaintiff's lawsuit would result in Plaintiff's termination, loss of career, and preclude future employment," and that the conduct was "abusive and unprofessional," "extreme and outrageous," and "an outrageous invasion of Plaintiff's personal rights." (*Id.*, ¶¶ 311-16).

Defendants move to dismiss plaintiff's claims for intentional infliction of emotional distress on the ground the facts alleged by plaintiff, accepted as true, do not rise to the level of outrageous conduct required to state a claim for intentional infliction of emotional distress. Defendants assert that plaintiff has alleged nothing more than "inconsiderate and unkind actions – not outrageous and intolerable conduct." (Doc. 22 at 19). Defendants argue that under the governing law, plaintiff's claims must therefore be dismissed. (*Id.* at 17-19).

In response, plaintiff argues that her allegations satisfy the elements of an intentional infliction of emotional distress claim because as plaintiff's supervisor and a judge, defendant Stephens held a respected position of authority and could impact her interests, and Gmoser could use his authority and political connections to affect her career. (Doc. 26 at 31-35). Plaintiff cites case law from other states to support her position. Plaintiff alleges that under Ohio law, her "recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" (*Id.* at 34, n. 93, citing *Yeager*, 6 Ohio St.3d at 374, 453 N.E.2d 666; *Bonar v. Romano*, No. 2:08-cv-560, 2010 WL 1258106, at \*7 (S.D. Ohio Mar. 26, 2010) (the plaintiff claimed she was sexually harassed on the job by her office manager for a six-month period); *Dean v. Norfolk S. Ry. Co.*, No. 4:13-cv-2622, 2015 WL 1423456, at \*7 (N.D. Ohio Mar. 27, 2015), *aff'd,* (6th Cir. Apr. 6, 2016) (citing *Hall v. United Labs, Inc.*, 31 F. Supp.2d 1039, 1044 (N.D. Ohio 1998)).

In Ohio, a plaintiff claiming intentional infliction of emotional distress must show the following: (1) the defendant intended to cause plaintiff's emotional distress or should have known that such serious emotional distress would result, (2) the defendant's conduct was outrageous, extreme, beyond all possible bounds of decency, and utterly intolerable in a civilized community, (3) the defendant's conduct proximately caused the plaintiff's psychic injury, and (4) the plaintiff's emotional distress was so serious that no reasonable person could be expected to endure it. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008).

> "[T]he mental anguish suffered must be very serious-'beyond trifling mental disturbance, mere upset or hurt feelings.' *Paugh v. Hanks,* 451 N.E.2d 759, 765 (Ohio 1983). Rather, the emotional injury must be 'both severe and debilitating[]' such that a reasonable person 'would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* (citations omitted). "[S]ome examples of serious emotional distress . . . include traumatically induced neurosis, psychosis, chronic depression, or phobia.' *Id.* (citation omitted)."

*Dean*, 2015 WL 1423456, at *7.

The allegations of the amended complaint do not satisfy the elements of an intentional infliction of emotional distress claim. Plaintiff contends that her following recitation of the facts would elicit a reaction of "Outrageous!" by the average member of the community:

> [Plaintiff was subjected to] discrimination and a retaliatory termination based on religion. In today's society, discrimination is repugnant, especially if committed by a public servant in his official capacity. Plaintiff further alleges that Defendant Stephens continued to retaliate against Plaintiff by sabotaging her employment efforts and using his position to prevent her from obtaining other court jobs. Finally Plaintiff alleges that Defendant Stephens' friends engaged in the same defamation, all in their official capacity, and defendant Gmoser even went so far as to contact Plaintiff's employer which resulted in her termination from a second job.

