# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KIMBERLY EDELSTEIN,
Plaintiff,

Case No. 1:17-cv-00305

Barrett, J.

Litkovitz, M.J.

vs.

JUDGE GREG STEPHENS, *et al.*,
Defendants.

**ORDER**

Plaintiff Kimberly Edelstein brings this action alleging violations of her rights under federal and state law by defendants Judge Greg Stephens, Butler County, Ohio, Michael Gmoser and Dan Ferguson. This matter is before the Court following oral argument held on September 12, 2018 on the following motions: (1) plaintiff's Motion to Seal Exhibit A to Plaintiff's Motion to Disqualify (Doc. 59), (2) plaintiff's Motion to Disqualify (Doc. 60), defendants' response in opposition (Doc. 61), and plaintiff's reply (Doc. 64), and (3) plaintiff's Motion for Sanctions Pursuant to Rule 37 (Doc. 63), defendants' amended response in opposition (Doc. 67), and plaintiff's reply (Doc. 68). The parties submitted supplemental filings and exhibits after the hearing. (Docs. 74, 75).

## I.    Motion to seal (Doc. 59)

### A.    Background

Plaintiff requests an order sealing Exhibit A to her motion to disqualify (Doc. 60) under Fed. R. Civ. P. 5.2(d). (Doc. 59). Plaintiff alleges that Exhibit A is a letter between attorneys that contains objectively false factual and defamatory information that is damaging to her reputation. (*Id.*). Plaintiff states she is an attorney and a member of the local bar, the local news media have followed this case, and the information in Exhibit A is false and defamatory and

"was used to damage her reputation among the local bar." Plaintiff specifically alleges that 14 of 19 paragraphs in the letter contain factually incorrect statements, including one paragraph that alleges plaintiff "'went on a rampage' trying to close out files at the last minute and causing disruption in the office." Plaintiff alleges that the letter is material to the issue of pretext and relates to her claims that defendant Stephens defamed her and violated her substantive due process rights. Plaintiff alleges that making the information in Exhibit A public would further humiliate her and damage her reputation and will likely embarrass the opposing parties in this matter, including a sitting judge, when the statements contained in the letter are proven to be false; the statements are slanderous and defamatory to her and are particularly harmful because she is unemployed at this time; and it would serve no public interest to disclose the contents of the letter and justice would not be served because the legal profession will be tarnished by both the publication of the letter and by disclosure that the contents of the letter are false.

Defendants have not filed a response to plaintiff's motion to seal. Defendants argued at the hearing that the letter should not be sealed because it is a response to a demand letter sent by plaintiff's prior attorney and there is no evidence that the letter was disseminated beyond the parties' attorneys; there is no evidence at this time that Stephens defamed plaintiff; plaintiff can depose witnesses with knowledge of the statements to determine if they are true; and it appears that plaintiff will use the letter to depose individuals regarding the reasons for her termination.

Plaintiff submitted Exhibit A to the Court at the hearing.[1] Exhibit A is a response to a letter dated August 9, 2016, which attorney Robert Klingler sent to Judge Noah Powers II, Presiding Judge, Butler County Courts. (Defendants' Exh. 1). In the letter, Klingler states he has "been retained by Kim Edelstein to represent her in connection with the termination of her

---

[1] The exhibit was marked "Plaintiff's Exhibit 1" at the hearing. The Court will refer to the exhibit as "Exhibit A" in this Order. Plaintiff submitted three exhibits at the hearing. (Plaintiff's Exhs. 1-3).

employment as Magistrate/Staff Attorney for Judge Greg Stephens." The letter sets out

plaintiff's version of the events leading up to her termination. The letter states in part:

> I [Klingler] do not believe there is any credible evidence to support any claim that
> Kim [plaintiff] was not adequately performing her duties, or that her professional
> behavior caused her not to 'fit in.' To the contrary, she was going above and
> beyond her position as a Magistrate/Staff Attorney to try to make Judge
> Stephens's chambers run smoothly. Kim attempted to provide support to [staff
> member] Ms. Barger, and in fact performed many of her job duties. . . . Kim
> never complained about Ms. Barger's work ethic or the extra work it required of
> Kim. The fact that Kim was terminated just days after Judge Stephens expressed
> irritation at her request for time off for the Jewish holidays gives rise to a strong
> inference that his motive for terminating her was improper and illegal. Kim does
> not draw this conclusion lightly. The totality of her experience working for Judge
> Stephens leaves her with the firm belief that antagonism toward her religious
> practices led to her termination.

(Defendants' Exh. 1). Klingler summarized why plaintiff believed that the stated reason for her

termination was a pretext to hide an illegal purpose and that discriminatory animus motivated the

decision. Klingler wrote: "I am conveying this information to you in the form of a letter, rather

than a complaint, because it is in all parties' interest to resolve this matter privately rather than

through litigation." He set forth the amount of salary and benefits plaintiff would accept "[i]n

order to resolve this matter[.]" Klingler concluded by stating he looked forward to receiving a

response from the Court's attorney. (Defendants' Exh. 1).

