IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY EDELSTEIN, | ) | Case No. 1:17-CV-305 |
| | ) | |
| Plaintiff, | ) | Judge Michael R. Barrett |
| | ) | Magistrate Judge Karen L. Litkovitz |
| v. | ) | |
| | ) | PLAINTIFF'S MOTION FOR PARTIAL |
| JUDGE GREG STEPHENS, et al., | ) | RECONSIDERATION OF PLAINTIFF'S |
| | ) | OBJECTION TO MAGISTRATE'S |
| Defendants. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| | ) | |

Plaintiff, with all due respect to the Court and the Honorable Judge Michael R. Barrett, hereby moves pursuant to Federal Rules of Civil Procedure 60(b)(1) and/or 60(b)(6) for partial reconsideration of an Opinion and Order (DOC 171) filed in this matter on April 13, 2020 related to Plaintiff's Objections to Magistrate's Report and Recommendation. In filing this Motion for Reconsideration, Plaintiff seeks to prevent the Court from making errors in law as to Count XIX of Plaintiff's Amended Complaint. Plaintiff respectfully makes this request not to delay this matter, but to ensure that precedent is adhered to and reverently protected.

Respectfully submitted,

_Kimberly Edelstein_

Kimberly Edelstein (0074922)
9384 Cardinal Ct.
Cincinnati, Ohio 45242
(614)975-2400 / kedelsteinesq@cinci.rr.com

<u>MEMORANDUM</u>

**<u>The Magistrate evaluated the intent element contrary to Ohio law</u>**

The Magistrate ignored how the intent element has been addressed by Ohio courts.  The intent element has been addressed by Ohio courts in the following manner: "To establish the intent element of a tortious interference with contract claim, a plaintiff must either (1) prove that the defendant acted with the purpose or desire to interfere with the performance of the contract or (2) prove that the defendant knew that interference was certain or substantially certain to occur as a result of its actions.[1]  Plaintiff would argue that she has been able to establish the intent element by showing that Gmoser knew that interference was certain or substantially certain to occur as a result of his actions.

Additionally, the Magistrate neglects to recognize that, in proving intent, Gmoser's conduct may be evaluated by a "reasonable implication" standard.[2]  Plaintiff argued that Gmoser, a Prosecutor, was a public official whose reputation is affected by his employees' conduct.  As such, Gmoser is very much cognizant of the results of his actions in angrily calling Plaintiff's employer (who is also a Prosecutor), speaking to that employer on several occasions about Plaintiff and her lawsuit against him, and acting in a manner that would result in Plaintiff's employer apologizing for Plaintiff suing Gmoser.  Gmoser's contact with Dobson, about Plaintiff and her lawsuit, affected Dobson's reputation and position.  Dobson declares in an email, which is evidence before this Court, that he cannot be objective about the lawsuit because of his relationship with Gmoser and because he believes he will be a witness in the lawsuit.  Gmoser has interfered in other Butler County employees' careers, as this Court and defense counsel is

---

[1] *Kent State University v. Bradley University*, 2019-Ohio-2088, at ¶18, 136 N.E.3d 774 (Ohio App. 11 Dist. 2019), citing to *RFC Capital Corp. v. EarthLink, Inc.*, 10th. Dist. Franklin No. 03AP-735, 2004-Ohio-7046, 2004 WL 2980402, ¶ 68." *Ginn v. Stonecreek Dental Care*, 12th Dist. Fayette, 2015-Ohio-1600, 30 N.E.3d 1034, ¶17.
[2] *Ginn v. Stonecreek Dental Care*, 2015-Ohio-1600, at ¶21, 30 N.E.3d 1034 (Ohio App. 12 Dist. 2015)

aware.  Therefore, by reasonable implication, Gmoser's conduct was intended to interfere with Plaintiff's employment.

Finally, the Magistrate indentifies the case, *Fred Siegel v. Co., L.P.A. v. Arter & Hadden*, and explains that the Ohio Supreme Court states that intent is demonstrated by the following factors:

> [I]n determining whether an actor has acted <u>improperly</u> in intentionally interfering with a contract or prospective contract of another, consideration should be given to the following factors: (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.[3]

However, the Magistrate neglects to recognize that Ohio case law indicates that these factors "are to be weighed by a jury in determining whether [the actor's] actions were improper."[4]  Instead, the Magistrate assumes the duty of weighing these factors and drawing conclusions regarding them.  In addition to usurping the jury's duty of analyzing these factors, the Magistrate failed to engage in a complete analysis of the factors.  For the benefit of the Court, factors in this matter are as follows:

| | |
|---|---|
| (Factor a) | The nature of Gmoser's conduct was making an angry call to Dobson about Plaintiff and her lawsuit, speaking with Dobson two more times within a month about Plaintiff and her lawsuit, and causing Dobson to apologize to him. |
| (Factor b) | The evidence indicates that Gmoser's motive is indicated by Gmoser being upset about being named in Plaintiff's lawsuit and that he called Dobson to |

---

[3] *Fred Siegel v. Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 855, syll. at ¶1 (Ohio 1999).  Emphasis is added as the Magistrate initially indicated that Gmoser's actions would have to be "unlawful" in order to be intentional.  This is the wrong standard, as the Ohio Supreme Court indicates that intentional conduct has to be merely "improper" conduct.

