IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY EDELSTEIN, | : | Case Nos. 1:17-cv-305 |
| Plaintiff, | : | Judge Michael R. Barrett |
| v. | : | **ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION** |
| JUDGE GREG STEPHENS, et al. | : | |
| Defendant. | : | |

This matter is before the Court on Plaintiff's Motion for Reconsideration (Doc. 172). Defendant Michael Gmoser opposes the motion. (Doc. 173). Plaintiff has filed a Reply. (Doc. 177).

In her motion, Plaintiff seeks reconsideration of this Court's Order granting summary judgment in favor of Defendant Gmoser on Plaintiff's intentional interference with business relationship and denying her motion for summary judgment on the same claim. For the reasons set forth below, the Court **DENIES** Plaintiff's Motion.

I.  BACKGROUND

In early February of 2017, Plaintiff applied for a job working as an assistant prosecutor in the office of Paul Dobson, the Wood County Prosecutor. (Doc. 140-1, Kimberly Edelstein Aff., ¶ 3). Dobson called Defendant Michael Gmoser, whom he knew professionally, to ask Gmoser about Plaintiff prior to hiring her. (Doc. 131-1, Paul Dobson Aff., ¶ 8). Gmoser was the Butler County Prosecutor, and Plaintiff had previously worked as a magistrate judge for Butler County. (Id., ¶ 5). Gmoser made negative comments about Plaintiff during that conversation, but based on other information he learned,

Dobson decided to hire Plaintiff and offered her the position. (Id., ¶¶ 8-9). Plaintiff accepted the offer and began working in Dobson's office on March 16, 2017. (Id., ¶ 10).

Plaintiff filed this lawsuit on May 5, 2017. (Doc. 1). A few days later, on May 8, 2017, Plaintiff informed Dobson that she had filed the lawsuit against her former employer. (Edelstein Aff., ¶ 10).[1] Later that day, Gmoser called Dobson and informed him that the lawsuit also included claims against Gmoser. (Dobson Aff., ¶17). Gmoser explained that the claims were based on the negative comments Gmoser had made to Dobson prior to Dobson hiring Plaintiff. (Id.) After speaking with Gmoser, Dobson went to Plaintiff's office to discuss the lawsuit she had filed against Gmoser. (Edelstein Aff., ¶ 15). Plaintiff recalls Dobson being upset. (Id.) Plaintiff claims that Dobson pressured her to drop her claims against Gmoser. (Edelstein Aff., ¶ 18). However, Dobson disputes that he pressured Plaintiff to drop her claims against Gmoser. (Dobson Aff., ¶ 18). Plaintiff alleges that the phone call from Gmoser led to the termination of her employment with Wood County; and therefore, she amended her complaint to add a claim against Gmoser for intentional interference with a business relationship. (Edelstein Aff., ¶ 25). The Magistrate Judge recommended granting summary judgment in favor of Defendant Gmoser on this claim, and denying Plaintiff's motion for summary judgment. (Doc. 158, at 52). Following a review of the Plaintiff's objections, this Court adopted the Magistrate Judge's recommendation. (Doc. 171, at 14).

---

[1] Plaintiff's affidavit contains a typographical error regarding the date she told Dobson about her lawsuit. While the affidavit states that the date was May 8, 2016, it is clear from the timeline in the affidavit itself, as well as other references to the date by Plaintiff that the date was instead May 8, 2017.

## II. LEGAL STANDARD

Plaintiff has brought her motion for reconsideration pursuant to Federal Rule of Civil Procedure 60. However, Rule 60 applies only to "final" orders. Fed. R. Civ. P. 60(b) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . ."). Therefore, Rule 60 does not apply to the Court's ruling on summary judgment. *Rheinfrank v. Abbott Labs., Inc.*, 137 F. Supp. 3d 1035, 1037 (S.D. Ohio 2015). Instead, the Court will analyze Plaintiff's motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

"A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir.1999)). However, a motion under Rule 59(e) is not an opportunity to re-argue a case. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Accordingly, where the movant fails to introduce new evidence, and instead relies solely on facts and arguments that were in the record at the time the court issued its decision, the motion for reconsideration is improper. *Max Rack, Inc. v. Core Health & Fitness, LLC*, No. 2:16-CV-01015, 2020 WL 4933920, at *4 (S.D. Ohio Aug. 24, 2020) (citing cases). Plaintiff has not introduced any newly discovered evidence, and has not identified an intervening change in controlling law or a manifest injustice which will result if the Court's ruling is left to stand. Plaintiff's motion is best characterized as a motion for reconsideration based on a clear error of law. Specifically, Plaintiff argues that the Court

3

has improperly applied the summary judgment standard in granting Defendant Gmoser's motion for summary judgment and denying her motion for summary judgment.

