# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Deborah S. Hunt  
Clerk

100 EAST FIFTH STREET, ROOM 540  
POTTER STEWART U.S. COURTHOUSE  
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000  
www.ca6.uscourts.gov

Filed: August 29, 2022

Mr. Cooper David Bowen

Ms. Kimberly Edelstein

Ms. Linda L. Woeber

Re: Case No. 21-3292, *Kimberly Edelstein v. Greg Stephens, et al*
Originating Case No. 1:17-cv-00305

Dear Ms. Edelstein,

The Court issued the enclosed Order today in this case.

Sincerely yours,

s/Michelle R. Lambert
Case Manager
Direct Dial No. 513-564-7035

cc: Mr. Richard W. Nagel

Enclosure

Mandate to issue

**NOT RECOMMENDED FOR PUBLICATION**

No. 21-3292

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 29, 2022
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| KIMBERLY EDELSTEIN, | ) |
| Plaintiff-Appellant, | ) |
| v. | ) |
| MICHAEL T. GMOSER, Individually and in His Official Capacity, | ) ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| Defendant-Appellee, | ) |
| JUDGE GREG STEPHENS, Individually and in His Official Capacity; BUTLER COUNTY, OH; DANNY L. FERGUSON, Individually and in His Official Capacity, | ) |
| Defendants. | ) |

O R D E R

Before: BATCHELDER, GRIFFIN, and MURPHY, Circuit Judges.

Kimberly Edelstein, proceeding pro se, appeals the district court's dismissal of her claims against defendant Michael T. Gmoser. This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a).

Edelstein served as a staff attorney and magistrate for over eight years in the Butler County Court of Common Pleas. In 2017, after the termination of her employment, Edelstein filed this action against Gmoser and three other defendants who are not parties to this appeal. Some of the claims against other defendants remain pending, but the claims against Gmoser have been

No. 21-3292
- 2 -

dismissed and certified for appeal. Because this appeal pertains only to those claims and Gmoser is the only appellee, we limit our discussion to Edelstein's claims and allegations against him.

In August 2016, Butler County Common Pleas Judge Greg Stephens terminated Edelstein's employment. In February 2017, Edelstein applied for a job as an assistant prosecutor for Wood County Prosecutor Paul Dobson. Dobson contacted Gmoser, the Butler County Prosecutor, for an employment reference. Prior to their call, Gmoser reached out to Butler County Assistant Prosecutor Dan Ferguson; Gmoser asked Ferguson about Edelstein's work and relayed Ferguson's opinions to Dobson. According to Edelstein, Gmoser made several negative comments, including that her work was "disjointed." Edelstein, though, alleged that she "never worked for or with" Gmoser and that Gmoser had no knowledge of her work performance. She further alleged that Gmoser made these allegedly defamatory statements to Dobson in support of Judge Stephens. Despite Gmoser's comments, Dobson hired Edelstein, and she began working there in March 2017.

Less than two months later, Edelstein filed this action. The claims at issue are for violation of Edelstein's substantive due process rights (Count VII), defamation (Count XI), and intentional inference with a business relationship (IIBR) (Count XIX).[1] According to Edelstein, Gmoser "angrily complained of the lawsuit" to Dobson. Edelstein alleged that Dobson was angry with her for suing Gmoser, his friend, and that Dobson tried to get her to dismiss the lawsuit. Shortly thereafter, Edelstein was terminated from her employment with the Wood County Prosecutor's Office.

Gmoser (along with the other defendants) filed a motion to dismiss in part. As is relevant here, the district court granted the motion as to Edelstein's defamation claim against Gmoser because Edelstein failed to satisfy the first element of the claim under state law—namely, that a false statement of fact was made. Among the claims that proceeded to discovery after the district

---

[1] Edelstein does not challenge the judgment as to any other claims that were certified for interlocutory appeal.

(4 of 11)

No. 21-3292
- 3 -

court resolved the motion for partial dismissal were Edelstein's substantive due process and IIBR claims against Gmoser.

As to Edelstein's substantive due process claim, she alleged that Gmoser's actions damaged her reputation and contributed to her separation from the Wood County Prosecutor's Office. As to her IIBR claim, she alleged that Gmoser caused or encouraged the termination of her employment by contacting Dobson and complaining about the present lawsuit. Had Gmoser not complained to Dobson about the present lawsuit, Edelstein alleged, she would still be employed. Dobson, though, averred that he gave Edelstein the option of termination or resignation because Edelstein had conflicts with her colleagues; provided misinformation to Dobson and other colleagues; had a "contentious attitude" in the workplace, at one point calling her colleagues "idiots"; misrepresented her employment history (e.g., by concealing the fact that Stephens had fired her); and, overall, did not work cooperatively, mishandled cases, and was not trustworthy. Edelstein chose to resign.

