IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY EDELSTEIN, | : | Case No. 1:17-CV-305 |
| | : | |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | |
| vs. | : | Magistrate Judge Karen L. Litkovitz |
| | : | |
| JUDGE GREG STEPHENS, *et al.* | : | |
| | : | |
| Defendants. | | |

## **Defendant Judge Gregory Stephens' Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial.**

Pursuant to Fed. R. Civ. P. 50, Defendant Judge Gregory Stephens respectfully renews his motion for judgment as a matter of law on Plaintiff's claims. Alternatively, Pursuant to Fed. Rule Civ. P. 59, Judge Stephens moves for a new trial or to amend the judgment. These Motions are supported by the attached Memorandum in Support and the other matters of record cited herein.

Respectfully submitted,

/s/ Linda L. Woeber
LINDA L. WOEBER (0039112)
COOPER D. BOWEN (0093054)
MONTGOMERY JONSON LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
Tel: (513) 768-5239
Fax: (513) 768-9244
lwoeber@mojolaw.com
cbowen@mojolaw.com
*Counsel for Defendant*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS........................................................................................ i

TABLE OF AUTHORITIES................................................................................. iii

    I.  Legal Standard........................................................................... 4

II. The Court should enter a JNOV or, alternatively, grant a new trial because the jury's finding in favor of Plaintiff on the First Amendment claim cannot be sustained, as the weight of the evidence does not support that Plaintiff's termination was related to her protected conduct.................................................................................. 6

III. The judgment against Judge Greg Stephens must be set aside, and either judgment as a matter of law entered or a new trial ordered, because the jury's verdict on the First Amendment retaliation claim is inconsistent with the verdict on the remaining claims.................................................................................. 12

IV. The judgment against Judge Greg Stephens must be set aside, and either judgment as a matter of law entered or a new trial ordered, because the jury's findings on damages cannot be sustained.................................................................................. 13

    A.  Back pay and compensatory damages should have been cut off at the time of Plaintiff's employment with Wood County................................... 13

    B.  The punitive damages award cannot be sustained.................................... 17

V. Irregularities in the proceedings require a new trial........................................................................... 21

    A.  Plaintiff's Counsel repeatedly and egregiously engaged in prejudicial conduct................................................................................. 21

        i.    Plaintiff's Counsel repeatedly referenced facts not in evidence during her witness examinations, her own testimony, and closing argument.................... 21

        ii.   Plaintiff's Counsel made repeated improper comments about Defense Counsel during closing argument....................................... 26

        iii.  Plaintiff asked questions of Dr. Manges she reasonably should have known the answers to which would not be admissible.......................................................... 28

B.  Plaintiff presented evidence that should be excluded..................................  29

    i.  Plaintiff presented improper Character evidence............................  30

    ii.  Plaintiff presented improper lay witness opinion testimony............  33

C.  Erroneous instructions in the jury charge likely caused the rendition of an improper judgment..................................................................................  34

    i.  The jury instructions on evidence which has not been produced was improper, not supported by facts in the records, and prejudicial.................................................................................  35

    ii.  The punitive damages jury instruction was not supported by the evidence and was prejudicial.............................................................  41

VI. Conclusion.............................................................................................  42

CERTIFICATE OF SERVICE.........................................................................  42

## <u>TABLE OF AUTHORITIES</u>

| <u>Cases</u> | <u>Page</u> |
|---|---|
| *Adkins v. Wolever*, 692 F.3d (6th Cir 2012) (Adkins II) | 36, 37 |
| *Adkins v. Wolever*, 554 F.3d (6th Cir. 2009) (Adkins I) | 36, 40, |
| *Alamo Rent-A-Car, Inc. v. Mancusi,* 632 So. 2d (Fla. 1994) | 20 |
| *Babb v. Maryville Anesthesiologists P.C.,* 942 F. 3d (6th Cir. 2019) | 29 |
| *Bacon v. Klee,* No. 2:13-cv-10016, 2015 U.S. Dist. LEXIS 143428 (E.D. Mich. Octo. 22, 2015) | 26 |
| *Bagherzadeh v. Roeser,* 825 F.2d  (6th Cir. 1987) | 35 |
| *Barnes v. City of Cincinnati,* 401 F.3d (6th Cir. 2005) | 29, 30 |
| *Beanstalk Innovation, Inc. v. SRG Technology*, LLC,  823 F. App'x (6th Cir. 2020) | 20, 21 |
| *Beck v. Haik*, 377 F.3d (6th Cir. 2004) | 34 |
| *Berry v. City of Detroit*, 25 F.3d (6th Cir. 1994) | 28 |
| *Blake v. National Casualty Co*., 607 F. Supp. (C.D. Cal. 1984) | 20 |
| *Bongartz v. State Farm Fire and Cas. Co.,* 1994 U.S. App. LEXIS 16492, 1994 WL 315240 (6th Cir. 1994). | 34 |
| *Brady v. Thurston Motor Lines, Inc., 753 F. 2d (4th Cir. 1985)* | 15 |
| *Brown v. Duke Energy Corp.,* No. 1:13cv869, 2019 U.S. Dist. LEXIS 54923 (S.D. Ohio 2019) | 39 |
| *Brown v. Mitchell*, 441 F.3d (6th Cir. 2006) | 27 |
| *Brown v. Royalty*, 535 F.2d 1024, 1974 U.S. App. LEXIS 11494 (8th Cir. 1976) | 21 |
| *Campbell v. Mobile Solution Corporation*, No. 1:07cv1037, 2010 U.S. Dist. LEXIS 29446 (S.D. Ohio 2010) | 8,18 |
| *Clark v. Chrysler Corp*., 439 F.3d (6th Cir. 2006) | 21 |
| *Conte v. General Housewares Corp.,* 215 F.3d (6th Cir. 2000) | 4 |

*Crabbs v. Pitts,* 2018 U.S. Dist. LEXIS 181353 (S.D. Ohio 2018)     30

*Desmone v. Adams,* 165 F.3d 27, 1998 U.S. App. LEXIS 36538 (6th Cir. Sept 23, 1998)     8

*Deters v. Equifax Credit Information Service, Inc.,* 202 F.3d (10th Cir. 2000)     17

*Easley v. Haywood*, 2015 U.S. Dist. LEXIS 55463, 2015 WL 1926399 (S.D. Ohio Apr. 28, 2015)     30

*EEOC v. EMC Corporation*, 2000 U.S. App. LEXIS 1941 (6th Cir. 2000)     18

*EEOC v. Gregg Appliances,* Inc., No. 3:10 C 00861, 2015 U.S. Dist. LEXIS 108963 (M.D. Tenn. 2015)     36, 37, 38, 41

*EEOC v. Harbert- Yeargin, Inc.,* 266 F.3d (6th Cir. 2001)     17

*Esch v. County of Kent,* 699 F.App'x  (6th Cir. 2017)     29

*Field v. Trigg City Hospital, Inc. ,* 386 F.3d (6th Cir. 2004)     30

*Flagg v. City of Detroit,* 715 F.3d (6th Cir. 2013)     36, 37

*Ford Motor Co. v. EEOC,* 458 U.S. 219, 232, 102 S. Ct. 3057, 73 L. Ed. 2d 721 (1982)     14

*Fryman v. Federal Crop Ins. Corp.,* 936 F.2d  (6th Cir. 1991)     35

*Greenwell v. Boatwright,* 184 F.3d (6th Cir. 1999)     29

*Greer v. Miller,* 483 U.S. 756, 766 n.8, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987)     5

*Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988)     13

*Haydar v. Amazon Corporation, LLC*, 2019 U.S. Dist. LEXIS 110956 (E.D. Mich 2019)     30

*Hillard v. Hargraves,* 197 F.R.D 358, 2000 U.S. Dist. LEXIS 1512 (N.D. Ill. 2000)     21

*Ivey v. Wilson,* 832 F.2d (6th Cir. 1987)     35

*Kendel v. Local 17-A UFCW*, 512 Fed. Appx. (6th Cir. 2013)     4

*King v. Zamiara,* 680 F.3d 686, 695 (6th Cir. 2012)     7

*King v. Zamiara,* 788 F.3d 207, 216 (6th Cir. 2015)     17

*Kolstad v. ADA*, 527 U.S. (1999) — 18

*Koufakis v. Carvel*, 425 F.2d 892, 14 Fed. R. Serv. 2d (Callaghan) 1, 1970 U.S. App. LEXIS 9579 (2d Cir. 1970) — 27

*Lombard v. MCI Telecommunications Corp.*, 13 F. Supp. 2d (N.D. Ohio 1998) — 39

*Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) — 10

*McKennon v. Nashville Banner Publishing Co.*, 115 S. Ct. (1995) — 16

*Mendez-Matos v. Municipality of Guaynabo,* 557 F.3d (1st Cir. 2009) — 18

*Mitroff v. Xomox Corp.*, 797 F.2d (6th Circuit 2986. — 28

*Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. (1977) — 6

*N.L.R.B. v. Ryder System, Inc.*, 983 F.2d(6th Cir. 1993) — 14

*Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F. 3d 1507, 310 U.S. App. D.C. 82 (D.C. Cir. 1995) — 31

*O-SoDetroit, Inc. v. Home Insurance Co.*, 973 F. 2d (6th Cir. 1992) — 34

*Park W. Galleries, Inc. v. Hochman,* 692 F.3d (6th Cir. 2012) — 21

*Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d (5th Cir. 1996) — 14

*Perrea v. Cincinnati Public Schools,* 709 F. Supp. (S.D. Ohio 2010) — 13

*Pick v. General Electric Co.,* 1999 U.S. App. LEXIS 3992, 1999 WL 187448 (6th Cir. Mar. 8, 1999) — 35

*Powell v. Rockwell International Corporation,* 788 F.2d (5th Cir. 1986) — 12

*Rasimas v. Michigan Department of Mental Health,* 714 F.2d 614, 623 (6th Cir. 1983) — 13

*Ray v. Iuka Special Municipal Separate School District*, 51 F.3d 1246, 1252 (5th Cir. 1995) — 13

*Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 120 S. Ct. 2110 (2000) — 8

*Reynolds v. Pegler*, 223 F.2d (2d Cir. 1955) — 19

*Richardson v. Marsh*, 481 U.S. 200, 2011, 107 S. Ct. 1702, 95 L. Ed. 2d (1987) ............ 5