(Doc. 26 at 34). While discrimination and the other behavior plaintiff alleges can be characterized as harsh, unprofessional, calloused, retaliatory or insensitive, the Court disagrees that the conduct plaintiff describes can conceivably be construed as rising to the level of behavior "so extreme and outrageous as to be 'beyond all possible bounds of decency' and 'utterly intolerable in a civilized community.'" *See Dean*, 2015 WL 1423456, at *7. Plaintiff's claims for intentional infliction of emotional distress alleged against defendants Gmoser and Stephens in Counts XVI and XVII of the amended complaint should be dismissed for failure to state a claim to relief.

### J. Counts XIV, XVIII- Claims against defendant Stephens for breach of contract/promissory estoppel

Plaintiff brings claims against defendant Stephens for breach of contract (Count XIV) and promissory estoppel (Count XVIII). (Doc. 20). She alleges that Stephens altered the at-will nature of her employment relationship by entering into an oral agreement with her that he and plaintiff would give the other three months' notice if either one of them chose to terminate the

employment relationship. (*Id.*, ¶¶ 226-44). In support of her breach of contract claim, plaintiff asserts that defendant Stephens insisted that this was a condition of the employment relationship, and he represented to plaintiff that he had the authority to make the oral agreement in exchange for plaintiff's oral promise to give three months' notice. Plaintiff alleges she relied on the oral agreement to her detriment and "ceased her employment search and the completion of her application for reciprocity to practice law in another state." (*Id.*, ¶ 234). Plaintiff alleges she had a reasonable expectation that benefits she received as part of her compensation would continue throughout the three-month period. Plaintiff claims that Stephens terminated her employment without notice on August 1, 2016 and breached the three-month notice agreement. Plaintiff alleges she suffered economic loss as a result of the alleged breach because she did not receive her salary or benefits during this period of time.

In support of her promissory estoppel claim, plaintiff alleges that upon information and belief the terms of her employment as Staff Attorney/Magistrate are not set by statute or ordinance, and Butler County Court of Common Pleas judges have considerable autonomy to alter the terms of the employment relationship and set the conditions of employment with their personal staff. (*Id.*, ¶¶ 318-27). Plaintiff asserts that Stephens' promise to give her three months' notice of her employment termination was a "clear unambiguous promise." (*Id.*, ¶ 321). Plaintiff alleges that in addition, Stephens "conveyed to Plaintiff that as long as work performance was good, she would have job security." (*Id.*, ¶ 322). Plaintiff claims she reasonably relied on the promise by accepting the position with Stephens and not seeking employment elsewhere or completing her reciprocity application to practice law in another state. Plaintiff alleges that she was injured by relying on Stephens' promise that she would not be terminated without just cause "as long as her work performance was good." (*Id.*, ¶ 325).

Plaintiff asserts that Stephens breached his representations that he would not terminate her employment without three months' notice, and he cannot deny the existence of the oral agreement under the doctrine of promissory estoppel. Plaintiff alleges she has been damaged by Stephens' breach of the oral agreement and representations regarding notice.

Defendant Stephens moves to dismiss plaintiff's claims for breach of contract and promissory estoppel on the ground she was an unclassified, at-will employee who cannot bring these claims under Ohio law. (Doc. 22 at 20, citing *Kuivila v. City of Conneaut*, No. 1:08-cv-2603, 2009 WL 3861008, at *3 (N.D. Ohio Nov. 17, 2009), *aff'd*, 430 F. App'x 402 (6th Cir. 2011); *Estabrook v. City of Dayton*, No. C-3-96-71, 1997 WL 1764764 (S.D. Ohio Mar. 24, 1997)). Defendant further argues that he did not have the authority to enter into an oral or written employment agreement with plaintiff given her public employment status. Defendant contends that plaintiff held her position "neither by grant nor contract" and she did not have "any private right of property interest in [her] employment." (*Id.*, citing *James v. Lucas Cnty. Juvenile Admin. Judge, et al.*, 2005 U.S. Dist. LEXIS 35494 (N.D. Ohio Dec. 23, 2005) (citing *State, ex rel. Gordon v. Barthalow*, 150 Ohio St. 499, 83 N.E.2d 393 (1948)); *see also Malone v. Ct. of Com. Pleas of Cuyahoga County*, 344 N.E.2d 126, 128-29 (Ohio 1976)). Defendant therefore alleges that plaintiff has no cause of action against him for breach of contract or promissory estoppel. (*Id.*).