Counsel for defendant Stephens, Linda Woeber of the law firm Montgomery, Rennie &

Jonson, LPA, sent Exhibit A to Klingler in response to his letter. Woeber's letter is dated

September 1, 2016 and is designated a "Confidential Settlement Communication protected by

Ohio and Federal Rule of Evidence 408." Woeber began the letter by thanking Klingler for

bringing the matter to the attention of Stephens and the Butler County Court before filing a

lawsuit and by stating,

> Let me begin by assuring you that, despite the timing of Ms. Edelstein's July
> request for time off, Judge Stephens' decision to discharge Edelstein had

absolutely nothing to do with her Jewish faith or request for time off to observe the high holy days in October.

Woeber then laid out a series of events related to plaintiff's employment and termination beginning in March 2016 that materially conflict with the version described in Klingler's letter. For instance, Klinger had asserted in his letter that, "Judge Stephens appeared to be surprised and somewhat annoyed" when "Kim first had occasion to disclose her Jewish faith directly to Judge Stephens when she asked him toward the end of March if she could work through lunch and leave an hour early to observe the holiday of Purim." (Defendants' Exh. 1). Woeber responded: "As to your client's representation that Judge Stephens 'appeared to be surprised and somewhat annoyed' that she asked for one hour off in March to observe Purim, that claims [sic] is not accurate." (Exhibit A). Woeber concluded the letter by stating,

> Edelstein's termination had nothing to do with her religion or any other protected status. It was solely based on her conduct at work and Judge Stephens' recognition that he needed his staff to work together as a team. He realized in July that Edelstein was not contributing to the team in the way that he had hoped.

(*Id.*).

### B. Applicable law

Rule 5.2(d) states:

> The court may order that a filing be made under seal without redaction. The court may later unseal the filing or order the person who made the filing to file a redacted version for the public record.

Fed. R. Civ. P. 5.2(d). While district courts have considerable discretion regarding the management of their records and files, that discretion is "circumscribed" by the "traditional and 'presumptive right of the public to inspect and copy judicial documents and files.'" *United States v. Contents of Nationwide Life Ins. Co. Account No. X0961 in name of Warshak*, No. 1:05-cv-196, 2006 WL 971978, *3 (S.D. Ohio Apr. 12, 2006) (quoting *Knoxville News-Sentinel Co. v.*

*Knoxville Journal Corp.*, 723 F.2d 470, 473-74 (6th Cir. 1983) (internal citations omitted)). The

Sixth Circuit has "long recognized a strong presumption in favor of openness" of court records.

*Rudd Equipment Company, Inc. v. John Deere Construction & Forestry Company*, 834 F.3d 589,

593 (6th Cir. 2016) (quoting *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179

(6th Cir. 1983)). This presumption is based on the principle that the resolution of private civil

cases frequently involves issues and remedies that are of critical importance to the public. *See*

*Brown & Williamson*, 710 F.2d at 1179.

The party who seeks to seal court records bears the burden of overcoming the

presumption in favor of openness. *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*,

825 F.3d 299, 305 (6th Cir. 2016) (citing *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir.

2001)). "The burden is a heavy one: 'Only the most compelling reasons can justify non-

disclosure of judicial records.'" *Id.* (quoting *In re Knoxville News-Sentinel Co.*, 723 F.2d at

476). The greater the public interest in the subject matter of the litigation, the greater the

showing required to overcome the presumption of public access. *Id.* (citing *Brown &*

*Williamson*, 710 F.2d at 1179).

District courts have the "power to seal their records when interests of privacy outweigh

the public's right to know." *Knoxville News-Sentinel Co.*, 723 F.2d at 474 (citations omitted).

The injury that allegedly will result if a record is not sealed must be specifically delineated.

*Shane Group, Inc.*, 825 F.3d at 307-08 (citing *Cendant*, 260 F.3d at 194). The proponent of

sealing court records must "analyze in detail, document by document, the propriety of secrecy,

providing reasons and legal citations." *Shane Group, Inc.*, 825 F.3d at 305-06 (quoting *Baxter*

*Intern., Inc. v. Abbott Laboratories*, 297 F.3d 544, 548 (7th Cir. 2002)). The district court has a

similar obligation to set forth specific findings and conclusions "which justify nondisclosure to

the public" if it chooses to seal court records, even if no party objects to the motion. *Id.* at 306 (citing *Brown & Williamson*, 710 F.2d at 1176). The court must explain "why the interests in support of nondisclosure are compelling, why the interests supporting access are less so, and why the seal itself is no broader than necessary. . . ." *Id.* (citing *Brown & Williamson*, 710 F.2d at 1176; *United States v. Kravetz*, 706 F.3d 47, 60 (1st Cir. 2013) (if the district court enters an order that "inhibit[s] the flow of information between courts and the public, the court "should articulate on the record [its] reasons for doing so"); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993) (reversing district court decision because the record did not show the court "balanced the competing interests prior to sealing the final order")).