[4] Id.; see ¶22, where the court determined that, "when viewing the evidence in favor of Dr. Ginn, Stonecreek Dental possessed the requisite intent to violate the goodwill provision" at issue.

demand to know how Plaintiff knew about the content of Dobson and Gmoser's private conversation.

(Factor c)        Plaintiff's interest, that Gmoser's conduct interfered with, was her employment relationship with Dobson.

(Factor d)        Gmoser would have this court believe that he had no interest to advance by calling Dobson. He states that the call was just to discover how Plaintiff knew about the private conversation he had with Dobson. Yet Gmoser conceals the fact that he had other communications with Dobson, including one that occurred just one week prior to Plaintiff being terminated. It is reasonable to conclude that Gmoser hid the other conversations about Plaintiff and her lawsuit because his reason for the first call to Dobson did not explain the other two conversations. Therefore, the interest sought by Gmoser to be advanced (factor "d") is, at least, to address Plaintiff and her lawsuit with Dobson.

(Factor e)        Factor "e" addresses the balance of interest Gmoser had in addressing Plaintiff and her lawsuit against him with Dobson in comparison to the interest Plaintiff had in keeping her job with Dobson. The social interests in protecting Gmoser's right to address Plaintiff and her lawsuit with Dobson is clearly outweighed by the employment interests of Plaintiff, as Gmoser speaking with Plaintiff's employer about her and her lawsuit was likely to cause a problem between her and her employer, including her possible termination.

(Factor f)        Gmoser's angry call to Dobson occurred on May 8, 2017. Another conversation occurred May 25, 2017, approximately one week before Plaintiff was terminated. In total, three conversations occurred within one month of Plaintiff being terminated.

(Factor g)        Finally, Gmoser met Plaintiff only one time, in passing, during the last thirteen years. The only commonality the two shared was that Plaintiff had sued Gmoser for vindictively providing a false reference about her to a prospective employer. Therefore, the relationship between Gmoser and Plaintiff was based only on this one act and the lawsuit. This lack of history between the parties is another reason why Gmoser's conversations with Plaintiff's employer were inappropriate and unwarranted.

Based on the factors applied to the circumstances in this case, it is clear that a jury could have

found intent to interfere by Gmoser and the Magistrate's conclusion that a jury would not be able

to find intent was a mistake.  The Magistrate's conclusion regarding the intent element was, simply, contrary to Ohio law.

### The Court analysis of the cross motions was incomplete under the Sixth Circuit standard

The Court concluded on Page 14 of the Order from April 13, 2020 (DOC 171) that

"the circumstances surrounding the conversations do not demonstrate the requisite intent on the part of Gmoser.  Therefore, the Court finds no error in the Magistrate Judge's conclusion that Gmoser is entitled to summary judgment on Plaintiff's claim for intentional interference with a business relationship claim."

However, the standard regarding summary judgment requires the Court to analyze the evidence Defendants provide in their Motion in a light most favorable to Plaintiff, as the non-moving party.  Here, the Court analyzes Plaintiff's Motion, views her evidence in a light most favorable to the Defendants, as the non-moving party, and determines that Plaintiff is not entitled to summary judgment because there is a genuine issue of material fact, but does not perform the same analysis on Defendants' Motion.  In fact, it appears that the Court simply concludes that because Plaintiff is not entitled to summary judgment, Defendants are.  This is contrary to summary judgment analyses in the Sixth Circuit.

The case, *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991), is cited by Judge Barrett for the proposition that "[T]he standards upon which the court evaluates the motions for summary judgment do not change simply because the parties present cross-motions."[5]  However, this is not the full scope of the *Taft* ruling, nor does it consider the cases upon which *Taft* relies for this proposition.  The *Taft* Court's full analysis of how cross motions for summary judgment should be treated relies on two older cases, *Mingus Constructors, Inc. v.*

---

[5] *Taft Broad. Co. v. United States,* 929 F.2d 240, 248 (6th Cir.1991).