### III. ANALYSIS

**A. Summary judgment standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the burden of showing an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). These standards upon which motions for summary judgment are evaluated do not change when, as here, "both parties seek to resolve [the] case through the vehicle of cross-motions for summary judgment." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991). As the Sixth Circuit has explained:

> "[t]he fact that both parties make motions for summary judgment ... does not require the Court to rule that no fact issue exists." *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir. 1948)(cited with approval in *Cherokee Ins. Co. v. E.W. Blanch Co.*, 66 F.3d 117, 122 n. 4 (6th Cir. 1995)).
>
> In *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 241 (6th Cir. 1991), this court reversed an order granting summary judgment on cross-motions for summary judgment and a "stipulated" factual record. The court noted that, on cross-motions for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id*. at 248.
>
> Differentiating between cross-motions for summary judgment and a trial on a stipulated record, the court stated that the filing of cross-motions for summary judgment "does not necessarily mean that the ... court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Ibid.* ... When parties file cross-motions for summary judgment, "the

4

>making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (3d ed. 1998). A trial court may conclude, when reviewing the undisputed material facts agreed upon by the parties and drawing all inferences, in turn, for the non-moving party, that a genuine issue exists as to those material facts, in which case, the court is not permitted to resolve the matter, but rather, must allow the case to proceed to trial. *See ITCO Corp. v. Michelin Tire Corp. Commercial Div.*, 722 F.2d 42, 45 n. 3 (4th Cir. 1983).

*B.F.Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592-93 (6th Cir. 2001) (footnote omitted). Therefore, the Court will analyze Plaintiff's motion on its own merits, drawing all reasonable inferences against Defendant Gmoser in order to determine whether a genuine issue of material facts exists. The same analysis will be applied to Defendant Gmoser's motion.

### B. Intentional interference with a business relationship

In order to succeed on an intentional interference with a business relationship claim at trial, Plaintiff would need to prove "(1) a business relationship; (2) the wrongdoer's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom." *Kehoe Component Sales Inc. v. Best Lighting Prod., Inc.*, 933 F. Supp. 2d 974, 1017 (S.D. Ohio 2013) (quoting *Kelley v. Buckley*, 193 Ohio App.3d 11, 32, 950 N.E.2d 997 (Ohio Ct. App. 2011)).[2] The parties agree that the first two elements have been met. (Doc. 158, at 49).

---

[2]Plaintiff takes issue with the analysis being applied to her intentional interference with a business relationship claim. Plaintiff argues that cases addressing a claim for intentional interference with a contractual relationship should not be applied to her claim. However, as this Court has previously explained, in Ohio the two claims are nearly identical:

>"The main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual

5

In Ohio, the factors to be considered in determining whether there is improper interference are largely adapted from the Restatement (Second) of Torts § 766:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

*Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 178–79, 707 N.E.2d 853 (adopting Restatement of Torts (Second) § 767). The comments to § 766 state intentional interference includes an interference "in which the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action." Restatement (Second) of Torts § 766 cmt. j (1979).

With regard to evidence of intentional interference, Plaintiff argues that the Court improperly relied upon the affidavit of Dobson, and ignored her affidavit. Plaintiff maintains that any reliance on Dobson's affidavit is improper because it was submitted by Dobson to the EEOC to defend against a confidential EEOC matter.

The Court notes that the EEOC is not prohibited from disclosing information obtained in an investigation to a charging party. *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590, 598, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981). As the Supreme Court has

---

relations, not yet reduced to a contract." *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.* (2002), 148 Ohio App.3d 596, 2002–Ohio–3932, 774 N.E.2d 775, at ¶ 23.

*Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 942 (S.D. Ohio 2012). Because the arguments raised by Plaintiff in her motion are with regard to evidence of "intentional interference" only, the Court finds this minor distinction in the two types of claims to be of no consequence.

explained: "Congress did not include charging parties within the 'public' to whom disclosure of confidential information is illegal under the provisions of Title VII here at issue." *Id*. (analyzing 42 U.SC. § 2000e–5(b), 2000e–8(e)). In addition, the Supreme Court has also explained that "the 'public' to whom the statute forbids disclosure of charges cannot logically include the parties to the agency proceeding." *Id*. While there are limitations on the disclosures the EEOC may make, Plaintiff cites to no restrictions on a respondent in an EEOC investigation disclosing his own affidavit.