After discovery, the parties filed cross-motions for summary judgment. The magistrate judge recommended that Gmoser's motion be granted, reasoning that (1) Edelstein produced no evidence showing that Gmoser deprived her of a liberty interest, thereby foreclosing her substantive due process claim, and (2) Edelstein failed to present evidence that could satisfy all elements of an IIBR claim. The district court agreed, overruled Edelstein's objections, and entered summary judgment in favor of Gmoser. Thereafter, the district court denied Edelstein's motion for reconsideration and certified the claims against Gmoser for appeal under Federal Rule of Civil Procedure 54(b).

In this timely appeal, Edelstein argues that the district court erred in dismissing her defamation claim against Gmoser and in granting summary judgment in Gmoser's favor on her substantive due process and IIBR claims.

Count XI: Defamation

We review de novo a district court's dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *Willman v. U.S.*

*Att'y Gen.*, 972 F.3d 819, 822 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 1269 (2021). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[C]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Willman*, 972 F.3d at 823 (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 276 (6th Cir. 2010)).

To state a claim for defamation under Ohio law, a plaintiff must allege facts showing "(1) that a false statement of fact was made, (2) that the statement was defamatory, (3) that the statement was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Boulger v. Woods*, 917 F.3d 471, 478 (6th Cir. 2019) (quoting *Susan B. Anthony List v. Driehaus*, 779 F.3d 628, 632-33 (6th Cir. 2015)).

Edelstein alleged that Gmoser told Dobson, upon his request for an employment reference, that her work was "disjointed," that he had problems "getting stuff back from her on foreclosures," and that he had "a problem getting things [from her]." These statements, as alleged, constitute Gmoser's opinion of Edelstein's work—not actionable statements of fact. Under Ohio law, a statement cannot support a defamation claim if it constitutes protected opinion, *see Boulger*, 917 F.3d at 478, or if it is "substantially true," *Driehaus*, 779 F.3d at 633. To determine "whether a statement constitutes protected opinion or actionable fact, [Ohio] courts consider the totality of the circumstances, including factors such as: (1) 'the specific language used'; (2) 'whether the statement is verifiable'; (3) 'the general context of the statement'; and (4) 'the broader context in which the statement appeared.'" *Bentkowski v. Scene Mag.*, 637 F.3d 689, 693-94 (6th Cir. 2011) (quoting *Vail v. Plain Dealer Publ'g Co.*, 649 N.E.2d 182, 185 (Ohio 1995)). And contrary to Edelstein's argument, this test applies equally to media and non-media defendants. *See Wampler v. Higgins,* 752 N.E.2d 962, 972-73 (Ohio 2001).

Gmoser's alleged description of Edelstein's work as "disjointed" is a subjective, standardless statement that cannot be objectively verified. *See id.* at 979 (providing that, to determine whether a statement is defamatory, courts analyze whether it is "objectively capable of

proof or disproof"). Similarly, Gmoser's statements regarding "getting things" from Edelstein, in context, represent a subjective point of view and do not refer to any specific facts subject to verification. *See Vail*, 649 N.E.2d at 185-86; *see also Wampler*, 752 N.E.2d at 979. Edelstein's argument that Gmoser's statements constitute defamation per se also fails: "In order for a statement to be defamatory per se, it must be defamatory"—i.e., false—"upon the face of the statement." *Dudee v. Philpot*, 133 N.E.3d 590, 604 (Ohio Ct. App. 2019) (citing *Becker v. Toulmin*, 138 N.E.2d 391, 397 (Ohio 1956)). Again, Edelstein failed to allege any facts to show that the statements are objectively verifiable and, thus, whether they are true or false. The district court properly dismissed Edelstein's defamation claim.

<u>Count VII: Substantive Due Process and Count XIX: IIBR</u>

We review the district court's grant of summary judgment de novo. *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where, as here, cross-motions for summary judgment are filed, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

***Substantive Due Process Claim***

The substantive component of due process "bar[s] certain government actions regardless of the fairness of the procedures used to implement them." *Guertin v. Michigan*, 912 F.3d 907, 918 (6th Cir. 2019) (alteration in original) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Substantive due process, though, protects only "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (cleaned up). To establish a substantive due process claim, a plaintiff generally must "demonstrate a deprivation of a constitutionally protected liberty interest or property interest[.]" *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir.

2017) (alteration in original) (quoting *Am. Express Travel Related Servs. Co. v. Kentucky*, 641 F.3d 685, 688 (6th Cir. 2011)). A plaintiff may also be able to establish a substantive due process claim by demonstrating that the government engaged in "actions that 'shock the conscience.'" *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Valot v. Se. Loc. Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)); *see, e.g.*, *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 861-62 (6th Cir. 2012).