*Rose v. Hearst Magazines Division*, 814 F.2d (7th Cir. 1987) ............ 12

*SEC v. Towers Financial Corporation*, 966 F. Supp (S.D.N.Y. 1997) ............ 30

*Skinner v. Bolden,* 89 F. App'x (6th Cir. 2004) ............ 8

*Slayton v. Ohio Department of Youth Services,* 206 F.3d 669 (6th Cir. 2000) ............ 5

*Smith v. Campbell*, 250 F.3d (6th Cir. 2001) ............ 8

*Smith v. Chrysler Corporation*, 155 F.3d (6th Cir. 1998) ............ 10

*Smith v. Jones*, 721 F. App'x (6th Cir. 2018) ............ 29

*Smith v. Wade,* 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d  (1983) ............ 17

*Sowards v. Loudon City*, 203 F.3d (6th Cir. 2000) ............ 6

*Sterling v. Velsicol Chemical Corporation,* 855 F.2d (6th Cir. 1988) ............ 19, 20

*Stocker v. United States,* 705 F.3d (6th Cir. 2013) ............ 38

*Strickland v. Owens Corning,* 142 F.3d (6th Cir. 1998) ............ 21

*Swipies v. Kofka,* 419 F.3d (8th Cir. 2005) ............ 18

*Teal v. E.I. Dupont de Nemours and Co.,* 728 F.2d (6th Cir. 1984) ............ 35

*Thaddeus- X v. Blatter*, 175 F.3d (6th Cir. 1999) ............ 7,8

*Thurman v. Yellow Freight Systems, Inc.,* 90 F.3d (6th Cir. 1996) ............ 13, 14

*Tisdale v. Federal Express Corporation*., 415 F.3d (6th Cir. 2005) ............ 18, 30

*Torres v. County of Oakland*, 758 F. 2d (6th Cir. 1985) ............ 28

*Toth v. Yoder Co.,* 749 F.2d (6th Cir. 1984) ............ 5

*United States v. Bustamante*, 1992 U.S. App. LEXIS 19306, 1992 WL 192545 (6th Cir. Aug. 12, 1992) ............ 35

*United States v. Collins*, 78 F.3d (6th Cir. 1996) ............ 26

*United States v. Volkman*, 797 F.3d (6th Cir. 2015) ............ 28

*United States v. Wells*, 211 F.3d  (6th Cir. 2000);    34

*United States v. Young*, 470 U.S. 1, 9, 105 S. Ct. 1038, 1043, 84 L. Ed. 2d 1 (1985)    26

*Universal City Studios, Inc. v. Nintendo Co.,* 797 F.2d (2d Cir.), cert denied, 479 U.S. 987, 107 S. Ct. 578, 93 L. Ed. 2d (1986)    19, 20

*Washington v. Hofbauer*, 28 F3d(6th Circuit 2000)    5

*West v. Bell,* 550 F.3d (6th Cir. 2008)    27

*Whatley v. Skaggs Companies*, Inc., 707 F2d 1129, 1138 (10th Cir.), cert denied, 464 U.S. 938, 104 S. Ct. 349, 78 L. Ed. 2d (1983)    14

*White v. Burlington Northern & Santa Fe Ry*., 364 F.3d (6th Cir. 2004)    18

*Wilhelm v. Blue Bell, Inc.,* 773 F.2d (4th Cir. 1985), cert. denied, 475 U.S. 1016, 106 S. Ct. 1199, 89 L. Ed. 2d(1986)    35

*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580,583 (6th Cir. 2012), citing Mezibov v. Allen, 411 F.3d 712, 717 (6th Circ. 2005)    6

*Zenian v. District of Columbia,* 283 F. Supp. 2d (D.C. 2003)    31

*Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d (S.D.N.Y 2005)    31

**Statutes and Rules**                                                    **Page**

Fed. R. Civ. P. 26    33

Fed. R. Civ. P. 50    1,8

Fed R. Civ. P. 50(b)    42

Fed R. Civ. P. 50(b)(1).    4

Fed. R. Civ. P. 56    8

Fed. R. Civ. P. 59    1, 4

Fed. Rule Civ. P. 59(a)    4

Fed Civ. R. 59(a)(1)(A).    2

Fed. R. Crim. P. 16    33

Fed. R. Evid. 404                                    32

Fed. R. Evid. 404(a)                                 30

Federal Rule of Evidence 404(a)(2)                   30

Fed. R. Evid. 406, Advisory Committee Note           31, 32

Fed. R. Evid. 701 advisory committee's note          33, 34

Fed. R. Evid. 704 advisory comm. notes               28

Federal Rule of Evidence 704(a)                      28


42 U.S.C. § 1983                                     2, 18

42 U.S.C. § 2000e-5(g);                              14


R.C. 4112.02                                         2, 6, 12


Ohio Rule of Professional Conduct 3.4(e)             28

Ohio Evid. R. 404                                    32, 33,

Ohio Evid. R. 406                                    31, 32

Ohio Evid. R. 701                                    33

Ohio Evid. R. 702                                    33

## <u>MEMORANDUM IN SUPPORT</u>

Although the Court entered judgment based on the jury's verdict against Judge Gregory Stephens on Plaintiff Kimberly Edelstein's First Amendment Claim, the jury found in Judge Stephens' favor on Plaintiff's Fourteenth Amendment Equal Protection claim under 42 U.S.C. § 1983 and state law claim under R.C. 4112.02. The sole claim on which Edelstein prevailed – First Amendment retaliation – is the foundation for the entire judgment, including the awards of back pay, compensatory damages, and punitive damages. Neither that claim nor the resulting judgment is sustainable.

The Court should enter judgment as a matter of law for Judge Stephens because the evidence, even when construed in the light most favorable to Edelstein, does not support the jury's finding that Judge Stephens retaliated against Edelstein because she requested time off work for the October Jewish High Holy Days. Reasonable minds could reach but one conclusion based on the evidence presented at trial: Judge Stephens' termination of Ms. Edelstein had nothing to do with her request for time off, or the fact that she was Jewish (as evidenced by the fact the jury found for Judge Stephens on the Equal Protection and state law discrimination claim). Because her entire recovery rests on the jury's First Amendment retaliation finding, Edelstein should take nothing against Judge Stephens. Even if the jury's First Amendment retaliation finding is sustained, the back pay award should be reduced in accordance with the evidence, and the punitive damages award must be set aside as no evidence was presented at trial that would support a finding of malice.

If the Court does not render a take-nothing judgment, then it should, at a minimum, grant a new trial under Civ. R. 59(a)(1)(A). The jury's verdict on the First Amendment retaliation claim is not only contrary to the weight of the evidence but is also contrary to law.

2

The punitive damages finding is equally problematic. The jury's determination that Edelstein should be awarded punitive damages could only result from passion or prejudice, considering the lack of evidence that Judge Stephens retaliated against Edelstein because of her request for time off, let alone that his actions demonstrated the kind of malice or recklessness required to sustain such an award.

A review of the record will show the jury's finding resulted from evidence and argument that should not have been permitted for the jury's consideration.[1] Plaintiff Edelstein, acting as her own counsel *pro se*, repeatedly and egregiously engaged in prejudicial misconduct throughout the trial and in closing arguments. Both during witness examinations and in argument, Edelstein made repeated references to alleged facts not in the record and made unwarranted improper comments about opposing counsel during closing arguments. Specifically, Edelstein made improper and prejudicial arguments based on speculation that was not supported by any record evidence, and asked questions of witnesses she reasonably should have known the answers to which would not have been admissible. Additionally, Edelstein presented irrelevant character evidence and improper lay witness opinion testimony.

Finally, errors of law occurred throughout these proceedings, beginning with the pretrial denial of Judge Stephens' motion for summary judgment on the remaining claims and continuing through trial to include the denial in part of Judge Stephens' motion in limine and motion for judgment as a matter of law. Additional errors occurred with respect to the submission of jury instructions and interrogatories that had the effect of lessening Edelstein's burden of proof and prejudicing Judge Stephens. Those errors,

---

[1] Counsel for Judge Stephens timely requested transcription of the relevant portions of the trial proceedings but have received only closing arguments to date (Declaration of Cooper Bowen attached hereto). Judge Stephens will seek leave to supplement the current motion with additional citations to the record when additional transcripts are made available.

together with the jury's exposure to certain inadmissible evidence contributed to the erroneous finding of liability against Judge Stephens. These errors, considered singly or together with other issues that require the jury's verdict to be set aside, are good cause for judgment as a matter of law in Judge Stephens' favor, or a new trial.

## I. Legal Standard

Rule 50 of the Federal Rules of Civil Procedure provides that a judgment as a matter of law may be granted against a party "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." The Court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law. Fed. R. Civ. P. 50(b)(1). In directing the entry of judgment as a matter of law, the Court may reverse the jury's determination or vacate the jury's award of damages on one or more issues, or all issues.

In the alternative, pursuant to Rule 59, a new trial may be granted to any party on all or part of the issues in an action in which there has been a trial to the jury. The motion may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). A court may order a new trial under Rule 59 if "(1) the verdict is against the clear weight of the evidence; (2) the damages award is excessive; or (3) the trial was influenced by bias, prejudice, or other unfairness to the moving party." *Conte v. General Housewares Corp.,* 215 F.3d 628, 637-638 (6th Cir. 2000). Additionally, errors that do not alone require reversal may cumulatively merit reversal for a new trial under Fed. R. Civ. P. 59. *Kendel v. Local 17-A UFCW*, 512 Fed. Appx. 472, 485 (6th Cir. 2013).

When ruling on a motion for new trial on the basis that the verdict was against the clear weight of the evidence, the district court "may compare the opposing proofs and weigh the evidence." *Id* at 637; citing *Toth v. Yoder Co.,* 749 F.2d 1190, 1197 (6th Cir. 1984).

In determining whether a jury award is excessive, a trial court looks to whether the award is (1) beyond the range supportable by proof, (2) so excessive as to shock the conscience, or 3) the result of a mistake. *Slayton v. Ohio Dep't of Youth Servs.*, 206 F.3d 669 (6th Cir. 2000) Moreover, the excessiveness of a verdict is primarily a "matter . . . for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses." *Id.*

Courts generally presume that properly instructed juries are "capable of considering evidence for one purpose but not another." *Washington v. Hofbauer*, 228 F.3d 689, 705 (6th Cir. 2000) (citing *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987)). This presumption applies "unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be 'devastating' to the [objecting party]." *Greer v. Miller*, 483 U.S. 756, 766 n.8, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987) (citations omitted). However, the Sixth Circuit has recognized, "in close cases the improper admission of prejudicial evidence is all the more damaging." *Mitroff v. Xomox Corp.*, 797 F.2d 271, 277 (6th Cir. 1986).