Plaintiff argues in response that the authorities defendant relies on are not applicable to her employment situation. (Doc. 26 at 21-26). Plaintiff contends that *Kuivila* and *Estabrook* are distinguishable on their facts because both cases involved executive-level positions created by an ordinance or statute, which contained specific terms of employment, and the employment relationships were between a municipality and an employee. Plaintiff alleges that in contrast, she

was on the personal staff of an executive level-employee and she held a hybrid position that was not created by a specific statute or ordinance. Plaintiff also argues that judges are distinguishable from other municipal or county officials because they allegedly "have exclusive hiring authority and are able to set terms and conditions of employment as they see fit." (*Id.* at 24).

Under Ohio law, "[a] public officer or employee holds his office as a matter of law and not of contract, nor has such officer or employee a vested interest or private right of property in his office or employment." *Malone*, 344 N.E.2d at 128-29 (citing *Gordon*, 83 N.E.2d 393, syll. ¶ 1 (approved and followed)). The Court therefore held in *Malone* that "an administrative judge of a juvenile division of a Court of Common Pleas is not authorized to enter into an employment agreement with employees of the court." *Id.* at 129; *see also Kuivila*, 2009 WL 3861008, at *3 (Ohio law provides that a public employee does not hold his office by contract but instead pursuant to statute or ordinance, and public employee's breach of contract claim thus failed as a matter of law given there was no contract to breach). This Court has confirmed that a public employee in Ohio holds her office as a matter of law, not contract, and is not entitled to bring a claim for breach of contract:

> Significantly, the Ohio Supreme Court has twice held that 'a public officer or employee holds his office as a matter of law *and not of contract*, nor has such officer or employee a vested interest or private right of property in his office or employment.' *Fuldauer v. City of Cleveland*, 32 Ohio St.2d 114, 290 N.E.2d 546 (1972) (para. 3 of syllabus) (emphasis added) (following *State ex rel. Gordon v. Barthalow*, 150 Ohio St. 499, 83 N.E.2d 393 (1948) (para. 1 of syllabus)). These holdings, which are binding upon this Court, *see Erie Ry. Co. v. Tompkins*, 304 U.S. 64 (1938), have not been altered or overturned by the Ohio Supreme Court. Accordingly, this Court concludes that Plaintiff Estabrook, as a public officer or employee, was employed as a matter of law and not pursuant to a contract, and, therefore, may not bring suit for breach of contract.

*Estabrook*, 1997 WL 1764764, at *5.

The principle established in *Gordon* and applied in subsequent breach of contract cases has likewise been applied to promissory estoppel claims brought by Ohio public employees. In *Kuivila*, 2009 WL 3861008, the District Court found that "promissory estoppel claims do not apply to employment established by ordinance or statute," which includes public employment in Ohio. *Id.*, at *3 (citing *Estabrook*, 1997 WL 1764764). The District Court in *James*, 2005 U.S. Dist. LEXIS 35494, applied the principle established in *Gordon* to find that the defendant, a county juvenile court judge, "could not make employment promises" to a public employee. *Id.*, at *14 (citing *Gordon*, 83 N.E.2d 393).