Simply showing that information would harm a party's reputation does not suffice "to overcome the strong common law presumption in favor of public access to court proceedings and records." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d at 477 (distinguishing *Brown & Williamson*, 710 F.2d 1165). Reputational harm is not a compelling reason that justifies nondisclosure. *Procter & Gamble v. Bankers Trust*, 78 F.3d 219, 225 (6th Cir. 1996). "[P]rivate litigants' interest in protecting their vanity or their commercial self-interest" is not grounds for keeping information under seal. *Id.* "[T]he prospect that disclosure of unproven allegations will expose a party to reputational or (by extension) commercial harm does not outweigh the common-law presumption of public access to court records." *Contents of Nationwide Life Ins.*, 2006 WL 971978, at *4. "[C]laimed harm to one's reputation or injury to one's standing in the community does not warrant a deviation from the strong presumption of public access." *Karl v. Bizar*, No. 2:09-cv-34, 2009 WL 3644115, at *3 (S.D. Ohio Oct. 28, 2009). Generally, content-based exceptions that are sufficient to overcome the "presumption in favor of disclosure of court records" include "certain privacy rights of participants or third parties, trade secrets, and national

6

security.'" *Brown & Williamson*, 710 F.2d at 1179 (citations omitted); *Elliott v. First Federal Community Bank of Bucyrus*, No. 2:17-cv-42 (S.D. Ohio Jan. 31, 2018) (Deavers, M.J.) (Doc. 37), *reconsideration granted*, (Doc. 43) (Feb. 10, 2018).

In keeping with these narrow exceptions, the Sixth Circuit and judges in this district have issued orders sealing records where the confidentiality of the documents at issue is protected by statutes or regulations; there are policies that favor maintaining the secrecy of the records; the records include personal identifying information that must be protected from disclosure; the information involves minors; and the information pertains to financial and personal health records. The Sixth Circuit in the case of *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d at 477, upheld a district court order sealing individuals' banking records in light of a wide array of statutory and regulatory provisions which "clearly indicate[d] Congress' intention that the banking records of individuals be kept in strict confidence" and "a compelling government interest in preserving the secrecy of personal financial records." This Court has ordered that depositions and exhibits disclosing the "identity and mental health services of minors" and other non-parties be filed under seal where disclosure would violate the confidentiality provisions of an Ohio state statute, which included criminal penalties for its violation, and reveal personal and confidential information. *Baird v. Hamilton County Dept. of Job and Family Services, et al.*, No. 16-cv-759 (S.D. Ohio August 6, 2018) (Doc. 16) (Bowman, M.J.) This Court has also ordered following the conclusion of a case without a trial that confidential information related to the minor plaintiffs' medical records and protected information of non-party patients of the hospital be kept under seal because publicizing the hospital's internal procedures for handling suspected incidents of child abuse could jeopardize children's safety; medical records and health care discussions about the treatment of infants who were suspected victims of child abuse would be

disclosed if the information did not remain under seal; the third-party minors had interests in keeping the material confidential; and there was strong medical confidentiality protection for the material under Ohio and federal law. *Thomas v. Nationwide Children's Hospital, Inc., et al.*, No. 2:14-cv-1236 (S.D. Ohio March 27, 2018) (Kemp, M.J.) (Doc. 194). This Court has also ordered that records be sealed to protect the rights of a defendant's third-party customer from improper disclosure of "sensitive financial and proprietary information," including bank loan applications containing financial information about the plaintiff's former spouse, a non-party, joint tax returns, and the former spouse's credit reports, the disclosure of which could violate federal law. *Elliott*, No. 2:17-cv-42 (Docs. 37, 43). Finally, Judge Dlott allowed the parties to redact from the defendants' motion to suppress names or other identifying information of individuals who had not been publicly identified, including employees of companies identified as potential victims of an alleged conspiracy, in order to safeguard their privacy interests and protect them from possible harassment and intimidation. *United States v. Maruyasu Industries Co., LTD*, No. 16-cr-64 (S.D. Ohio Dec. 13, 2017) (Dlott, J.) (Doc. 204),

**C. Exhibit A should not be sealed.**

Plaintiff has not carried her heavy burden of overcoming the strong presumption of open court records as required for the Court to order that Exhibit A be sealed. Plaintiff has not demonstrated there is a sufficiently compelling reason to seal the exhibit. Exhibit A is a response by defendants' counsel to Klingler's letter of August 9, 2016. In his letter, Klingler made a settlement demand on behalf of plaintiff and invited counsel for defendants to respond to plaintiff's version of the events leading to her termination. In her capacity as Stephens's counsel, Woeber sent a response on his behalf that sets forth her client's opposing view of the circumstances that led to plaintiff's discharge. The response does not include information that

falls within one of the exceptions to unencumbered disclosure of court records. The information in the letter is not a type of content-based restriction that the Sixth Circuit and judges in this district have determined can "overcome the strong common law presumption in favor of public access to court proceedings and records." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d at 477. The confidentiality of the information included in the letter is not protected by state or federal statutes or regulations. Plaintiff has not identified any state or federal policies that favor maintaining the secrecy of the information in the letter. The letter does not include personal identifying information that must be protected from disclosure. Nor does the letter pertain to financial and personal health records or implicate the privacy interests of minors or third parties.