*United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987) and *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir.1948). The *Taft* Court's full analysis states:

> "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, <u>the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration</u>."[6]

By leaving this critical language out of his rulings, all of the steps that are required are not conducted, i.e. to evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

When parties file cross-motions for summary judgment, "the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist."[7] In reviewing Judge Barrett's rulings regarding cross-motions for summary judgment, Judge Barrett cites to *Taft* in seven recent cases.[8] Obviously, Judge Barrett finds the *Taft* decision a significant precedent regarding how to analyze

---

[6] Id., quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987) (Emphasis added). See also, *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir.1948) (the fact that both parties move for summary judgment does not require the court to find that no issue of fact exists). Other Districts have clarified that "[t]he filing of cross-motions for summary judgment does not necessarily mean that the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record; *John v. State of La. (Bd. of Trustees for State Colleges and Universities)*, 757 F.2d 698, 705 (5th Cir.1985); accord *Sherwood v. Washington Post*, 871 F.2d 1144, 1147 n. 4 (D.C.Cir.1989).

[7] B.F. Goodrich Co. v United States Filter Corp., 245 F.3d 587, 593 (Cir. 2001), citing to 10A Charles Alan Wright et al., Federal Practice and Procedure § 2720 (3d ed. 1998).

[8] *Cincinnati Holding Co., LLC v. Fireman's Fund Insurance Co.*, (S.D. Ohio, Western Division No. 1:17cv105), unreported, (February 11, 2020); *Johnston v. New Miami Local School District Board of Education*, (S.D. Ohio, Western Division No. 1:14cv973), unreported, (September 21, 2016); *Erwin v. Village of Morrow*, (S.D. Ohio, Western Division No. 1:16-cv-1166), unreported, (April 4, 2019); *Evanston Insurance Co. v. Certified Steel Stud Association*, (S.D. Ohio, Western Division No. 1:16cv276), unreported, (April 2, 2018); *Trustees of Ohio Bricklayers Health & Welfare Fund v. Ardit Co.*, (S.D. Ohio, Western Division No. 1:13cv93), unreported, (March 22, 2016); *Board of Trustees of Plumbers, Pipefitters & Mechanical Equipment Service, Local Union No. 392 Pension Fund v. B & B Mechanical Services, Inc.*, 980 F.Supp.2d 883 (S.D.Ohio 2013); and this matter, *Edelstein v. Stephens*.

cross motions for summary judgment.  However, none of the seven rulings, including the one for this case, include references to either the *Mingus* case or the *Begnaud* case.  Yet, the *Taft* Court cites to both *Mingus* and *Begnaud*, providing a more complete picture of how the Sixth Circuit regards such analyses.

The Fifth Circuit states it succinctly:

"[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment." (citations omitted).  Indeed, a court's role in deciding a summary judgment motion is not to "determine the truth of the matter, but instead [to] decide only whether there is a genuine issue for trial."[9]

The Defendants provide only Dobson's affidavit (which is largely hearsay) as evidence and alleges that Plaintiff was terminated for other reasons.  Plaintiff has consistently stated that Dobson acted as if he wanted to terminate Plaintiff after Gmoser called; she received no work assignments, she received an email from Dobson indicating he was upset about having to be a witness in her federal case, and Dobson stopped speaking to her.  Although the Court criticizes Plaintiff's evidence as containing hearsay (i.e. Plaintiff's affidavit attesting to Dobson's retelling of some of the substance of his call with Gmoser), it does not make the same criticism for Defendants' evidence (i.e. Dobson's affidavit).  Plaintiff has directly contradicted that affidavit's substance.  If the Court views the Defendants' evidence in a light most favorable to Plaintiff, Defendants are not entitled to summary judgment.  Dobson's affidavit is contradicted by Plaintiff and Plaintiff has provided evidence, including: (1) Dobson's own Admissions and Interrogatory Responses detailing multiple conversations between Gmoser and Dobson about Plaintiff and her lawsuit over the course of one month; (2) Plaintiff has shown that Dobson felt remorse for the lawsuit as Dobson admits to apologizing to Gmoser for causing Plaintiff to sue Gmoser; (3)

---

[9] *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 69 F.Supp.3d 175 (2014), citing to *Barnett v. PA Consulting Grp., Inc*., 715 F.3d 354, 358, 404 U.S.App.D.C. 439 (D.C. Cir. 2013).

Plaintiff has shown that Gmoser did not disclose all of the conversations he had with Dobson to this Court; and (4) Stephens' phone records show that he had also called Dobson.