Plaintiff also argues that Defendant cannot rely on Dobson's affidavit because it was created on January 30, 2018, but was not included in Defendant's initial disclosures on July 13, 2018. However, the Court notes that Dobson's Affidavit was made an exhibit to Plaintiff's deposition on November 27, 2018. (See Doc. 131-1).

Plaintiff maintains that her own affidavit supports her claim of intentional interference because she was a firsthand witness to Dobson's immediate reaction to Gmoser's phone call on May 8, 2017.[3] Plaintiff states in her affidavit that "I was told by Paul Dobson that Michael Gmoser was very upset and yelling at Paul Dobson, want to know how I knew about their private conversation about me." (Edelstein Aff., ¶ 16). Plaintiff argues that Gmoser, as a prosecutor, "is very much cognizant of the results of his actions in angrily calling Plaintiff's employer." (Doc. 172, at 2).

---

[3]Plaintiff also claims that her affidavit shows that Dobson's affidavit is a false narrative. To prove this point, Plaintiff relies on Gmoser's discovery responses regarding Dobson's conversations with Gmoser. Plaintiff argues that because there are inconsistent statements from Dobson and Gmoser as to when Dobson told Gmoser that he had hired Plaintiff, the remainder of Dobson's affidavit is necessarily false. The Court cannot conclude that any inconsistency in this minor detail leads to a conclusion that the sworn statements contained in Dobson's affidavit are false.

7

"[H]earsay evidence cannot be considered on a motion for summary judgment." *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir.1994). Hearsay is a statement "the declarant does not make while testifying at the current trial or hearing[,] and ... [that] a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Here, Plaintiff's statement that Dobson told her that Gmoser was "very upset" and "yelling" is double hearsay, or hearsay within hearsay, because Plaintiff's knowledge is based upon what Dobson told her. Double hearsay can only be considered "if each part of the combined statements conforms with an exception to the rule." Fed R. Evid. 805. Plaintiff has not attempted to demonstrate that Dobson's statement fits within any exceptions. Therefore, it cannot be considered.

Moreover, as the Magistrate Judge explained: "Even assuming plaintiff's allegation were supported by competent evidence, a reasonable juror could not conclude based on the facts alleged that Gmoser intentionally induced the termination of plaintiff's employment because he was 'irate' when he place the call to Dobson about plaintiff's lawsuit against him and 'yelled' at Dobson during the call." (Doc. 158, at 50). A reasonable juror would not find, simply from the fact that Defendant made an angry phone call, without any discussion of terminating Plaintiff, that he made the phone call intending to procure Plaintiff's termination. A reasonable juror would likewise not be able to find that termination was certain or substantially certain from Defendant's phone call.

Plaintiff also relies on an email Dobson sent to Plaintiff which states that he cannot be objective about Plaintiff's lawsuit because of his relationship with Gmoser. However, the full text of the email makes it clear that purpose of the email is inform Plaintiff that

8

Dobson could not advise her on the public statement she intended to release about the lawsuit because it was likely that he would be a witness in her lawsuit:

> First of all, I want to thank you for giving me the opportunity to review your proposed public statement before you released it.  After serious consideration of the matter, I do not believe that it is appropriate for me to advise or direct you on the release of a statement on your own personal issue which does not directly affect this office.  Additionally, as it becomes clear that I am a witness and associated with one of the defendants to your action, I am not able to be completely objective on the situation.

(Doc. 177-2).  This email does not establish that there is a genuine issue regarding whether Gmoser intended to interfere with Plaintiff's employment relationship with Dobson.  Instead, it shows that Dobson was attempting to remove his personal involvement in Plaintiff's lawsuit against Gmoser.

In addition, Dobson provided independent justification for terminating Plaintiff's employment which would sever any correlation between Gmoser's call and her change in employment.  As the Magistrate Judge outlined, Dobson states:

> he terminated plaintiff due to: (1) a pattern of untruthfulness (Dobson Aff., Doc. 131, ¶¶ 15-18); (2) unfounded accusations plaintiff had made about Dobson and her co-workers (*Id*. at ¶ 13, 22); and (3) plaintiff's confrontational and disruptive manner with both colleagues and opposing counsel (*Id*. at ¶ 20-21).  In addition, Dobson was disturbed by the fact that plaintiff had misrepresented on her application to Wood County and in her interview with Dobson that her most recent employer had been Judge Oney, and that she left her previous position because Judge Oney retired; however, she later admitted to Dobson that this was false and that she had most recently been fired by Stephens.  (*Id*. at ¶¶ 5-6, 15).  Dobson was also disturbed by the fact that plaintiff had informed him that she had sued Stephens and Butler County, but she did not tell him that she had included Gmoser in the suit.  (*Id*. at ¶¶ 15, 17).