"[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the [F]ourteenth [A]mendment." *Parrino*, 869 F.3d at 398 (quoting *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002)). But even if a plaintiff has a liberty interest in her "reputation, good name, honor, and integrity," she still must overcome several hurdles before she can establish that she has been deprived of that interest. For one, "[t]o establish a deprivation of a protected liberty interest in the employment context, [a plaintiff] must demonstrate stigmatizing governmental action which so negatively affects [her] . . . reputation that it effectively forecloses the opportunity to practice a chosen profession." *Id.* (quoting *Joelson v. United States*, 86 F.3d 1413, 1420 (6th Cir. 1996)). Similarly, "[a] charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Joelson*, 86 F.3d at 1420-21 (quoting *Gregory v. Hunt*, 24 F.3d 781, 788 (6th Cir. 1994)). In addition, the "stigmatizing information" must be "publicly disclosed." *Parrino*, 869 F.3d at 398 (quoting *Joelson*, 86 F.3d at 1420).

Edelstein's claimed deprivation of a protected liberty interest fails on multiple fronts. Most detrimental is her inability to show any "stigmatizing" action that damaged her reputation so significantly as to foreclose her from practicing law. Gmoser's statements to Dobson when Dobson called him for an employment reference did not prevent Dobson from hiring Edelstein; she admittedly was hired after those statements were made. Nor did any of Gmoser's statements to Dobson negatively affect Edelstein's reputation such that she could not seek comparable employment. Edelstein purports to have "applied to over 270 jobs without success," but she offered no evidence that her failure to be hired for any of these positions was caused by a damaged reputation stemming from Gmoser's statements. In fact, the affidavit that she provided from a

vocational expert witness opined that it was Edelstein's separation from her employment at the Butler County Court of Common Pleas—which occurred before Gmoser's statements—that had a "detrimental effect" on her employability and rendered her "damaged goods." The expert did not opine that Edelstein's separation from Wood County after her brief time there was a contributing factor, let alone link her purported inability to find a comparable job in her field to Gmoser's *non-public* statements to Dobson.

In short, Edelstein failed to offer evidence that Gmoser made a public statement that was detrimental to her reputation or that she was so stigmatized by Gmoser's non-public statements to Dobson that she was foreclosed from obtaining another job in the legal field. She has thus failed to raise a triable issue of fact as to whether the statements deprived her of a protected liberty interest in her reputation, good name, honor, or integrity, or foreclosed future employment opportunities.

And assuming that Edelstein can establish a due process claim in the absence of a protected liberty interest by showing governmental action that shocks the conscience, *see, e.g.*, *EJS Props.*, 698 F.3d at 861; *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014), her claim fails because the conduct here does not rise to that level. Governmental action shocks the conscience when it is "arbitrary, or conscience shocking, in a constitutional sense." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 547 (6th Cir. 2012) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). There is "no calibrated yard stick," *Lewis*, 523 U.S. at 847, for determining what conduct shocks the conscience, "[b]ut 'abuse of power' serves as the North Star in the analysis," *Siefert v. Hamilton County*, 951 F.3d 753, 766 (6th Cir.), *cert. denied*, 141 S. Ct. 896 (2020). The alleged abuse of power must have been "so 'brutal' and 'offensive' that it did not comport with traditional ideas of fair play and decency." *Lewis*, 523 U.S. at 847 (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435 (1957)).

Edelstein argues that the district court erred in its "shocks the conscience" analysis because it evaluated only the statements—not the "actions"—of Gmoser. But she does not identify what "actions" Gmoser took that shock the conscience. And his statements to Dobson regarding Edelstein's work performance and the present lawsuit do not meet the shocks-the-conscience standard. Providing negative feedback upon request from a prospective employer and complaining

to the employee's new employer about a pending lawsuit is not so "egregious," "brutal," "offensive," "arbitrary," or "capricious" as to shock the conscience. *See Lewis*, 523 U.S. at 846; *Guertin*, 912 F.3d at 918.

Edelstein's remaining arguments regarding this claim are without merit. Relying primarily on *Tinney v. Richland County*,[2] she suggests that some sort of lesser shocks-the-conscience test should apply in cases, like hers, that do not involve the use of physical force. 678 F. App'x 362, 368 (6th Cir. 2017). But *Tinney* merely questioned whether anything other than physical force could ever be deemed conscience-shocking. *See id.* The case did not abrogate application of the shocks-the-conscience test in cases that do not involve physical force. *See id.*; *see also, e.g.*, *Siefert*, 951 F.3d at 766-67 (applying, post-*Tinney*, the shocks-the-conscience test to a non-force substantive due process claim). And although she argues that the district court failed to consider the similarity of *Myers v. Delaware County* to her case, the facts in that case are not analogous. No. 2:07-cv-844, 2008 WL 4862512 (S.D. Ohio Nov. 7, 2008).