As becomes clear when examining the trial as a whole, there is an overwhelming probability that the improper arguments and testimony Edelstein presented over the course of nine days poisoned the jury against Judge Stephens. It is also apparent that this

was "a close case," given the jury's split verdict on two counts, both of which require proof of anti-Jewish animus.

**II.  The Court should enter a JNOV or, alternatively, grant a new trial because the jury's finding in favor of Plaintiff on the First Amendment claim cannot be sustained, as the weight of the evidence does not support that Plaintiff's termination was related to her protected conduct.**

The jury properly concluded Plaintiff did not prove that Judge Stephens discriminated against Edelstein based on her Jewish faith, deciding in Judge Stephens' favor on the Equal Protection and R.C. 4112.02 claims. At the same time, the jury found that Judge Stephens' termination of Edelstein was retaliation for her request to take the October Jewish High Holy Days off, in violation of her First Amendment Free Exercise rights.

In order to prevail on her First Amendment claim, Edelstein was required to prove by a preponderance of the evidence that:

1. Plaintiff engaged in activity protected by the First Amendment;

2. Plaintiff's activity was a substantial or motivating factor in Defendant's decision to discharge Plaintiff from employment;

3. Defendant's actions were "under color" of the authority of state law or custom; and

4. Defendant's actions were the proximate or legal cause of damages sustained by Plaintiff.

*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012), citing *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005).

If the jury found that Ms. Edelstein proved all four elements by a preponderance of the evidence, then the burden would have shifted to Judge Stephens to show by a preponderance of the evidence that he would have reached the same decision even in the absence of the protected conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Sowards v. Loudon Cty.*, 203 F.3d 426, 431 n.1 (6th Cir. 2000). In

other words, Edelstein had the burden to prove that, despite all of Judge Stephens' reasons for wanting to replace Edelstein, he would not have terminated her had she not requested time off work for the Jewish Holidays.

The sole basis for Edelstein's Free Exercise claim is that she was terminated close in time to requesting (and receiving) permission to take time off for the Jewish holidays in October 2016. The evidence, based on testimony from Edelstein and Stephens, was that Edelstein made a request on either July 27 or July 28, 2016, for eight days off in October for the Jewish High Holy Days. During closing argument, Edelstein improperly represented to the jury that the evidence showed Judge Stephens had made the decision to terminate her "two and a half business hours" after she requested the time off, stating, "I was fired, for all intents and purposes, within two and a half business hours for that time off where he yelled at me and got upset (Edelstein Closing Argument, Doc. 241, PAGEID # 3573, ln. 4-13). The uncontroverted testimony of Judge Stephens was that he did not decide to terminate Edelstein until August 1, 2016.

Edelstein's misrepresentation to the jury was not mere argument, and after nine days of trial in which Edelstein repeatedly intermixed testimony and argument, it is likely the jury was understandably unable to distinguish between Edelstein's testimony and argument. On this point and several other key issues, it is apparent this confusion unfairly prejudiced Judge Stephens.

Further, the temporal proximity of these events, by itself, does not demonstrate retaliation. To prove causation in a First Amendment retaliation claim, a plaintiff must show (1) that the adverse action was proximately caused by an individual defendant's act; and (2) that the defendant was "motivated in substantial part by a desire to punish an

individual for exercise of a constitutional right." *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999)).

While retaliation is "easy to allege" and is seldom demonstrated by direct evidence,[2] "conclusory allegations of temporal proximity are not sufficient to show retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (citing *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001)). Rather, "[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred." *Desmone v. Adams*, 165 F.3d 27, 1998 U.S. App. LEXIS 36538, *10 (6th Cir. Sep. 23, 1998).

When presented with this evidence, a reasonable jury could not (and did not) determine that Judge Stephens harbored discriminatory animus against Edelstein because she is Jewish. Likewise, the evidence does not support the jury's finding that Judge Stephens terminated her in retaliation for exercising her Jewish faith by asking for time off to observe work-restricted holidays.

As the Sixth Circuit stated in *Thaddeus-X*, "[i]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment." 175 F.3d at 399. The same holds true for judgment as a matter of law under Rule 50. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000) (Standard for granting summary judgment, under Rule 56 of Federal Rules of Civil Procedure, mirrors standard for judgment as matter of law, under Rule 50 of Federal Rules of Civil Procedure, such that inquiry under each is same). It stands to reason that the jury was influenced by Edelstein's improper commentary, which they may have mistaken for evidence. Judge Stephens granted or consented to

---

[2] *Catanzaro v. Mich. Dep't of Corr.*, No. 1:09-cv-2, 2011 U.S. Dist. LEXIS 152543, *8 (W.D. Mich. Dec. 16, 2011) (quoting *Huff v. Rutter*, No. 2:05-cv-92, 2006 U.S. Dist. LEXIST 49463 (W.D. Mich. July 19, 2006) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987))).

every request from Edelstein for time off, both for previous Jewish holidays (Purim and/or Passover), for vacation, and a magistrate's conference.

See e.g. Edelstein Closing Argument, Doc. 241, PAGEID # 3578, ln. 6-10:

> EDELSTEIN: I informed him when he hired me that I had two preplanned weeks off, that's what I told him, one in April, one in May. Didn't tell him what they were for, just told him I had two preplanned weeks, is he okay with that. He said yes."

Judge Stephens unequivocally testified that he knew the time off in April for Passover, and Edelstein's earliest statements about Judge Stephens' knowledge of her faith show she cannot credibly deny that fact (DX 14, Letter to Coleman at the EEOC). Further, Judge Stephens' perspective on time off requested by personal staff, which he testified was not important to him as long as the work was done to his satisfaction, was consistently shown in his response to time off requests of Edelstein and other members of his personal staff. In fact, he proactively offered time off with no loss of paid time to his entire staff while he was out of the office on vacation in July 2016.

Edelstein presented no evidence that Judge Stephens begrudged her time off for any reason throughout her employment. And other than Judge Stephens' initial reaction to her request for time off in October ("Holy Cow, eight days!"), his response to this request was the same. He approved the time; told her to write it in the court's calendar; and went on with his day. He testified under oath that he did not "yell" during this conversation; that the request was a "non-event;" and that if he had even thought about it beyond that conversation, he would have considered whether the timing of his decision to terminate Edelstein for other reasons would result in the appearance of a connection.

 Further, Judge Stephens has also come forward with evidence of his legitimate, non-discriminatory grounds for terminating Edelstein: personality conflicts with the

Judge and his staff and resistance/ refusal to adhere to Judge Stephens' changes in office policy. The fact of conflict among staff was not contradicted by the evidence. Despite Edelstein's arguments that she perceived no conflict, the evidence was overwhelmingly to the contrary, with the only question being who or what was the source of the conflict. Judge Stephens did not have to be right about his perception that Edelstein was the source of multiple problems among his staff. Under the honest-belief rule, "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 806 (6th Cir. 1998)).  The law is clear that, as long as Judge Stephens would not have terminated Edelstein but for her request for time off to observe the Jewish holidays in October, Edelstein failed to prove her claim under the First Amendment.

Throughout the trial, Edelstein repeatedly characterized eyewitness descriptions of her conduct in Judge Stephen's chambers and courtroom as "lies" and argued that she had no knowledge of the tensions in the office. Yet, when examining the actual testimony, it becomes clear that the tension and conflicts were not disputed by Edelstein.  She simply places the blame elsewhere. Edelstein's own testimony confirmed that she resisted the change to in person status reports, failed to clean her office when requested, had conflicts with Melinda Barger over Supreme Court reports (to the point that she complained to other Court employees), had a major conflict with Ms. Barger and Ms. Wilson during Judge Stephens' July vacation, and that she and Ms. Barger had periods of not speaking to each other. See e.g. Edelstein Closing Argument, Doc. 241, PAGEID # 3573, ln. 25; p.

3574, ln. 1-2 ("I said good night to her. She didn't say anything. I said good morning the next day, and she didn't say anything, didn't turn around to look at me").

Further, Edelstein fluctuated between testifying that she got along with everyone, to testifying that Ms. Barger was "nasty," "juvenile," and "offensive;" that Judge Stephens was "imperious" and "arrogant;" and she was the only one in chambers who actually worked, while she viewed the others, including Judge Stephens, as doing nothing by "playing on the internet." See e.g. Doc. 241, PAGEID # 3587, ln. 18 ("The defendant is an arrogant man"); PAGEID # 3595, ln. 8 ("But [Melinda Barger] was a nasty person"); PAGEID # 3612, ln. 23-24 ("I didn't even have a problem with his imperious attitude").

In turn, there was ample testimony that Judge Stephens was not strict with time off requests, and would often not even require employees to submit time slips. Though she testified Judge Stephens' did not "sign off" or "approve" her time off for Passover, a magistrate's conference, and her May vacation, she acknowledged she told him her plan to take this time off, comprising of over ten work days, and he raised no objection. Nor did Judge Stephens require her to use time off for Passover, which is shown on the Kronos report (DX 7). Likewise, Judge Stephens testified he often would not even read time off slips that were presented to him, and as long as the work was done, he had no objection to his staff taking time off.

Yet, Edelstein claims she was terminated for requested time for the Jewish High Holy Days when there is no evidence other than temporal proximity. Beyond this, Edelstein presented no evidence to support a finding that her termination was motivated by constitutionally-protected activity, and the Court should issue judgment as a matter of law for Judge Stephens on Edelstein's § 1983 Free Exercise claim.

11

III.    **The judgment against Judge Greg Stephens must be set aside, and either judgment as a matter of law entered or a new trial ordered, because the jury's verdict on the First Amendment retaliation claim is inconsistent with the verdict on the remaining claims.**

The jury properly concluded Plaintiff did not prove that Judge Stephens discriminated against Edelstein based on her Jewish faith, deciding in Judge Stephens' favor on the Equal Protection and R.C. 4112.02 claims. At the same time, the jury found that Judge Stephens' termination of Edelstein was retaliation for her request to take the October Jewish High Holy Days off, in violation of her First Amendment Free Exercise rights. The jury's findings on the Equal Protection and R.C. 4112.02 claims shows Edelstein did not establish by a preponderance of the evidence that Judge Stephens held any discriminatory intent or animus toward her.  Further, Edelstein presented no evidence that Judge Stephens resisted  requests for time off requested by her or other members of his personal staff. All of the evidence was to the contrary. Couple this fact with the lack of finding of discriminatory animus, and it becomes clear the verdicts are inconsistent.

For example, in *Rose v. Hearst Magazines Division*, 814 F.2d 491, 493 (7th Cir. 1987), the Seventh Circuit addressed a jury's determinations (i) that the plaintiff was discharged in retaliation for  filing of age discrimination charges, but (ii) that the defendant employer had not willfully violated the age discrimination law through this discharge. The court found that the jury's findings on these two points were "irreconcilable," reasoning that a verdict in the plaintiff's favor on his claim of retaliatory discharge necessarily meant that the employer had acted willfully. *Rose*, 814 F.2d at

493. Similarly, in *Powell v. Rockwell International Corp.*, 788 F.2d 279, 286 (5th Cir. 1986), the Fifth Circuit held that in light of the jury's specific finding that the defendant employer had terminated the plaintiff "in retaliation for filing his [age discrimination] claim," the jury must have "necessarily found 'willfulness'" as well. *See also Ray v. Iuka Special Municipal Separate School District*, 51 F.3d 1246, 1252 (5th Cir. 1995) (opining that "'[accidental' retaliation is factually impossible," and holding that the "same evidence" relied upon by the jury to find retaliation also supported its determination of willfulness).

In the instant case, Edelstein's Equal Protection and state law claims required her to similarly demonstrate she was the victim of "intentional or purposeful discrimination," which she failed to do. *Perrea v. Cincinnati Pub. Schools*, 709 F.Supp. 628, 646 (S.D. Ohio 2010) (quoting *Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir. 1988). Thus, as in *Rose* and *Powell*, the verdicts are inherently inconsistent and warrant judgment as a matter of law in Judge Stephens' favor on the First Amendment claim, or at a minimum a new trial.

### IV. The judgment against Judge Greg Stephens must be set aside, and either judgment as a matter of law entered or a new trial ordered, because the jury's findings on damages cannot be sustained.

#### A. Back pay and compensatory damages should have been cut off at the time of Plaintiff's employment with Wood County.

The jury awarded back pay in the amount of $825,000 and compensatory damages in the amount of $250,000 related to Edelstein's termination. In employment discrimination cases, once the plaintiff presents evidence on the issue of damages, "the burden of producing sufficient evidence to establish the amount of interim earnings or lack of diligence shifts to the defendant." *Rasimas v. Michigan Dep't of Mental Health*, 714 F.2d 614, 623 (6th Cir. 1983) (internal citations omitted). Additionally, a plaintiff has

a duty to mitigate damages by seeking suitable employment with reasonable diligence. *Thurman v. Yellow Freight Systems, Inc.*, 90 F.3d 1160, 1168 (6th Cir. 1996).

An employer's liability for economic damages including backpay may be tolled where the plaintiff's loss of subsequent employment is deemed "willful." *Thurman*, 90 F.3d at 1168. In *Thurman*, the Sixth Circuit explained:

> A plaintiff has a duty to mitigate his damages by seeking suitable employment with reasonable diligence. 42 U.S.C. § 2000e-5(g); *Ford Motor Co. v. EEOC*, 458 U.S. 219, 232, 102 S. Ct. 3057, 73 L. Ed. 2d 721 (1982); *Whatley v. Skaggs Companies, Inc.*, 707 F.2d 1129, 1138 (10th Cir.), *cert. denied,* 464 U.S. 938, 104 S. Ct. 349, 78 L. Ed. 2d 314 (1983). If an employee suffers a "willful loss of earnings," however, the employer's backpay liability is tolled. It is the employer's burden to prove that backpay should be tolled. *N.L.R.B. v. Ryder System Inc.*, 983 F.2d 705, 712 (6th Cir. 1993).

*Thurman*, 90 F.3d at 1168-69. Thus, if Plaintiff was directly responsible for losing her subsequent employment, she "effectively remove[d] herself from the job market for purposes of receiving backpay." *See Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 937 (5th Cir. 1996).

Here, there is no dispute that Edelstein found subsequent employment in the Wood County Prosecutor's Office at comparable pay and benefits as of March 2017, and that she resigned from that position in response to her employer's notice that she was about to be terminated.

Although Edelstein's resignation was not voluntary, a discharge from subsequent employment will toll backpay when it was based on employee misconduct or violations of company rules. In *Ryder*, an employer claimed backpay should be tolled because the plaintiffs were fired for insubordination and therefore suffered a willful loss of earnings. The court held, "[A] discharge from interim employment will toll backpay liability only if the employee's misconduct was 'gross' or 'egregious.'" *Ryder System Inc.*, 983 F.2d at 713.

14

Similarly, an employee's discharge for cause due to his willful violation of company rules will toll backpay. *Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269 (4th Cir. 1985). In the *Thurston Motor* case, two employees had been wrongfully terminated but found comparable employment soon after. *Id.* at 1272. However, both employees were terminated from their new positions for willfully violating the new employers' company rules and policies. *Id.* The Fourth Circuit ultimately held that the two employees were *not* entitled to back pay for the period following these for-cause terminations. *Id.* at 1280. The court explained that the employees were not only required to use reasonable diligence to *find* suitable replacement employment, they were required to use reasonable diligence to *maintain* that employment. *Id.* at 1277.

At trial, evidence was presented in the form of testimony from Edelstein's former employer, Wood County Prosecutor Paul Dobson, that Edelstein engaged in misconduct while employed at Wood County that resulted in her termination. There was no evidence presented that she was terminated for any other reason. Edelstein argued that conversations between Mr. Dobson and Butler County Prosecutor Mike Gmoser actually caused her termination. In fact, the trial testimony revealed that Mr. Dobson offered Ms. Edelstein employment after receiving a mixed reference from Mr. Gmoser.

Further, the details of those conversations as shown by the evidence do not support Edelstein's speculation about Mr. Gmoser calling Mr. Dobson in anger, yelling at him, or insisting that Edelstein be terminated. To the contrary, Mr. Dobson testified that Mr. Gmoser did not sound angry; did not yell; and never told him to terminate Ms. Edelstein. To the contrary, Mr. Gmoser commented it was helpful that Dobson had hired Edelstein, as it would make her claims against Mr. Gmoser meritless. There was no evidence that

Mr. Dobson's later decision to terminate Edelstein's employment was influenced in any way by his conversations with Mr. Gmoser.

Mr. Dobson testified that he asked Plaintiff to resign as an Assistant Prosecutor because he learned he could not trust her to truthfully convey events to him; that she was willing to fabricate conversations and events to her own benefit; that she was unnecessarily combative and unprofessional with opposing counsel and colleagues; and disruptive to the cooperative working environment he had cultivated in the Prosecutor's Office.

Additionally, Edelstein admitted at trial that she lied on her application regarding her termination by Judge Stephens, when the application required attestation that lying on the application would result in termination (Defendant's Ex. DX 15) This intentional and dishonest conduct further demonstrates that it was Edelstein's own willful actions that led to the end of her employment with Wood County.

The purpose of an award of lost wages in the form of back pay is to put the Plaintiff in the same position that she would have been in had the defendant's alleged discriminatory conduct not occurred, not in a better position. *See McKennon v. Nashville Banner Publishing Co.,* 115 S. Ct. 879, 886 (1995). When Edelstein engaged in misconduct that resulted her resignation from Wood County, she failed to mitigate her damages by maintaining her employment. Thus, Plaintiff's accrual of lost wages, in the form of backpay, should have been tolled as of the date of her employment at Wood County, as she lost that opportunity due to her own egregious misconduct. The jury's back pay award included five years after Edelstein's Wood County resignation and put her in a much

better position than she would have been if she had not been terminated by Judge Stephens.

The evidence at trial, including Edelstein's own admissions, showed her failure to obtain and keep employment following her termination from Butler County was caused by her focus on litigating a series of claims, most of which were found to be without merit as a matter of law, not by any act or omission of Judge Stephens, who offered to assist in her job search by writing a letter of recommendation.

Therefore, Judge Stephens requests judgment as a matter of law vacating or reducing the back pay award to the time of Edelstein's resignation from Wood County. In the alternative, Judge Stephens requests a new trial as the back pay award is not supported by the weight of the evidence.

### B. The punitive damages award cannot be sustained.

The judgment awarding Edelstein punitive damages is not sustained by the weight of the evidence. There is no evidence, or legally insufficient evidence, that Judge Stephens' acts or omissions could reasonably be construed as malicious. A new trial on all issues is required because the punitive damages award appears to have been motivated by passion or prejudice, rather than the evidence.

Punitive damages may be awarded in a § 1983 case "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983); *See*, *e.g.*, *EEOC v. Harbert-Yeargin, Inc.*, 266 F.3d 498, 513-14 (6th Cir. 2001) (recklessness found where managers did not adequately respond to employee's complaints of harassment); *see also Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1269 (10th Cir. 2000) ("[R]ecklessness and malice are to be inferred when a

manager responsible for setting or enforcing policy in the area of discrimination does not respond to complaints despite knowledge of serious harassment.").

Furthermore, in *Kolstad v. ADA*, 527 U.S. 526 (1999), the U.S. Supreme Court noted that that the malice and recklessness standards for punitive damages found in civil rights statutes, including 42 U.S.C. § 1983[3], reflect that Congress, "intended to narrow the class of cases for which punitive damages are available to a subset of those involving intentional discrimination." *Kolstad*, 527 U.S. at 535. Like other circuits, the Sixth Circuit has adopted the reasoning of *Kolstad* in limiting punitive damages awards to cases with facts that go beyond  intentional discrimination. *See White v. Burlington Northern & Santa Fe Ry.,* 364 F.3d 789, 808 (6th Cir. 2004); *Tisdale v. Fed. Express Corp*., 415 F.3d 516, 531 (6th Cir. 2005); *EEOC v. EMC Corp*., 2000 U.S. App. LEXIS 1941, *18 (6th Cir. 2000). Indeed, this Court has adopted the reasoning of *Kolstad*, and recognized a more stringent standard that even intentional discrimination is not enough to support punitive damages. *See Campbell v. Mobile Solution Corp*. No. 1:07cv1037, 2010 U.S. Dist. LEXIS 29446 (S.D. Ohio 2010), citing *White*, 364 F.3d at 808 and *Kolstad*, 527 U.S. at 536-37 ("To meet [the malice or reckless indifference] requirement, a plaintiff must show 'more than merely intentional discrimination'").

Here, there was no finding of intentional discrimination, as reflected by the jury finding in Judge Stephens' favor on the Equal Protection and Ohio law claims. Judge Stephens testified that he terminated Edelstein based on advice he received from long-

---

[3] *Kolstad* analyzed the punitive damages standard in the Civil Rights Act of 1991, which was "quite obviously drawn" from the Supreme Court's holding in *Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625 (1983) wherein the court analyzed punitive damages under 42 U.S.C. § 1983. *Kolstad*, 527 U.S. at 548. Courts in other circuits have applied *Kolstad* to other claims involving punitive damages, including claims under 42 U.S.C. § 1983. *See Mendez-Matos v. Municipality of Guaynabo*, 557 F.3d 36, 48 (1st Cir. 2009); *Swipies v. Kofka*, 419 F.3d 709, 718 (8th Cir. 2005).

time Court Administrator Gary Yates;, that he did it in a manner he believed would entitle her to unemployment benefits; and proactively offered her a letter of recommendation.

Plaintiff also presented no evidence that Judge Stephens discussed the termination with prospective employers or in any way sought to impede Edelstein's efforts to gain re-employment. Simply put, there was no evidence presented that Judge Stephens acted with malice or reckless indifference to Edelstein's rights.

Edelstein's only argument in support of her request for punitive damages related to her unproved theory of being the subject of a conspiracy in the post-termination litigation of this case. In closing arguments, Edelstein argued, "I think the evidence shows that there was malice or ill will or revengeful spirit towards me by the defendant in pursuit of the litigation as extensively as possible and to beat me down until I cry uncle" (Edelstein Closing Argument, Doc. 241, PAGEID # 3648, ln. 11-14). She did not argue for punitive damages based on any conduct by Judge Stephens related to her actual termination. Rather, she argued that punitive damages should be awarded based on vague and unsupported allegations about the manner in which Judge Stephens defended himself, allegedly with a "team" of others in Butler County and his counsel. Edelstein sought to convince the jury that she was outnumbered in litigating this case in an effort to gain sympathy, rather than a factual finding of malice related to her termination. Not only was there no evidence of improper conduct on the part of Judge Stephens or his counsel during litigation, , such an argument would not be an appropriate consideration for the award of punitive damages in this instance.

In *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188 (6th Cir.1988), the Sixth Circuit reasoned as follows:

19

> While the court may award punitive damages when a party's conduct during the course of litigation is either frivolous or in bad faith, *Reynolds v. Pegler*, 223 F.2d 429 (2d Cir. 1955); *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S. Ct. 578, 93 L. Ed. 2d 581 (1986), a review of the entire record does not suggest that defendant's conduct warranted such punitive sanctions. Unlike *Universal City Studios*, in which the Second Circuit held punitive damages were appropriate where defendant threatened suit alleging trademark infringement despite a prior judicial holding that its trademark was in the public domain, Velsicol's defenses during the course of litigation did not constitute an abuse of process.
>
> There is no evidence that Velsicol's defense was contrived in bad faith. In deciding whether counsel's positions at trial warrants awarding punitive damages, too strict a standard might unduly chill an attorney's advocacy, especially for those advancing unpopular arguments. This determination requires sensitivity on the part of the court. *See, e.g., Blake v. National Casualty Co.*, 607 F. Supp. 189 (C.D. Cal. 1984). Velsicol's conduct in the instant case is an impermissible basis in and of itself for awarding punitive damages.

*Id*. at 1216.

The *Sterling* court held, in part, "Because the district court erred in awarding punitive damages, in part, upon the positions taken by Velsicol at trial, we remand for recomputation of punitive damages." *Id*. at 1217. Also, in *Beanstalk Innovation, Inc. v. SRG Technology, LLC*, 823 F.App'x 404 (6th Cir.2020), where the Sixth Circuit discussed punitive damages related to litigation conduct (under Florida law) as follows:

> Plaintiff sought punitive damages under Florida law, which permits punitive damages to remedy "gross misconduct or willful and wanton disregard of a plaintiff's rights." *See Alamo Rent-A-Car, Inc., v. Mancusi*, 632 So. 2d 1352, 1357 (Fla. 1994). The award therefore depends on the conduct which forms the basis for the lawsuit, not a party's litigation conduct. Unlike an award of fees or costs, punitive damages are bound up in the merits of the claim.

*Id*. at 408.

Judge Stephens does not deny that this has been a long and laborious proceeding, but the record in this case does not support that Judge Stephens or his counsel's conduct

during the course of litigation was "either frivolous or in bad faith." *Sterling*, 855 F.2d at 1216. To the contrary, even a cursory review of the record would show Edelstein has filed numerous meritless motions, objections, and requests for reconsideration. Judge Stephens was placed in a position of responding and took no action to prolong the litigation. A punitive damages award in this instance must be "bound up in the merits of the claim" and the "conduct which forms the basis for the lawsuit, not a party's litigation conduct." *Beanstalk*, 823 F.App's at 408.

Edelstein presented no evidence, and made no argument, that Judge Stephens' actions that form the basis of this lawsuit constitute malice and support an award of punitive damages. As such, Judge Stephens requests that the punitive damages award be set aside, or a new trial be ordered.

## V. Irregularities in the proceedings require a new trial.

### A. Plaintiff's Counsel repeatedly and egregiously engaged in prejudicial misconduct.

#### i. Plaintiff's Counsel repeatedly referenced facts not in evidence during her witness examinations, her own testimony, and closing argument.

In the Sixth Circuit, if "counsel's closing argument is improper, and if there is a reasonable probability that the verdict of [the] jury has been influenced by such conduct, it should be set aside, even if opposing counsel failed to object." *Park W. Galleries, Inc. v. Hochman*, 692 F.3d 539, 548 (6th Cir. 2012), citing *Clark v. Chrysler Corp.,* 436 F.3d 594, 609 n.19 (6th Cir. 2006) (quoting *Strickland v. Owens Corning*, 142 F.3d 353, 358 (6th Cir. 1998)); *see also Brown v. Royalty,* 535 F.2d 1024, 1976 U.S. App. LEXIS 11494 (8th Cir. 1976) (In interest of fairness to all parties, new trial must be granted where defense counsel took advantage of every possible opportunity to raise issue of evidence before jury after trial court had ruled issue inadmissible at pretrial conference); *Hillard v.*

*Hargraves*, 197 F.R.D. 358, 2000 U.S. Dist. LEXIS 1512 (N.D. Ill. 2000) (Improper references in closing arguments are grounds for new trial).

This prohibition against improper conduct is further reflected in Ohio Rule of Professional Conduct 3.4(e), which states that a lawyer shall not:

> In trial, allude to any matter that the lawyer does not *reasonably* believe is relevant or that will not be supported by admissible evidence or by a good-faith belief that such evidence may exist, assert personal *knowledge* of any facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, the credibility of a witness, the culpability of a civil litigant, or the guilt or innocence of an accused.

Here, Edelstein made repeated and excessive references to issues and evidence that were not in the record.

For instance, the admissibility of the September 1, 2016, letter from defense counsel to Edelstein's prior counsel, was ruled on prior to trial, where the Court instructed Edelstein she could ask/testify about the assertions in the letter, but she was not permitted to reference the letter itself. However, during closing argument, Edelstein referenced the September 1, 2016, letter nine times, albeit for the first eight times, she did not explicitly characterize it as a letter from counsel. *See* Doc. 241, PAGEID # 3570, ln. 12-14; 3596, ln. 5-6; 3602, ln. 2; 3618, ln. 4-5; 3618, ln. 17-20; 3623, ln. 19-20; 3639, ln. 2-3; 3674, ln. 8-9. However, on the ninth instance, Edelstein stated, "Because I had sent a letter from an attorney to the court to indicate that I think it was a discriminatory termination, and after that – I got that letter back from Miss Woeber on September 1st." *Id*., PAGEID # 3676, ln. 8-11. This final reference explicitly ties the September 1, 2016, date, which had been mentioned eight times to that point, to the letter from counsel, despite the Court's order explicitly excluding it from evidence, and from being referenced by the parties.

22

Edelstein also argued in closing argument that Melinda Barger only became upset with her due after her email requesting the religious holidays off. *Id.*, PAGEID # 3573, ln. 21-24 ("What happened in between those two and a half hours? Well, there is one thing we agree on. Melinda was upset. Because I sent an e-mail saying I was going to be out for eight days"). However, there was no evidence Ms. Barger was upset due to the email. Ms. Barger testified she did not recall seeing the email, and Judge Stephens testified they did not discuss it. Further, Judge Stephens and Ms. Barger testified that Edelstein and Barger were not speaking to each other on Wednesday July 27, 2016, and the e-mail was not sent until July 28, 2016. See Joint Exhibit JX3. Further, Edelstein tried to tie her unsupported statement that Ms. Barger would have been  upset to the fact she would have to answer phones, stating Barger "was upset because she didn't want to answer the phone for eight days, which is what I believe happened because I know she had that problem with me earlier in June when I took two days off." *Id.*, PAGEID # 3574, ln. 12-17. While Edelstein was certainly free to opine on the reasons Ms. Barger was upset, she gave the jury the impression there had been evidence that Barger had complained about Edelstein being absent in June (when she took 9.5 hours of sick time, according to DX 7)  – a claim that was never introduced through evidence or testimony.

Edelstein also represented that Mike Gmoser was Judge Stephens' "mentor", a claim that was not supported by any evidence. Id., PAGEID # 3641, ln. 7-8 ("But then I discovered the note from Mike Gmoser, who is the Butler County Prosecutor and [Judge Stephens'] boss and old mentor.") Further, it was an allegation Edelstein was aware Judge Stephens had denied when questioned in discovery. The untrue statement was highly prejudicial as it was used to imply some conspiracy between Judge Stephens and other

23

elected officials to prevent Edelstein from gaining employment, despite the evidence from all witnesses questioned on the subject that Judge Stephens never spoke to Gmoser or Dobson about Edelstein. Indeed, Edelstein made a direct reference to some grand conspiracy by various public officials, stating "So, for me, I was getting the impression that something was working behind the scenes to make it impossible for me to work, and it was very frustrating for me. *Id.,* PAGEID #. 3640, ln. 12-14.

Edelstein also argued in closing that when she saw Dobson's notes about his conversation with Mike Gmoser, "I knew that the likelihood that my time was short was pretty good," but she never testified to this prior to closing arguments, and thus Judge Stephens' counsel were never given the opportunity to cross examine her on the issue for purposes of mitigation (*Id*., PAGEID # 3675, ln. 18-20).   She likewise tied this unsupported assertion about Gmoser having been Judge Stephens' "mentor"  directly to her vague theory that Judge Stephens had some connection to her anticipated lack of success at Wood County, stating, "When I saw Gmoser's note in there, I thought, 'Man, why won't these people leave me alone to find a job?' That's how I felt about it." *Id*., PAGEID #: 3676, ln. 18-20. These references no doubt gave the jury the impression Judge Stephens had something to do with the end of her Wood County employment, when there was absolutely no evidence presented to support such a claim. To the contrary, Paul Dobson testified he had no idea that Edelstein had worked for Judge Stephens—due to her misrepresentations both on her application and during the interview process—so he would have had no reason to contact him for a reference.

These and other instances of misconduct at trial demonstrate  Edelstein's effort to insert a post-termination retaliation claim against Judge Stephens, when that claim was dismissed on summary judgment. To the extent Edelstein put allegations related to that

claim back in front of the jury, it is likely they took that into account in finding for Edelstein on the retaliation claim. But Edelstein's references during closing to evidence and theories not in the record did not end there. See *Id.*, PAGEID # 3648, ln. 15-17 ("It's going to take me either to sit for another Bar Exam or to fill out an incredibly long form and pay about a $2,000 fee to get reciprocity"); PAGEID # 3580, ln. 11-24 ("I want to talk a little bit about this exclusivity of religious doctrine"); PAGEID # 3625, ln. 12-14 ("And we looked at some of that, those cases that the defendant identified as being ten cases that were on the calendar in October were the basis of his shocked response"); PAGEID # 3675, ln. 21-22 ("And I did get an e-mail from Linda[4] at my office at Wood County").

Edelstein also referenced improper hearsay, which was not in evidence, at various times during closing. Id., PAGEID # 3638, ln. 11-13 ("As I heard over and over again: We practice in Butler County. We'll be in front of that sitting judge. We don't want him knowing you're working for us"); PAGEID # 3610, ln. 19-23 ("I had a lawyer friend explain this to me. Lawyers are kind of ADHD. We're all over the place. We've got a lot of things going on. So it's easy to be very habitual. It's sort of a default position"). And Edelstein made arguments based on allegations that were directly contradicted by the testimony. Id., PAGEID # 3642, ln. 12-15 (Referring to the Dobson meeting: "He asked me about Carrie Stanley, and that's all I recall him asking me about except for, you know, truthfulness or, you know, "Did you tell Linda I lied?" And I said "No," because that's not what happened, and that was it", when she admitted on cross-examination that she did tell others Dobson had lied to her); PAGEID # 3610, ln. 10-12 ("I didn't complain to anybody" about Melinda Barger, despite testimony by Tammy Maxwell and Kim Reynolds

---

[4] She referenced this e-mail, which was not in evidence, a second time during closing before the Court stopped her (Doc. 241, PAGEID # 3678, ln. 7-9).

to the contrary); PAGEID # 3585, ln. 21-23 (Edelstein argued "I was terminated because I didn't fit in because I was an observant Jew among three fundamentalist Christians, or observant Christians," despite there being no testimony as to Jamie Wilson's religious beliefs and Melinda Barger testifying she belonged to a nondenominational church").

As always, defense counsel was reluctant to object during closing arguments, and in this case, the references were so clearly improper that the Court interrupted Edelstein on several occasions during closing argument, with warnings to cease the improper conduct. Nevertheless, the jurors heard them, with the intended result of influencing the jury to believe Edelstein's unsupported theories and unsubstantiated evidence.

### ii. Plaintiff's Counsel made repeated improper comments about Defense Counsel during closing argument.

Along the same lines, during her rebuttal closing argument, Edelstein made repeated disparaging comments about Judge Stephens' counsel, including that counsel was "twisting" the facts and would "do what she needed to do to represent her client." Edelstein Closing, Doc. 241, PAGEID # 3671, ln. 18-20 ("But Miss Woeber does what she does best, which is twisting things"); PAGEID # 3673, ln. 10-17 ("But that's what needs to be said, I guess, to represent her client"); PAGEID # 3669, ln. 6-7; 11-13 ("This is unfortunately the situation I found myself in for six years [...] But, again, picking little bits of information and extrapolating is exactly what they do. It's exactly what they do"); PAGEID # 3670, ln. 5 (in regards to the prior statement, "Miss Woeber has a habit of doing this"). It is improper for an attorney to make "unfounded and inflammatory attacks" on opposing counsel. *Bacon v. Klee*, No. 2:13-cv-10016, 2015 U.S. Dist. LEXIS 143428 (E.D. Mich. Oct. 22, 2015), citing *United States v. Young*, 470 U.S. 1, 9, 105 S. Ct. 1038, 1043, 84 L. Ed. 2d 1 (1985). In the Sixth Circuit, personal attacks

26

on opposing counsel are considered unprofessional, *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996), and "[i]t is improper to . . . argue that [defense] counsel is attempting to mislead the jury." *West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008) (citing *Broom v. Mitchell*, 441 F.3d 392, 412-13 (6th Cir. 2006)). Even when stopped by the Court, Ms. Edelstein continued her inappropriate commentary:

> Edelstein: Again, Miss Woeber is telling a story. She doesn't know me. She's going by what she needs to say to present that there is some issue with me —
>
> Court: Kim, that's not proper argument.
>
> Edelstein: Well, Your Honor, I don't know how else to attack the nonsense here, but let me see.

Edelstein Closing, Doc. 241, PAGEID # 3672, ln. 9-16. See also:

> Court: Kim. Kim. You're fine when you talk about testimony, but some of the editorial comments are not appropriate argument.
>
> Edelstein: Okay, Your Honor, I understand, but, boy, it's frustrating, let me tell you.

Id., PAGEID # 3673, ln. 12-16. Even though the Court asked the jury to disregard some of these comments, the jury heard it, and the damage was done.

Edelstein further referenced that she was up against a "machine" that had needlessly dragged out the litigation for years, which was likewise improper. Edelstein Closing, Doc. 241, ln. 25; 3544, ln. 1 ("And, quite frankly, being hammered by a machine, a team of attorneys and staff, lots of filings"). *See Koufakis v. Carvel*, 425 F.2d 892, 14 Fed. R. Serv. 2d (Callaghan) 1, 1970 U.S. App. LEXIS 9579 (2d Cir. 1970) (Remarks of plaintiff's counsel throughout his opening statement, during trial and during summation, to effect that case was one which pitted little and virtuous man of modest resources against powerful and unscrupulous man with untold wealth, which remarks could be taken as suggesting that defendant should respond in damages because he was rich and plaintiff was poor, were grounds for new trial).

27

As with the references to evidence not in the record, this improper conduct in attacking opposing counsel by Edelstein served no purpose but to inflame the passions of the jury.

### iii. Plaintiff asked questions of Dr. Manges she reasonably should have known the answers to which would not be admissible.

Federal Rule of Evidence 704(a) provides that opinion evidence is not "automatically objectionable" when it "embraces an ultimate issue." However, any opinion testimony must be "helpful to the trier of fact." *Torres v. Cnty. of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985) (quoting Fed. R. Rule 704 advisory comm. notes). A lay witness's opinion testimony as to an ultimate issue will "seldom" meet this test because "the jury's opinion is as good as the witness'[s]." *Mitroff*, 797 F.2d at 276 (citing Fed. R. Evid. 704). Further, expert witnesses may not tell the jury "what result to reach" on "ultimate legal question[s]" because such statements also "invade the province of the jury." *Babb*, 942 F.3d at 316; *accord United States v. Volkman*, 797 F.3d 377, 388 (6th Cir. 2015); *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994); *Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985).

Further, Ohio Rule of Professional Conduct Rule 3.4(e) states, in part, that a lawyer shall not, "In trial, allude to any matter that the lawyer does not reasonably believe is relevant or will not be supported by admissible evidence or by a good-faith belief that such evidence may exist."

Edelstein directly asked Dr. Manges whether her termination and treatment in Judge Stephens' chambers was discriminatory. While the Court ultimately stopped the line of questioning, it cannot be disregarded that the jury heard Edelstein ask a witness who was presented as an "expert" his opinion on the ultimate issue in the case, when neither he nor anyone else can claim expertise on the questions of discriminatory motive,

implicit bias, or the underlying intentions of "microaggressions." Despite the obvious impropriety, both Edelstein and Dr. Manges were permitted to heavily imply what the answer would be. As with Edelstein's closing arguments, there is no doubt this conduct had an effect on the jury and served to inflame their passions. Encouraging an "expert" to opine on the subjective biases of a person he has admittedly never met was clearly designed to lead jurors who may hold stereotypes of "Christians" in the media, who hold intolerant political views, to unfairly associate Judge Stephens with them and their positions.

Despite the guidance of the rules of evidence regarding this issue, which Edelstein is charged with knowing, the Court sustaining objections, and the Ohio Rules of Professional Conduct, Edelstein continued to ask questions outside Dr. Manges's areas of expertise, which gave unwarranted weight to his opinions on these subjects.

Further, Dr. Manges testified as to the credibility and discriminatory animus of other witnesses such as Melinda Barger, Judge Stephens, and Paul Dobson. This testimony of Dr. Manges was improper and usurped the role of the jury in assessing the credibility of witnesses. Expert witnesses "may not testify about the credibility of other witnesses" because "[i]t is the province of the jury to assess the credibility of witnesses." *Babb v. Maryville Anesthesiologists P.C.,* 942 F.3d 308, 316, (6th Cir. 2019), *accord Smith v. Jones*, 721 F. App'x 419, 423 (6th Cir. 2018); *Esch v. County of Kent*, 699 F. App'x 509, 517 (6th Cir. 2017); *Greenwell v. Boatwright*, 184 F.3d 492, 496 (6th Cir. 1999).

### B. Plaintiff presented evidence that should been excluded.

While ordering a new trial requires more than proof of a mistake in the admission of testimony, courts will grant a motion for a new trial when the moving party suffered prejudice. *Barnes v. City of Cincinnati*, 401 F.3d 729, 743 (6th Cir. 2005). Thus, this

Court can vacate the jury's verdict if Judge Stephens establishes that "the testimony's admission amounted to more than harmless error." *Field v. Trigg Cty. Hosp., Inc.*, 386 F.3d 729, 736 (6th Cir. 2004). Evidentiary error is harmless "unless it is more probable than not that the error materially affected the verdict." *Barnes*, 401 F.3d at 742. The moving party must demonstrate "it is more probable than not" that wrongful admission of character evidence "materially affected the verdict." *Id.*

### i. Plaintiff presented improper Character evidence.

At trial, Edelstein elicited testimony from several witnesses that constituted inadmissible character evidence. She did so, to the prejudice of Judge Stephens, despite the fact that the Court gave a preliminary order limiting such evidence.

Federal Rule of Evidence 404(a) states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." While Rule 404(a)(2) allows for exceptions in criminal cases, such as offering evidence of good character for the accused, the Federal Rules have expanded no such exception to the civil context. *See Crabbs v. Pitts*, 2018 U.S. Dist. LEXIS 181353, *25 (S.D. Ohio 2018), citing Fed. R. Evid. 404(a)(2) Advisory Committee's Note on Proposed Rules. *See also Easley v. Haywood*, 2015 U.S. Dist. LEXIS 55463, 2015 WL 1926399, at *4 (S.D. Ohio Apr. 28, 2015) ("[P]erformance evaluations cannot be offered to show that . . . Defendants . . . acted in accordance with their evaluations."); *SEC v. Towers Fin. Corp.*, 966 F. Supp. 203, 205-06 (S.D.N.Y. 1997) (character evidence not allowed in civil case).

Federal courts, including in the Sixth Circuit, have consistently applied Rule 404's prohibition against character and other acts evidence to employment discrimination cases. *See Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 536-537 (6th Cir. 2005); *Haydar*

*v. Amazon Corp.* LLC, 2019 U.S. Dist. LEXIS 110956 (E.D. Mich 2019); *Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507, 310 U.S. App. D.C. 82 (D.C. Cir. 1995); *Zubulake v. UBS Warburg LLC*, 382 F. Supp. 2d 536 n.1, 541 (S.D.N.Y 2005); *Zenian v. District of Columbia,* 283 F.Supp. 2d 36, 40 (D.D.C. 2003).

Prior to trial, in response to Judge Stephens' motion in limine, Edelstein argued that her "character evidence" should be admitted under Evid. R. 406 as evidence of plaintiff's habit of "having integrity and a solid work ethic" (Doc. 207, PAGEID # 3313). She then proceeded to elicit testimony reflecting her interpretation of this rule.

Evid. R. 406 provides as follows: "Evidence of the habit of a person or of the routine practice of an organization . . . is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." The Advisory Committee Note to Evid R. 406 defines "habit" as follows: "'A habit . . . is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time, or of giving the hand-signal for a left turn, or of alighting from railway cars while they are moving. The doing of the habitual acts may become semi-automatic.'" Fed. R. Evid. 406, Advisory Committee Note (quoting *McCormick on Evidence,* § 195 at 462-63 (2d. ed. 1972)).

Moreover, the distinction between habit and character has been discussed as: "Habit is conduct that is situation-specific, *i.e.,* specific, particularized conduct capable of almost identical repetition. Character, on the other hand, is a generalized description of a person's disposition or a general trait such as honesty, violence or peacefulness." *Zubulake,* 382 F. Supp. 2d at 541, n.1. For example, the Fed. R. Evid. 406 Advisory

31

Committee notes that "If we speak of character for care, we think of the person's tendency to act prudently in all the varying situations of life, in business, family life, in handling automobiles and in walking across the street."

"Integrity" and "work ethic" are not "habits"; they are character traits. There was no evidence of specific situations, such as using the same stairs every day, that Edelstein elicited at trial when directing her various "character witnesses," nor is there any habit that was relevant to this case. How one engages with a specific boss and specific co-workers in specific situations is not something that can constitute a "habit" as defined by Evid. R. 406. While Judge Stephens recognizes that the Court allowed a limited number of "character witnesses," the extent to which Edelstein elicited testimony of her character stretched the limits of the Court's instructions.

Edelstein asked witnesses who had prior work interactions with her whether they had seen her "slam her hand on desks," "go on rampages," "bark orders," "slam doors," or "stomp around." See Edelstein Closing, Doc. 241, PAGEID # 3611, ln. 5-9 ("You heard testimony from a lot of court staff: Tammy Maxwell; Kim Reynolds; Heather Cady; Jana Ballinger, who worked in the next office from me, we worked together in chambers. They all said I didn't have those habits. Linda Tuttle"). This is not evidence of "work habit," this show's Edelstein's "tendencies" and is character evidence intended to prove that on a particular occasion Edelstein acted in accordance with her past character or traits, which is precisely what Evid. R. 404 prohibits.

Here, there is no ambiguity that Edelstein elicited testimony that spoke directly to her relationships, character, personality, general behavior, and past work history. Id., PAGEID # 3608, ln. 23-25; 3609, ln. 1-3 ("The issue for me is that you have to look at my work habits, my work history, my relationship with other co-workers. That's sort of how

32

you show that, that it's not consistent behavior, that it isn't something in my personality wheelhouse, if you will, for lack of a better word"). Though she tried to characterize this character evidence as evidence of her "work habits" it was clearly evidence of her behavior, personality, and relationships outside Judge Stephens' chambers, not any habit. In fact, this evidence was used to specifically combat the testimony of Judge Stephens and his staff regarding conduct of Edelstein that caused conflict in the Judge's chambers. This type of evidence is impermissible under Evid. R. 404 and was highly prejudicial to Judge Stephens.

### ii. Plaintiff presented improper lay witness opinion testimony.

Edelstein called a former co-worker, Heather Cady, to testify as to the "character of Edelstein, work experience with Edelstein, experience with Barger." At trial, however, Edelstein proceeded to "qualify" Ms. Cady to give what was essentially expert opinion testimony on human resources and employment matters.

Under Evid. R. 701, "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Subsection (c) of Rule 701 was added to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing" and to "ensure [] that a party will not evade the expert witness disclosure requirements set forth in FED. R. CIV. P. 26 and FED. R. CRIM. P. 16 by simply calling an expert witness in the guise of a layperson." FED. R. EVID. 701 advisory committee's note.

Despite never disclosing Ms. Cady as an "expert," Edelstein proceeded to "qualify" Ms. Cady as an expert on HR and employment matters and had her testify on the nature of the termination; her view on the appropriate way to discipline or terminate; and the effect of the way Edelstein was terminated on Edelstein's employment search. See Edelstein Closing, Doc. 241, PAGEID # 3637, ln. 16-20 ("This indication of doing a letter of recommendation and how helpful that would have been to my career? As Heather [Cady] indicated, that would have been a red flag, too, if you're terminated and then you get a letter of recommendation from the person who terminated you"). Such testimony by a lay fact witness is clearly violative of Rule 701's prohibition on opinion testimony.

Ms. Cady's impermissible testimony prejudiced Judge Stephens and is grounds for this Court to alter or amend the judgment or order a new trial.

### C. Erroneous instructions in the jury charge likely caused the rendition of an improper judgment.

Claims of error in jury instructions require that the instructions be reviewed as a whole in order to determine whether they adequately informed the jury of the relevant considerations and provided a basis in law for aiding the jury in reaching its decision. *Beck v. Haik*, 377 F.3d 624, 636 (6th Cir. 2004) (citing *O-SoDetroit, Inc. v. Home Ins. Co.*, 973 F.2d 498, 502 (6th Cir. 1992)). Indeed, "[t]his court may reverse a judgment on the basis of improper jury instructions only if the instructions, when viewed as a whole, were confusing, misleading and prejudicial." *United States v. Wells*, 211 F.3d 988, 1002 (6th Cir. 2000); *see also Bongartz v. State Farm Fire and Cas. Co.*, 1994 U.S. App. LEXIS 16492, 1994 WL 315240 (6th Cir. 1994).

If a Court becomes convinced it gave erroneous jury instructions which seriously undermine confidence in the verdict, the grant of a motion for new trial is appropriate. *Pick v. General Electric Co.*, 1999 U.S. App. LEXIS 3992, 1999 WL 187448 (6th Cir. Mar. 8, 1999); *United States v. Bustamante*, 1992 U.S. App. LEXIS 19306, 1992 WL 192545 (6th Cir. Aug. 12, 1992). In particular, "[o]bvious and prejudicial error in instructing the jury constitutes grounds for a new trial." *Fryman v. Federal Crop Ins. Corp.*, 936 F.2d 244, 248 (6th Cir. 1991) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). The grant of a new trial following erroneous jury instructions [*13] "falls within the trial court's discretion to act to prevent a miscarriage of justice." *Id.; Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1433-35 (4th Cir. 1985), *cert. denied*, 475 U.S. 1016, 106 S. Ct. 1199, 89 L. Ed. 2d 313, (1986). The critical inquiry is "whether the instructions as a whole provide the jury with sufficient guidance concerning the issues to be tried." *Bagherzadeh v. Roeser*, 825 F.2d 1000, 1003 (6th Cir. 1987) (quoting *Teal v. E.I. Dupont de Nemours and Co.*, 728 F.2d 799, 802 (6th Cir. 1984)).

### i. The jury instruction on evidence which has not been produced was improper, not supported by facts in the records, and prejudicial.

The Court gave the following instruction before charging the jury:

> You have heard testimony about evidence which has not been produced. Plaintiff has argued that this evidence was in Defendant's control and would have proven facts material to the matter in controversy. If you find that Defendant could have produced the evidence, and that the evidence was within his control, and that this evidence would have been material in deciding among the facts in dispute in this case, then you are permitted, but not required, to infer that the evidence would have been unfavorable to Defendant.

> In deciding whether to draw this inference, you should consider whether the evidence not produced would merely have duplicated other evidence already before you. You may also consider whether Defendant had a reason for not producing this evidence that was explained to your satisfaction. Again, any inference you decide to draw should be based on all of the facts and circumstances in this case.

At the charging conference, Judge Stephens' counsel renewed the objection to this instruction, arguing it was unsupported by the facts and highly prejudicial. In response, the Court stated this instruction was based on Edelstein's arguments that her 2016 time sheets were not in her Butler County Common Pleas Court personnel file.

An adverse inference instruction based on alleged spoliation is most often used as a "sanction." See *Adkins v. Wolever*, 554 F.3d 650, 651 (6th Cir. 2009) (*Adkins I*) (a federal court's inherent powers include broad discretion to craft a proper *sanction* for spoliated evidence) (emphasis added).

An adverse inference instruction based on spoliation is warranted only if the proponent establishes that: (1) "the party having control over the evidence had an obligation to preserve it at the time it was destroyed;" (2) "the records were destroyed with a culpable state of mind;" and (3) the destroyed evidence was relevant to the claim at issue such that the jury could infer that it would have supported the claim. *Adkins v. Woleve,* 692 F.3d 499, 504-05 (6th Cir 2012) (*Adkins II*); *Flagg v. City of Detroit*, 715 F.3d 165, 177 (6th Cir. 2013).

Informative is the Middle District of Tennessee decision in *EEOC v. Gregg Appliances, Inc.*, No. 3:10 C 00861, 2015 U.S. Dist. LEXIS 108963 (M.D. Tenn. 2015). In *Gregg Appliances,* the EEOC, acting as the Plaintiff, requested a similar instruction to counter the defendant employer's contention that the terminated employee was a poor performer. *Id*. at *28-29. In support of the requested instruction, the EEOC cited that the employee testified that she received positive performance evaluations in 2006, 2007, and 2008, but her file contained no performance evaluations. *Id*. at * 30. Further, a representative of the employer testified it was "abnormal" that the evaluations were not in the employee's file. *Id*.

36

However, the court in *Gregg Appliances* declined to give the instruction, citing the standard from *Adkins* and *Flagg*, *supra*. In support of its decision, the court found that there was no evidence that the employer destroyed the evaluations when it was obligated to preserve them; the circumstances and timing of the loss were entirely unknown; and the plaintiff did not present evidence – or even argue -- the evaluations were destroyed with a "culpable state of mind." *Id*. at *31, citing Adkins, 692 F.3d at 505. Further, the court noted that the employer did not contest the testimony that the employee received good evaluations, and that "the evaluations – to the extent they prove her good performance – would have been redundant. *Id*. at *32.

In the instant case, the adverse inference instruction—along with Plaintiff's closing argument—gave the jury a false impression that Judge Stephens, who was not the custodian of employee personnel files, somehow withheld from production, or destroyed, leave of absence slips that would have supported Edelstein's theories about her termination:

> And it's possible that the attorney went into that office and took out a cluster of files – of my leave of absence sheets, but then the attorney didn't put them back in the right place. Or Stephens did. Or Gary Yates. Someone did…They all had access to my file. So that's something that I think is a very important feature of a coverup for a discriminatory termination. P. 3605, ln. 3-13.

> The Kronos dates don't match. Okay? I know when I took off. I've testified to it: two days in February; five days for Passover; a May vacation, which is a week; two days in June for sick days. They're not all on there. The Passover holiday isn't on there. The leave of absence for Passover is missing. It's been wiped away. It's gone. P. 3606, ln. 1-7

Both Edelstein's misleading argument and the jury instruction were unfairly prejudicial to Judge Stephens when  the only "missing" documents would have shown nothing more than what the Kronos report showed—that  Edelstein took sick days in June and a vacation in May, neither of which was in dispute at trial. There is no dispute that

Edelstein has never contended that she was charged paid time off for the five days off she took in April for Passover. She testified she used informal "make-up" time for religious holidays, so there would be no reason for time off slips in the file, and nothing was missing or "wiped away" from the Kronos report. That report shows only time charged against paid time off. Edelstein's personnel file also shows she did not take paid time off for Passover or the October high holy days in previous years, instead using undocumented "makeup" time per her arrangement with Judge Oney (see JX 11).

Like in *Gregg Appliances*, there was no evidence that the documents were removed or destroyed when Judge Stephens should have known he was obligated to preserve them. Judge Stephens has never disputed any of the time off Edelstein took and testified that he had never looked at her personnel file, or even known what became of time sheets after he signed them, much less that they would be relevant to this litigation and he was under an obligation to preserve. Also, as in *Gregg Appliances*, the circumstances and timing of the removal or destruction are entirely unknown and cannot support an inference that they were destroyed or that Judge Stephens had an obligation to preserve them. *Gregg Appliances*, at *32.

Next, Plaintiff "did not present evidence – or even argue – that [Judge Stephens] destroyed the [time sheets] with a culpable state of mind." *Id.* The requisite culpable state of mind may be established through a "showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, but negligent conduct may suffice to warrant spoliation sanctions under the appropriate circumstances." *Stocker v. United States*, 705 F.3d 225, 235 (6th Cir. 2013). Here, there was no evidence time off slips were destroyed knowingly, and the circumstances do not warrant the sanction even in the case of negligent conduct. At trial, Cheryl Welch, Gary

Yates, and Judge Stephens all testified they did not know who, how, or when the absence slips were allegedly removed from the personnel file. As such, there is no evidence that any of the parties knew these documents were relevant and subsequently destroyed them. This lack of evidence cannot support the "culpable state of mind" requirement necessary to sustain an adverse inference instruction. Cf. *Lombard v. MCI Telecommunications Corp.*, 13 F. Supp. 2d 621, 627 (N.D. Ohio 1998) (after plaintiff filed her EEOC retaliation charge, the employer purged plaintiff's personnel file of all positive comments in favor of negative documentation and also destroyed documentation of an investigation which was critical to the plaintiff's claim).

This Court addressed the "culpable state of mind" in *Brown v. Duke Energy Corp.*, No. 1:13cv869, 2019 U.S. Dist. LEXIS 54923 (S.D. Ohio 2019). In *Brown*, the plaintiff, who was partially deaf and suffered from severe allergies, applied for her current position after the defendant, Duke Energy, began a reorganization. *Id.* at *6. She was denied the position and informed she had until a certain date to find another position in the company. *Id.* When she did not, she was terminated. *Id.* At summary judgment, the plaintiff moved for a spoliation sanction, arguing that several documents related to both her and other candidates for the position had been destroyed. *Id.* at *11. The sanction was requested on the basis that Duke Energy's corporate representative, the Director of Human Resources Systems, testified she was unaware there was a litigation hold. *Id.* at *20. This Court noted there was no evidence the corporate representative should have received a litigation hold, and that the HR director testified that she was aware of the data collection for the lawsuit, but had no direct involvement in extracting the data. *Id.* This Court found that, "even if the documents were shown to be relevant, Plaintiff has not established that [the documents] were destroyed with a culpable state of mind." Id. at *20-21.

Here, both Edelstein and Cheryl Welch testified that it was Ms. Welch who typically received the absence slips and put them in the file. There was no evidence presented that Judge Stephens, who is the named defendant in this case, handled, removed, or destroyed the absence slips, or ordered anyone else to do so. Even imputing Judge Stephens' culpability to Ms. Welch, there was no evidence she was aware of any litigation holds, the relevance (if any) of the leave of absence slips, or that she removed or destroyed them. Even her testimony that she may have misplaced them was speculative at best and cannot support a culpable state of mind sufficient to warrant such a sanction.

Finally, in the instant case, Edelstein presented no evidence that "the destroyed evidence was relevant to the claim at issue such that the jury could infer that it would have supported the claim." *Adkins II*, 692 F.3d at 504-05. The only leave of absence documents missing from Edelstein's personnel file were those that would have supported the time off listed in the Kronos report authenticated by both Cheryl Welch and Judge Stephens (Defendant's Ex. DX 7). Those included four sick days, which bore no relation to any of Plaintiff's claims, and the five vacation days she took in May, which also were irrelevant to Edelstein's accusations. There were no "missing" documents that supported Edelstein's claim that she was required to take paid time off in July when her co-workers were not or that she was charged with vacation or personal time off for Passover.

Edelstein claimed only that she maintained copies of signed leave of absence documents for two days in July and that there should have been copies in her file. Whether or not Edelstein provided those copies to Ms. Welch after they were signed by Judge Stephens, Ms. Welch did not charge Edelstein a set-off against her paid time off for those dates, and Edelstein acknowledged she was not charged for those dates or the five days off she took in April for Passover. That is exactly what the Kronos report (Defendant's

Exhibit DX 7) showed, so copies in the personnel file would not have made any fact at issue more or less probable. As to the time off granted for Passover, Edelstein testified that she had accumulated "make-up" time so she would not need to use vacation time for religious holidays. Like the situation in *Gregg Appliances*, the information these documents would have proved was not in dispute and would be cumulative, so there is no possible adverse inference to be made against Judge Stephens. *Gregg Appliances*, at *32.

The Court's instruction allowing the jury to infer the documents absent from Edelstein's personnel file would have "proven facts material to the matter in controversy" was both erroneous and highly prejudicial to Judge Stephens.

### ii. The punitive damages jury instruction was not supported by the evidence and was prejudicial.

As stated in Section III.B, *supra,* the evidence did not support the jury's award of punitive damages. Following the charging conference, on the morning of February 2, 2023, prior to closing arguments, the Court notified the parties that he did not believe a punitive damages instruction was warranted, but included it to avoid an assertion by Plaintiff on appeal that it should have been given.  At that time, Judge Stephens renewed his objection to the instruction based on the lack of evidentiary support (Doc. 241, PAGEID # 3567, ln. 2-11).

The inclusion of this instruction, together with the adverse inference instruction, apparently served to unfairly prejudice Judge Stephens in the minds of the jury. These errors alone are sufficient to warrant a new trial.

## VI.    **CONCLUSION**

Accordingly, for the forgoing reasons, Judge Stephens respectfully requests the Court grant his motion for judgment as a matter of law pursuant to Fed R. Civ. P. 50(b). In the alternative, Judge Stephens respectfully requests that the Court grant a new trial or amend the judgment.

Respectfully submitted,

*/s/ Linda L. Woeber*_____
LINDA L. WOEBER (0039112)
COOPER D. BOWEN (0093054)
MONTGOMERY JONSON LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
Tel: (513) 768-5239
Fax: (513) 768-9244
lwoeber@mojolaw.com
cbowen@mojolaw.com
*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of March 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Linda. L. Woeber*_____

LINDA L. WOEBER (0039112)

42