Plaintiff has not shown that there are material distinctions between the cases defendant Stephens cites and this case. Plaintiff's allegations do not refute defendants' arguments that under Ohio law, she held her employment position as a matter of law, not of contract, and that she had no "vested interest or private right of property" in her employment." *See Malone*, 344 N.E.2d at 128-29. Established principles of Ohio law as applied in the cases cited by defendant likewise apply to plaintiff's claims for breach of contract and promissory estoppel. In accordance with Ohio law, plaintiff cannot bring a claim for breach of contract against defendant Stephens based on an alleged alteration of the terms of her employment. Nor can plaintiff bring a claim for promissory estoppel on the theory that Stephens broke a promise to abide by an agreement that altered the terms of plaintiff's employment. Plaintiff's claims for breach of contract and promissory estoppel alleged in Counts XIV and XVIII of the amended complaint should be dismissed for failure to state a claim to relief.

### K. Count I – Injunctive Relief

Plaintiff brings a claim for injunctive relief in Count I of the amended complaint, alleging that defendants engaged in defamatory acts and negatively commented about plaintiff to

potential employers, which injured plaintiff and her career. Plaintiff alleges she has reasonable

grounds to believe that unlawful discrimination has occurred and that irreparable harm will result

if she is not granted "immediate relief" in the form of a Court Order prohibiting defendants from

"continuing to disparage Plaintiff's professional reputation." Plaintiff alleges she has reasonable

grounds to believe an injunction would not unduly harm defendants and would serve the public

interest by preventing further abuse of power by public officials against individuals who

challenge discriminatory actions. Plaintiff seeks injunctive relief under federal law and Ohio

Rev. Code § 4112.02 *et seq.* (Doc. 20, ¶¶ 63-67).

Defendants move to dismiss plaintiff's claim for injunctive relief. (Doc. 22 at 6).

Defendants argue that plaintiff has not shown that there is an immediate danger of irreparable

harm absent an injunction as required under Ohio law. Defendants further allege that even if

plaintiff's substantive claims have merit, she has an adequate remedy at law. (*Id.*, citing *Mid-

Am. Tire, Inc. v. PTZ Trading Ltd.*, 768 N.E.2d 619, 630 (Ohio 2002) (an injunction will not

issue where there is an adequate remedy at law except that a party need not meet this

requirement when a statute grants a specific injunctive remedy)).

In response, plaintiff asserts that she need not demonstrate that there is no adequate

remedy at law because injunctive relief is specifically allowed for several Counts of the amended

complaint, including under Ohio Rev. Code § 4112.99. (Doc. 26 at 35). Defendants counter

that plaintiff does not seek injunctive relief under § 4112.99 but instead she requests only an

injunction against defendants disparaging her professional reputation. (Doc. 27 at 1-2).

Defendants allege no statute provides an injunctive remedy for defamation, and plaintiff must

therefore establish the required elements for an injunction.

Liberally construing the complaint, plaintiff seeks injunctive relief among other remedies

for the alleged violations of her federal and state law rights. It is not clear at this stage of the lawsuit that plaintiff is foreclosed from obtaining any injunctive relief. Accordingly, the Court should not dismiss plaintiff's claim for injunctive relief for failure to state a claim to relief.

## IT IS THEREFORE RECOMMENDED THAT:

1) Defendants' motion to dismiss the complaint (Doc. 13) and amended motion to dismiss the complaint (Doc. 14) be **DENIED** as moot.

2) Plaintiff's motion to stay a decision on the motion to dismiss as to Count II of the amended complaint only (Doc. 30) be **DENIED**.

3) Defendants' motion for partial dismissal of the amended complaint (Doc. 22) be **DENIED** as to Counts I and XV, and **GRANTED** under Fed. R. Civ. P. 12(6) for failure to state a claim upon which relief can be granted as to Counts IV, VI, VII, VIII, X, XI, XII, XIII, XIV, XVI, XVII, XVIII and XX and under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction as to Count II.


Date: <u>February 16, 2018</u>                    <u>s/ Karen L. Litkovitz</u>
                                                Karen L. Litkovitz
                                                United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIMBERLY EDELSTEIN,
    Plaintiff,

        vs.

JUDGE GREG STEPHENS, *et al.*,
    Defendants.

Case No. 1:17-cv-305
Barrett, J.
Litkovitz, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).