Plaintiff moves the Court to seal Exhibit A based on an altogether different sort of content-based exception than those previously carved out by courts in the cases discussed *supra*. Plaintiff seeks a content-based exception for records that contain information about a party's claims which the opposing party challenges as either false or disputed. Plaintiff concedes that the September 1, 2016 letter summarizes one side's version of relevant facts and that there are many disputes as to what actually occurred. However, plaintiff also alleges that the letter includes false allegations. Plaintiff asks the Court to adopt her version of events as outlined in her attorney's demand letter and which she has proffered in support of her claims that she was discharged for a discriminatory reason and defamed. She argues that the Court should reject defendant Stephens's version of the facts as set forth in Woeber's September 1, 2016 letter written on behalf of her client. Plaintiff alleges that if placed on the record, the September 1, 2016 letter will reinforce the false impression created by her sudden discharge that she had done something wrong. She claims the letter will also lead the public to believe she was a problematic employee who procrastinated and abused staff, which she claims is untrue. However, the

authorities plaintiff cites do not support a content-based exception to the presumption of openness for records containing substantive factual assertions that a party challenges as either false or disputed. Nor is an exception of this nature warranted. Its application would require the Court to resolve the factual disputes underlying a party's claims before trial or even discovery and decide whether records should be sealed based on the Court's determination as to which side is telling the truth. There is no support for a finding that the Court has the authority to make these types of pre-trial credibility assessments and factual determinations in connection with a motion to seal a court record.

Further, even accepting as true plaintiff's allegations that information in Exhibit A is false or disputed, plaintiff has not alleged sufficient harm from disclosure of the information to justify sealing the document. Plaintiff alleges that disclosure of the letter will damage her reputation, which in turn will continue to prevent her from finding new employment. Plaintiff argues that the Court must seal the letter to protect her from future slander and to fulfill its duty to ensure that only truthful information is placed on the record. The case law does not support plaintiff's argument. The Sixth Circuit has made clear that harm to reputation arising from the filing of such information on the public docket is not a valid basis for sealing a document. *Brown & Williamson*, 710 F.2d at 1179. Reputational harm alone does not outweigh the public's right to know about the court proceedings and filings. *Id*. Neither plaintiff's belief that counsel for defendant endorsed her client's version of events by drafting and sending the letter, nor plaintiff's belief that the version of the facts presented in the letter is false, alters this result. Because plaintiff has shown no additional harm that would result from disclosure of the information in the letter beyond harm to her reputation, and by extension possible harm to her

future employment prospects, her motion to seal Exhibit A to the motion to disqualify (Doc. 59) is denied.

## II. Motion to disqualify (Doc. 60)

### A. Background

Plaintiff moves to disqualify defendants' counsel Woeber and Woeber's law firm, Montgomery, Rennie & Jonson, from representing defendant Judge Stephens based on an alleged conflict of interest. (Doc. 60). Plaintiff states that she intends to call Woeber as a witness in this case to support Count VX - "Defamation by Defendant Stephens, Slander" - ¶¶ 247, 255 of the amended complaint. In that count, plaintiff alleges:

> Stephens made statements to his attorney, Linda Woeber, that Plaintiff had a temper and caused disturbances at work, that Plaintiff procrastinated, missed deadlines, and was a poor employee. . . . [These] false statements about Plaintiff's work performance and behavior on the job caused Plaintiff to suffer harm to her personal and professional reputation, humiliation, extreme emotional distress, and mental suffering.

Plaintiff alleges these false statements were the reason for terminating her and that Stephens "promoted" them as a defense to plaintiff's claims. Plaintiff alleges Stephens made these false statements to his attorney prior to the litigation and that Stephens "disseminated" the statements to his fellow judges and court staff. Plaintiff also alleges that Woeber "disseminated the statements to members of her firm and other attorneys of the local bar, further perpetuating the harm to Plaintiff's reputation."

Plaintiff brings her motion to disqualify under the Ohio Rules of Professional Conduct. A trial court has the inherent authority to dismiss or disqualify an attorney from a case if the attorney "cannot, or will not, comply with the Code of Professional Responsibility when representing a client." *Williamson v. Recovery Ltd. Partnership*, No. 2:06-cv-292, 2011 WL 2491614, *1 (S.D. Ohio June 22, 2011) (Sargus, J.) (quoting *Mentor Lagoons, Inc. v. Rubin,* 510

11

N.E.2d 379, 382 (Ohio 1987)).  Prof. Cond. Rule 3.7 is intended to prevent the trial jury from

learning about an attorney's dual role as an advocate and a witness.  *Daniels v. City of Wyoming*,

No. 15-cv-507, 2016 WL 1384827, *1 (S.D. Ohio Apr. 27, 2016) (Dlott, J.).[2]  The rule states in

relevant part:

> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to
> be a necessary witness unless one or more of the following applies:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered
> in the case;
> (3) the disqualification of the lawyer would work *substantial* hardship on
> the client.

Prof. Cond. Rule 3.7 (emphasis in the original).

The Court must perform a two-step analysis under Rule 3.7.  First, the Court must ask if

disqualification is appropriate, and second, whether any of the exceptions under the rule apply.

*Id.* Rule 3.7(a) applies in those cases where a lawyer is a "necessary" witness.  *Williamson,* 2011

WL 2491614, *2-3.  An attorney is a necessary witness under Ohio law if her "testimony is

relevant and material to the determination of the issues being litigated and unobtainable

elsewhere." *Id.* at *2 (quoting *Brown v. Spectrum Networks, Inc.,* 904 N.E.2d 576, 580 (Ohio Ct.

App. 2008)).  If this condition is satisfied, the next step the Court must undertake in the analysis

is to determine if any of the exceptions under the rule, including substantial hardship, apply.  *Id.*

at *3.  Neither counsel's familiarity with the case nor the added expense imposed by the need to

retain new counsel qualifies as a substantial hardship under Rule 3.7(a)(3).  *See 155 N. High,*

*Ltd. v. Cincinnati Ins. Co.*, 650 N.E.2d 869, 874 (Ohio 1995); *Rock v. Sanislo*, No. 09CA0031-

M, 2009 WL 5154889, *4 (Ohio App. 9th Dist. Dec. 30, 2009)).

---

[2] In *Daniels*, Judge Dlott disqualified counsel who was the only non-party witness to the event underlying the lawsuit where there was no dispute counsel would be a necessary witness at trial.  The Court rejected counsel's argument that her disqualification would work a substantial hardship on her client.

Plaintiff alleges that Woeber is a necessary witness whom she intends to call to testify regarding statements Woeber made in the September 1, 2016 letter to Klingler. (Doc. 60, Exh. A). Plaintiff alleges that Woeber inserted herself into this lawsuit by using language in the September 1, 2016 letter to Klingler "assuring" him that Stephens did not discriminate against plaintiff based on her religion. Plaintiff alleges the letter includes false statements which Woeber endorsed. Plaintiff alleges that Woeber's testimony is required because only she and Stephens were present when the two spoke about plaintiff's work performance and when Stephens made allegedly false representations; their conversation led Woeber to make allegedly false statements contained in the September 1, 2016 letter; and Stephens cannot be expected to give a truthful account of their conversation at trial. Plaintiff alleges that Woeber either became aware at some point the statements were false but continued to "promote" the false statements and other false statements by her client as the reason plaintiff was terminated, or Woeber did not exercise due diligence in determining whether the statements were false. Plaintiff wants to call Woeber as a witness about her attempts to exercise due diligence to determine the falsity of allegations that were made to Woeber about plaintiff's behavior and work and about Woeber's alleged attempts to solicit information from Butler County Court personnel Judge Spaeth and Melinda Barger concerning the events surrounding plaintiff's termination. Plaintiff alleges that the false information promoted in the letter by Woeber is germane to the claims in this matter and is not protected by any privilege under the law.

Plaintiff alleges that if she is not permitted to call Woeber as a witness to testify under oath about the contents of Exhibit A, plaintiff will be substantially prejudiced because Woeber will be an "unsworn" witness at trial. Plaintiff alleges that Woeber allegedly drafted a letter to Klingler that contained false allegations; the letter is an endorsement of the truth of the

statements contained in it; and plaintiff should be permitted to cross-examine Woeber under oath about the contents of the letter or else Woeber will be able to use the contents of the letter as evidence without being questioned about the letter. Plaintiff anticipates that Woeber's testimony will contradict defendant Stephens's assertions regarding plaintiff's discharge, and that disqualification is warranted in a case such as this "where it can be shown that the attorney's testimony will contradict her client's testimony." Doc. 60 at 11 (citing *Banque Arabe Et Internationale D'Investissement v. Ameritrust Corp.*, 690 F. Supp. 607, 614 (S.D. Ohio 1988)).[3]

Plaintiff argues that she will be further prejudiced if Woeber is permitted to represent Stephens because Woeber allegedly has a conflict of interest under Prof. Cond. Rule 1.7(a)(1)(2) and fulfilling the dual role of advocate and witness poses both practical and ethical dilemmas for Woeber. Under Rule 1.7(a)(1)(2), a conflict of interest exists between an attorney and her client when:

> (1) the representation of that client will be directly adverse to another current client; [or]
>
> (2) there is a *substantial* risk that the lawyer's ability to consider, recommend, or carry out an appropriate course of action for that client will be materially limited by . . . the lawyer's own personal interests.

Prof. Cond. Rule 1.7(a) (emphasis in original). Plaintiff alleges that Woeber has a conflict of interest because she has non-privileged information pertinent to the case that contradicts Stephens's allegations, and plaintiff anticipates Woeber's truthful testimony will discredit

---

[3] The Court in *Ameritrust Corp.* held:

> The interest of plaintiffs is that they not suffer prejudice from testimony by their attorney which is adverse to their factual assertions or account of events. Disqualification is not appropriate where, as here, there is no specific proof that plaintiffs will suffer actual prejudice from their attorney's testimony if he is called by defendants; and where, as here, it is shown that the attorney will not contradict the factual assertions made by his clients. Further, disqualification is not proper where, as here, the clients do not have an interest in discrediting and impeaching their attorney's testimony.

*Id.* at 614.

Stephens. Plaintiff asserts that presenting Stephens's false version of events misleads "the tribunal" and may subject Woeber to disciplinary action and her client to a perjury charge.[4]

In addition, plaintiff alleges she will be prejudiced if she is unable to call Woeber as a witness because Woeber's testimony is the best way for plaintiff to show Stephens has a habit of lying and that he lied in this matter. Plaintiff alleges the jury will be inclined to believe Stephens because he is a sitting judge, and plaintiff must be able to overcome the prejudice to her and prove the allegations of the amended complaint by exploring the fact that Stephens purportedly lied to his own attorney. Plaintiff wants to call Woeber as a witness to counter the narrative that plaintiff was a poor worker and abusive to staff. Plaintiff alleges that otherwise, Woeber's silence will serve as an endorsement of this allegedly false narrative and will bolster it.

Plaintiff alleges that Woeber's letter is not protected by absolute privilege, the attorney-client privilege, or any other statute or law. Plaintiff contends the communications between Stephens and Woeber are not protected by the attorney-client privilege because Stephens did not intend them to be confidential. Plaintiff alleges Stephens waived the attorney-client privilege under Ohio Rev. Code § 2317.02 by including the statements in an affidavit to the EEOC and disseminating the information to third parties. Plaintiff alleges the information is not barred under Fed. R. Evid. 408(a), which provides that statements made during compromise negotiations are inadmissible in evidence for certain purposes, because she is not introducing the statements for a purpose that is prohibited under the rule. Plaintiff further alleges that the Court has "already ruled that no absolute privilege exists as the communication was not made in anticipation of litigation"; "the communication occurred ten months prior to litigation"; the

---

[4] Plaintiff also alleges in her reply to the motion to disqualify that, "Woeber appears to have failed to abide by Rule 11 when [sic] filed motions in this case that contained false statements of fact." (Doc. 64 at 11). The Court will not address plaintiff's argument that Woeber violated Rule 11 because plaintiff did not comply with the Rule's requirements that a motion for sanctions under the Rule "must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."

comments were defamatory and did not concern the subject matter of the litigation; and some of the comments relate to plaintiff's alleged conduct after the termination.

Finally, plaintiff alleges that to disqualify Woeber would serve the public interest by furthering the appearance of justice and preventing great prejudice to plaintiff. Plaintiff argues it would not work a substantial hardship on defendants to disqualify Woeber because discovery has not yet taken place and another attorney could easily take over for Woeber, as indicated by the recent appearance of an additional attorney from Woeber's firm in this matter. Plaintiff asserts that if Woeber is disqualified, her firm must be disqualified.

Defendant Stephens argues in response that Exhibit A is inadmissible evidence of settlement negotiations, and plaintiff has not produced any evidence to show the letter was published by Stephens or his counsel. (Doc. 61). Defendant argues that plaintiff cannot call Woeber as a witness to explain the contents of the letter. Defendant correctly notes that the Court ruled that it could not determine at the pleading stage whether the communications between defendant and Woeber are protected by an absolute privilege or by the attorney-client privilege under Ohio Rev. Code § 2317.02. (*See* Report and Recommendation, Doc. 31, pp. 32-33). Defendant argues for purposes of this motion that the letter is protected by absolute privilege because the statements were made in anticipation of litigation. Defendant contends the letter is not protected by the attorney-client privilege because it is not a communication between Stephens and his counsel. Defendant asserts, however, that plaintiff is not entitled to discover information about Woeber's conversations with her client, Stephens, and her investigation of the facts of this case because that information is protected attorney-client communications or work product under Fed. R. Civ. P. 26(b)(1). Defendant asserts that plaintiff can discover underlying facts as to the stated basis for her discharge and she can depose and elicit testimony from first-

16

hand witnesses to the events that led to her discharge, including Judge Spaeth, Melinda Barger, and Stephens.

**B. Woeber is not a necessary witness in this case**

Plaintiff's theory that Woeber is a necessary witness is premised on three assumptions: (1) the version of events presented in Exhibit A is Woeber's version of the facts; (2) Woeber's version of events is material; and (3) Woeber's version of the facts is false. Each of these assumptions is unfounded and does not support disqualifying Woeber as counsel in this matter.

First, plaintiff improperly construes Woeber's letter to Klingler as presenting Woeber's version of the facts, or at least Woeber's endorsement of the truth of the facts set forth in the letter. Plaintiff relies on language in the letter to impute personal knowledge to Woeber of the information set forth in the letter. Plaintiff alleges that by "assuring" Klingler that Stephens's decision to discharge her was unrelated to her Jewish faith or her request for time off to observe the high holy days in October, Woeber personally vouched for the veracity of all the information relayed in the letter. Plaintiff argues that through use of this language, Woeber personally inserted herself into the lawsuit. The Court disagrees. Both Klingler's letter on behalf of plaintiff and Woeber's letter on behalf of Stephens can only be reasonably construed as presenting their clients' positions. Just as Klingler's letter does not suggest that he has first-hand knowledge of the information in the letter he drafted, nothing in Woeber's letter suggests that she has personal, first-hand knowledge of the relevant facts surrounding plaintiff's employment and termination. Woeber's "assurance" to Klingler that her client did not discriminate against plaintiff is language of advocacy; it does not somehow convey that Woeber has personal knowledge of the facts underlying her client's position. In fact, plaintiff conceded at the hearing that Woeber does not have first-hand knowledge of these facts. Plaintiff also acknowledged that

counsel's letters present the two sides' differing version of events: plaintiff's version is presented in the demand letter sent by her attorney at the time, and Stephens's version is set forth in the response by his counsel, Woeber. Thus, Woeber's letter does not suggest that she was personally aware of the facts surrounding plaintiff's discharge.

Second, plaintiff has not shown that Woeber's testimony is material or that the testimony she seeks to elicit from Woeber cannot be provided by another witness. In arguing about the necessity of Woeber's testimony, plaintiff improperly focuses on Woeber's first-hand knowledge of conversations with Stephens about the events leading to plaintiff's termination. Plaintiff alleges that only Woeber and Stephens know what the two of them discussed after Woeber was retained to represent Stephens, and only Woeber knows the details of her investigation. However, plaintiff has not given a cogent explanation for why Woeber's after-the-fact conversations with Stephens about the circumstances leading up to plaintiff's discharge are relevant to plaintiff's discrimination, defamation, or substantive due process claims against Stephens or any other defendant. The events leading to plaintiff's termination are the relevant focus, not a conversation about those events between defendant and his counsel or counsel's investigation of the facts as relayed by her client. Plaintiff does not deny that there are individuals other than Stephens with first-hand knowledge of those circumstances.

For instance, plaintiff alleges that Exhibit A contains false statements about Judge Spaeth and information that Judge Spaeth knows about first-hand (although she argues his direct knowledge is immaterial). Plaintiff alleges: "Judge Spaeth can only testify as to his activities on the day Plaintiff was terminated and his reason as to why he would not speak with Woeber about it. It is unlikely that Judge Spaeth has any knowledge of Stephens' conversation with Woeber explaining why Judge Spaeth refused to speak with her." (Doc. 64 at 8). Plaintiff's argument

misses the point. What is relevant to plaintiff's claims is the veracity of Stephens and other witnesses to the events underlying her claims. Plaintiff can call these witnesses to give their first-hand accounts of the circumstances surrounding her job performance, her relationship with Stephens and other court personnel, and her termination. Plaintiff can test Stephens's credibility and any conflicting testimony regarding the relevant events by calling these witnesses to testify. Woeber's truthfulness and understanding of the facts set forth in the letter are immaterial to resolution of both plaintiff's substantive claims and the motion to disqualify.

Further, even if Woeber's knowledge of the truth of the allegations in Exhibit A were relevant, plaintiff has made conflicting arguments as to the extent of Woeber's knowledge of the facts based on speculation and unsupported inferences based on inferences. Plaintiff alternately claims that Woeber had an "inkling" that the facts were not true; that Woeber knew Exhibit A included false factual statements; and that Woeber could have learned through the exercise of due diligence that the facts were not true. Plaintiff explained at the hearing that she believes Woeber's assurance to Klingler in the September 1, 2016 letter that Stephens did not discriminate against plaintiff based on her religion supports plaintiff's claim that Woeber knew about Stephens's alleged untruthfulness. The Court disagrees. As explained *supra*, Woeber's assurance was clearly made in her capacity as attorney for Stephens and is not sufficient to convey that Woeber had personal knowledge of the events described in the letter.

Plaintiff also explained at the hearing that she believes Woeber knew Stephens was not being truthful because his fellow judge in the Butler County Court, Judge Spaeth, refused to confirm that plaintiff had an outburst or went on a "rampage" as the September 1, 2016 letter states. Plaintiff deduces from hearsay allegations that Woeber approached Judge Spaeth to confirm plaintiff's alleged outburst or "rampage"; Judge Spaeth refused to talk to Woeber; he

19

declined to do so because the outburst never occurred; and Woeber should have realized at this point that Stephens was lying about the outburst and possibly all of the other allegations Stephens had relayed to her. These allegations are all unsupported speculation. Plaintiff implicitly acknowledges it is possible that "Woeber's client made up another false story as to why Judge Spaeth refused to speak with [Woeber]." (Doc. 64 at 11). Plaintiff further acknowledges that it is possible that "Woeber is completely ignorant of her client's false statements," although plaintiff characterizes this possibility as an "assumption" plaintiff does not want to make because she believes it would "insult" Woeber. (*Id.*). It is impossible to reasonably deduce from plaintiff's allegations and assumptions that Woeber knew Stephens was lying.

Plaintiff also notes that she is herself an attorney who notified Woeber before filing the lawsuit that Stephens was lying, but Woeber "appeared" to disregard the notice because plaintiff is representing herself. (*Id.*). Setting aside the question of how Woeber knew pre-suit that plaintiff would be representing herself in this lawsuit, plaintiff has not offered any support for her theory that Woeber chose to disregard plaintiff's warning that Stephens was allegedly lying because plaintiff did not relay it through an attorney. Plaintiff has not articulated a plausible theory under which Woeber, in her capacity as Stephens's attorney, was bound to accept Judge Spaeth or plaintiff's version of events over that of her client or to investigate the veracity of her client's assertions based on their conflicting versions of the facts.

Moreover, plaintiff's motion to disqualify is not supported because the Court cannot accept plaintiff's representation that many of the facts presented in the September 1, 2016 letter are false. Plaintiff acknowledges that the September 1, 2016 letter conveys only one party's side of a disputed version of the substantive facts at issue in this lawsuit, but she assumes the Court

must adopt her version. Plaintiff argues her version of the substantive facts must be accepted as true because she was present when the incidents in question occurred and Woeber was not. However, for the reasons discussed above, plaintiff's knowledge of the underlying facts vis-à-vis Woeber's understanding has no relevance to this lawsuit. Further, the flip side of plaintiff's argument that she must be believed because she was present is that the facts presented by Stephens and other court personnel who were present must likewise be accepted as true. Clearly, it is impossible to accept each party's disputed version of the facts. All parties must have an opportunity to conduct discovery; develop their theory of the case; and present the facts, as to which there will be disagreement, to the trier-of-fact. The Court cannot make credibility determinations and decide who among these individuals is telling the truth in order to resolve plaintiff's motion to disqualify. Plaintiff's version of the facts cannot be presumed accurate simply because she was present when a particular act or omission occurred, and fact-finding at this stage of the lawsuit to resolve discrepancies in the parties' factual allegations is not appropriate.

Thus, plaintiff has not shown that Woeber is a necessary witness as to plaintiff's work performance or the circumstances surrounding her termination. Plaintiff has not shown that the testimony she seeks to elicit from Woeber is relevant to plaintiff's substantive claims. Further, the information plaintiff seeks can be obtained by deposing defendants and other individuals with first-hand knowledge of these events. Thus, whether Woeber had an "inkling" that all of the facts in the letter were not true, whether she should have known that all of the facts were not true, whether she could have learned through the exercise of due diligence that the facts were not true, or whether she knew that all of the facts were not true, disqualification is not warranted. Woeber's knowledge is not material to the substantive issues in this case.

The Court need not address at this juncture whether Woeber's statements in the letter are protected by either an absolute privilege or an attorney-client privilege.[5] The motion to disqualify is not well-taken for the reasons stated above.

Plaintiff's motion to disqualify Woeber (Doc. 60) is denied.

## III.    Motion for sanctions (Doc. 63)

Plaintiff requests sanctions against defendants for not providing all of the information required in their initial disclosures by the July 13, 2018 deadline, and instead providing the information five days late. Plaintiff requests that the Court sanction defendants by precluding their witnesses from testifying and from using any information the witnesses were to testify about, or by imposing a monetary sanction of $1,000.00 to compensate plaintiff for the time she spent preparing the motion.

Pursuant to Fed. R. Civ. P. 37, motions to compel discovery must include a certification that extrajudicial attempts have been made to secure responses to discovery requests. Rule 37(a)(1) provides: "On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). Such a motion "*must* include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." *Id*. (emphasis added). Similarly, S.D. Ohio Civ. R. 37.1 provides that motions relating to discovery "shall not be filed in this Court under any provision in Fed. R. Civ. P. 26 or 37

---

[5] Plaintiff argues that this Court has already decided that an absolute privilege does not apply to Stephens's communications to his attorney. (Doc. 60 at 15). *See also* Report and Recommendation, February 16, 2018 (Doc. 31), *adopted in part and not adopted in part by* Order dated March 31, 2018 (Doc. 40). This is not accurate. The Court found that "it is impossible to determine *at the pleading stage* whether the communications are covered by this [absolute] privilege [for judicial communications]." (Doc. 31 at 32) (emphasis added). In addition, the Court expressly declined to decide in connection with defendants' motion to dismiss whether the attorney-client privilege applied to communications Stephens made to his attorney because the potential applicability of the privilege had no bearing on whether plaintiff had stated a claim for relief for defamation under Fed. R. Civ. P. 12(b)(6), and the Court declined to dismiss plaintiff's defamation claim against Stephens to the extent the claim is premised on alleged defamatory statements Stephens made to his attorney. (Doc. 31 at 29-33; Doc. 40).

unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences. . . ." Thus, both the Federal Rules of Civil Procedure and the Local Rules of this Court require "counsel to meet and confer to resolve differences as to discovery disputes." *Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 2:07-cv-116, 2010 WL 1445171, *2 (S.D. Ohio April 12, 2010) (citing Fed. R. Civ. P. 37(a)(1); S.D. Ohio Civ. R. 37.1). Rule 37(a)(5)(A) provides for the payment of reasonable expenses incurred in making the motion, including attorney's fees, if the motion is granted or if the disclosure or requested discovery is provided after the motion was filed. However, the Rule provides "the court must not order this payment if:

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust."

Fed. R. Civ. P. 37.

Pursuant to the undersigned's Standing Order on Civil Procedures, motions relating to discovery may not be filed absent certain prerequisites:

> **Motions Relating to Discovery:** With the exception of cases involving an incarcerated pro se litigant, **this Court does not permit discovery motions**, i.e. motions to compel or motions for protective order regarding discovery disputes, **unless and until** counsel/pro se parties use the following procedure: Counsel/pro se parties must first attempt to resolve the discovery dispute by extrajudicial means. *See* Fed. R. Civ. P. 37(a)(1); S.D. Ohio Civ. R. 37.1. This Court defines "extrajudicial means" as requiring counsel/pro se parties to try to resolve the matter **both in writing and telephonically**. If counsel/pro se parties are unable to resolve the dispute between themselves, then they must contact the Courtroom Deputy, Arthur Hill, by telephone (513-564-7690), to schedule an informal discovery conference with the Court.

(Standing Order, Section D(2), at page 3, www.ohsd.uscourts.gov/FPLitkovitz) (emphasis in original).

Here, plaintiff has not complied with the above procedures. Plaintiff filed the motion for sanctions before making a good faith effort to resolve the discovery dispute and without following the undersigned's Standing Order on Civil Procedures. Plaintiff did not attempt to resolve the matter with defendants by telephone. Also, plaintiff did not contact chambers to schedule an informal discovery conference with the Court. Plaintiff is not entitled to an award of sanctions.

## IT IS THEREFORE ORDERED THAT:

(1) Plaintiff's Motion to Seal Exhibit A to Plaintiff's Motion to Disqualify (Doc. 59) is **DENIED**.

(2) Plaintiff's Motion to Disqualify (Doc. 60) is **DENIED**.

(3) Plaintiff's Motion for Sanctions Pursuant to Rule 37 (Doc. 63) is **DENIED**.

Date: _10/5/18_

Karen L. Litkovitz
United States Magistrate Judge