Plaintiff's evidence, on the other hand, consisted of the following:

(1) Affidavit testimony by Plaintiff, that is undisputed by Defendants, that Gmoser made an angry call to Dobson when he learned Plaintiff had sued him for comments made to Dobson. Dobson stated to Plaintiff that Gmoser was his friend and he had a professional relationship with Gmoser through the Ohio Prosecuting Attorneys Association ("OPAA"). Dobson also relayed that Gmoser asked him how Plaintiff knew about the negative reference (this was confirmed by Gmoser in his discovery responses);

(2) An email from Dobson stating: "as it becomes clearer that I am a witness and associated with one of the defendants to your action, I am not able to be completely objective on the situation;"

(3) Affidavit testimony by Plaintiff, that is undisputed by Defendants, that after Gmoser's angry phone to Dobson, Plaintiff was assigned no more work and Dobson stopped speaking to her;

(4) Interrogatory and Admission Responses from Dobson that, despite only meeting Plaintiff once in ten years, Gmoser and Dobson spoke about Plaintiff and her employment on five occasions and that Plaintiff and her lawsuit was discussed on three occasions within the last month she was employed, including one week before she was terminated;

(5) Interrogatory and Admission Responses from Dobson that, one week prior to Plaintiff being terminated, Dobson expressed remorse and apologized to Gmoser if he had caused Plaintiff to sue Gmoser;

(6) Phone records showing that Stephens called Plaintiff's new employer while she was working for Dobson, even though Stephens is a Butler County Judge and Wood County is several counties away from Butler County;

(7) Affidavit testimony by Plaintiff, that is undisputed by Defendants or Dobson, that on May 19, 2017, Dobson reassured Plaintiff that her job was secure, yet after Dobson's apology to Gmoser, Plaintiff was terminated;

(8) There were no written reprimands of Plaintiff in her Wood County employment file and Dobson admitted he prepared no written reprimands; and

(9) Affidavit testimony by Plaintiff, that is undisputed by Defendants or Dobson, that Dobson reassured Plaintiff that the lawsuit did not matter to him prior to the phone call from Gmoser, but, after that phone call, Dobson sent Plaintiff an email that indicated he

was concerned about being a witness against Gmoser and he could not be objective about the situation.

None of these pieces of evidence were refuted by Defendants, yet the Court concluded that this evidence did not create a genuine issue of material fact as to intent or damages.

Furthermore, Plaintiff provides an affidavit attesting to (1) the circumstances surrounding her termination; (2) the fabricated allegations that she had a confrontation with a co-worker; and (3) that the reason for the termination by Dobson was retaliation due to the stated reason for the termination being pretext.  Defendants have no evidence to refute this as Dobson's hearsay testimony is not appropriate evidence to support their Motion for Summary Judgment.

As stated above, the law in the Sixth Circuit provides that just because one party does not get summary judgment, does not automatically mean that the opposing party does.  The Magistrate simply granted summary judgment to Defendants, in a cursory manner, without undergoing the complete analysis of viewing Defendants' only evidence (Dobson's affidavit) in a light most favorable to Plaintiff.  If it had conducted this review, it should have denied Defendants' motion as the elements of intent and damages were genuine issues of material facts between the parties.

## Conclusion

Plaintiff was able to establish that Gmoser knew that interference was certain or substantially certain to occur as a result of his repeated communications with Dobson about Plaintiff and her lawsuit.  At the very least summary judgment should have been denied to Defendants, as Plaintiff was able to demonstrate that there were genuine issues of material fact regarding whether Gmoser knew that interference was certain or substantially certain to occur as a result.

Furthermore, Plaintiff is entitled to have the Defendants' evidence supporting their Motion viewed in a light most favorable to her. The Magistrate ignored the *Mingus* and *Begnaud* cases when recommending how to address the cross motions, thus failing to analyze the Defendants' motion consistent with the Sixth Circuit's standards. If this Court concludes that Plaintiff is not entitled to summary judgment based on her evidence which is derived from many sources, then it should certainly deny summary judgment to Defendants, who only present an affidavit from Dobson, which is largely hearsay and refuted by other evidence.

Based on the foregoing, Plaintiff respectfully requests that this Court reconsider its analyses of the cross motions and find that there are genuine issues of material fact between the parties as to intent and damages and that Count XIX be allowed to proceed to trial.

Respectfully submitted,

Kimberly Edelstein (0074922)
9384 Cardinal Ct.
Cincinnati, Ohio 45242
(614)975-2400 / kedelsteinesq@cinci.rr.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May 2018, a copy of the foregoing was sent to Linda Woeber and Lisa Zaring, attorneys for Defendants, through the court's electronic filing system.

Kimberly Edelstein (0074922)