(Doc. 158, at 47).  Plaintiff does not dispute the reasons Dobson provides for his decision to terminate her employment, but instead explains that after Gmoser's May 8, 2017 call, Dobson did not assign her work and stopped speaking to her.  However, in order to defeat

9

summary judgment, "[t]he 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir.1986)).  Accordingly, the Court concludes that the Court's Order granting summary judgment in favor of Gmoser on Plaintiff's intentional interference with business relationship and denying her motion for summary judgment on the same claim was not based upon a clear error of law.

### C. Final order

Plaintiff has requested pursuant to Federal Rule of Civil Procedure 54(b) that in the event that her motion for reconsideration is denied, that this Court find that its ruling is a final entry as to Gmoser; and that all claims Plaintiff had against Gmoser are ready for appeal as there is no just reason for delay.  Plaintiff explains that Gmoser is of advanced age (mid-70's), this matter has been ongoing for over three years, and an appeal could add several additional years to the litigation.

Rule 54(b) provides, in relevant part:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).  According to the Advisory Committee Notes, Rule 54(b) was originally adopted "in order to avoid the possible injustice of a delay in judgment of a distinctly separate claim to await adjudication of the entire case." Fed. R. Civ. P. 54 advisory committee's note to 1946 amendment.  Rule 54(b) should not be used routinely, but reserved for the infrequent case where certification serves the interests of justice and judicial administration.  *Knafel v. Pepsi Cola Bottlers of Akron, Inc.*, 850 F.2d 1155, 1159 (6th Cir. 1988) (citations omitted).

10

Proper certification under Rule 54(b) requires a two-step analysis: "the district court must expressly direct the entry of final judgment as to one or more but fewer than" all of the claims in the case and then the court must expressly find that there is no just reason to delay an appeal. *U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 594 (6th Cir. 2013) (quoting *Gen. Acquisition, Inc. v. GenCorp., Inc.*, 23 F.3d 1022, 1027 (6th Cir.1994)).

Plaintiff brought two claims against Defendant Gmoser: violation of substantive due process pursuant to 42 U.S.C. § 1983; and intentional interference with a business relationship under Ohio law. The Court has granted summary judgment in favor of Defendant Gmoser on all of Plaintiff's claims against him. However, the following claims still remain pending against Defendant Greg Stephens: (1) 42 U.S.C. § 1983 claim of First Amendment retaliation; (2) 42 U.S.C. § 1983 claim for violation of the Fourteenth Amendment's Equal Protection Clause; and (3) state law claim for employment discrimination under Ohio Revised Code § 4112.02. Therefore, the Court has directed entry of final judgment as to Defendant Gmoser even though claims remain pending against Defendant Stephens.

At step two, this Court is to weigh the following non-exhaustive list of factors to determine whether to find just reason for delay:

> (1) the relationship between the adjudicated and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obliged to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.

*Planned Parenthood Sw. Ohio Region v. DeWine*, 696 F.3d 490, 503 (6th Cir. 2012) (citing *Corrosioneering, Inc. v. Thyssen Envtl. Sys., Inc.*, 807 F.2d 1279, 1283 (6th Cir.

11

1986)). Here, there the adjudicated substantive due process and intentional interference with a business relationship claims are independent from the remaining claims against Defendant Stephens. There is no possibility that the need for review might be mooted by future developments in this Court. Plaintiff's claims against Gmoser were based on negative comments Gmoser made about Plaintiff regarding her abilities as an attorney and the call Gmoser made to Dobson. Plaintiff's remaining claims are based upon the termination of her employment with Stephens after she requested to take leave to observe the Jewish High Holy Days. Therefore, there is no possibility that the appellate court might be required to hear the same issue twice. There are no counterclaims which might result in a set-off. Finally, the factor of delay weighs in favor of granting Rule 54(b) certification. Due to the current COVID-19 pandemic, the timetable by which the remaining claims against Defendant Stephens could be set for jury trial remains uncertain. Accordingly, the Court finds no just cause for delay.

## IV. CONCLUSION

Based on the forgoing, the Court hereby **DENIES** Plaintiff's Motion to Reconsider (Doc. 174); but to the extent that Plaintiff moves for certification pursuant to Federal Rule of Civil Procedure 54(b) as to her substantive due process and intentional interference with a business relationship claims against Defendant Gmoser, that motion is **GRANTED**.

**IT IS SO ORDERED**.

*/s/ Michael R. Barrett*
Judge Michael R. Barrett
United States District Court