Finally, Edelstein argues that her evidence was improperly excluded as hearsay whereas Gmoser's evidence—namely, Dobson's affidavit—was not. But unlike Dobson's affidavit, Edelstein's affidavit, including several of its attachments, was largely based on hearsay. For example, Edelstein relies on her affidavit to support her assertion that Gmoser "used his position as Prosecutor . . . to influence Dobson to terminate her." But the relevant portions of her affidavit are based on hearsay—i.e., what Dobson told her about his conversations with Gmoser and what Dobson represented to her about her employment and termination. Hearsay and statements that lack personal knowledge are inadmissible at the summary judgment stage. *See Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007); Fed. R. Civ. P. 56(c)(4); *see also Boykin v. Fam. Dollar Stores of Mich., LLC*, 3 F.4th 832, 841 (6th Cir. 2021) (stating that "employees usually lack *personal knowledge* about [an] employer's intent" with respect to employment decisions); *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000) (disregarding many of the plaintiff's allegations

---

[2] In *Jackson v. City of Cleveland*, 925 F.3d 793 (6th Cir. 2019), we recognized that *Tinney* had been abrogated on other grounds.

because they were based upon hearsay rather than personal knowledge). Dobson's affidavit, in contrast, is based on personal knowledge; in it, Dobson describes his decision to hire Edelstein despite Gmoser's stated concerns and explains why he later offered Edelstein the option of termination or resignation. In any event, none of the evidence proffered by Edelstein—admissible or not—creates a genuine dispute of material fact regarding whether Gmoser's statements are conscience-shocking. *See Lewis*, 523 U.S. at 847; *Handy-Clay*, 695 F.3d at 547.

### *IIBR Claim*

On appeal, Edelstein argues that she in fact raised a claim for intentional interference with an *employment* relationship, rather than a *business* relationship. But Edelstein's amended complaint clearly raised an IIBR claim; the claim is labeled "**INTENTIONAL INTERFERENCE WITH A BUSINESS RELATIONSHIP**" and alleges that Gmoser engaged in "improper interference" with her "private life and in her employment with the Wood County Prosecutor's Office." In Ohio:

> [t]o establish a claim of tortious interference with a business relationship or contract, a plaintiff must show (1) the existence of a business relationship or contract, (2) the defendant's knowledge of the business relationship or contract, (3) the defendant's intentional or improper action taken to prevent a contract formation, procure the contracts breach, or terminate a business relationship, (4) lack of justification or privilege, and (5) resulting damages.

*Becker v. Cardinal Health, Inc.*, 179 N.E.3d 769, 778-79 (Ohio Ct. App. 2021).

The parties do not dispute that Edelstein and Dobson had a business relationship and that Gmoser was aware of that relationship. So, is there a genuine dispute of material fact as to whether Gmoser intentionally or improperly interfered with or caused a breach of that relationship without justification and, if so, whether Edelstein suffered damages or injury as a result thereof? As set forth below, the answer to both questions is no.

Edelstein failed to produce any evidence that Gmoser intended to interfere with her position at the Wood County Prosecutor's Office without justification. True, Gmoser did not submit an affidavit in this case, while Edelstein submitted many. But even if, as Edelstein alleges, Gmoser contacted Dobson to "complain" about the present lawsuit and "attempt" to get Edelstein to drop

the lawsuit, that is insufficient to support Edelstein's subjective belief that Gmoser did so without justification and with the intent to interfere with her employment at the Wood County Prosecutor's Office. Edelstein has no personal knowledge of the conversation that took place between Gmoser and Dobson at this time—much less any knowledge of Gmoser's intentions with respect to her employment within the Wood County Prosecutor's Office, or any other conversation between Gmoser and Dobson or others in that respect. *See* Fed. R. Civ. P. 56(c)(4); *see also Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008) ("In order to survive summary judgment, Plaintiff cannot rely on conjecture or conclusory accusations. . . . Conclusory assertions, supported only by Plaintiff's own opinions, cannot withstand a motion for summary judgment.").

Moreover, Edelstein cannot show that Gmoser caused her any damages: she has not sufficiently rebutted, with any admissible evidence, Dobson's sworn reasons as to why she was asked to resign. Similarly, as noted above, Edelstein has no personal knowledge of Dobson's and Gmoser's conversations, including any conversation they may have had about why Edelstein was asked to resign. *See* Fed. R. Civ. P. 56(c)(4).

In short, without any evidence showing that Gmoser intentionally and unjustifiably interfered with a business relationship of Edelstein, much less a showing of any damages, the district court properly granted summary judgment on her IIBR claim.

Accordingly, we **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk