IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY EDELSTEIN, | : | Case No. 1:17-CV-305 |
| | : | |
| Plaintiff, | : | Judge Michael R. Barrett |
| | : | Magistrate Judge Karen L. Litkovitz |
| vs. | : | |
| | : | |
| JUDGE GREG STEPHENS, *et al.* | : | |
| | : | |
| Defendants. | : | |

**Defendant Judge Gregory Stephens' Supplement in Support of Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial and Notice of Additional Authority**

Defendant Judge Gregory Stephens hereby provides the following supplement to his memoranda in Support of Motion for Judgment as a Matter of Law or, in the Alternative, Motion for a New Trial. Specifically, Judge Stephens provides notice of the Initial Decision issued by Administrative Law Judge Susan Biro in EEOC Charge Nos. 473-2017-00341 and 473-2018-00055, in which Plaintiff Kimberly Edelstein was the Charging Party and Judge Stephens was the Respondent.

As this Court is aware, concurrent with this case, Edelstein filed the above referenced Charges with the EEOC asserting a claim against Judge Stephens under the Government Employee Rights Act (GERA).[1] GERA provides that "all personnel actions affecting state employees shall be free from any discrimination based on race, color, religion, sex, national origin, age or disability." *Dyer v. Ratcliffe*, 169 F. Supp.2d 770, 775,

---

[1] The Court has been advised in numerous filings, by both plaintiff and defendant, of the GERA Charge filed by plaintiff concurrently with the federal lawsuit. See, e.g., Amended Complaint, Doc. 20, Partial Motion to Dismiss Amended Complaint, Doc. 22, Report and Recommendation , Doc. 31, Motion to Stay, Doc. 174.



EXHIBIT A

2001 U.S. Dist. LEXIS 22162 (S.D. Ohio 2001).  As with her claims pending before this Court, Edelstein's GERA claim is based on the theory that Judge Stephens discriminated against her by terminating her based on her religion and related religious practices.

The EEOC matter proceeded to an Administrative Hearing from July 7 through July 12, 2021 ("the EEOC Hearing"), wherein the parties were the plaintiff and defendant before this Court, as well as Butler County. During the EEOC hearing, Edelstein testified on her own behalf on direct and rebuttal and proffered the live testimony of 16 additional witnesses: Judge Gregory Stephens, Melinda Barger, Tamara Sack, Eliot Edelstein, Tammy Maxwell, Heather Cady, Judge Keith Spaeth, Kim Slaton, Kimberly Reynolds, Ann Stromberg, Jana Ballinger, Rabbi Shmuel Klatzkin, Laura Murphy, Cheryl Welch, Dan Gehr, and Dr. Kenneth Manges. Respondents presented in their case the live testimony of Jamie Wilson and Judge Stephens. The parties together introduced into the record a total of 100 exhibits: 13 Joint Exhibits (identified as "JX"); 72 Exhibits for Complainant (identified as "CX"); eight Exhibits for Respondents (identified as "RX"); and seven exhibits of which administrative notice was taken.

In lieu of closing argument in that matter, the ALJ requested the parties submit "Post-Hearing Briefs" on the factual and legal issues presented. By November 29, 2021, the briefing on the Post Hearing Briefs was completed, and the record in that matter closed. On May 25, 2023, Judge Biro issued her Decision finding that Edelstein failed to prove her discrimination and retaliation claims against Judge Stephens ("ALJ Decision," attached hereto as Exhibit B). The EEOC still must issue a final determination, and that determination is appealable only to the federal court of appeals.

Thus, while Judge Biro's Decision is not final, her 54-page well-reasoned Decision finding in Judge Stephens' favor, based on the same set of facts, supports several of the

arguments raised by Judge Stephens in the Post-Trial Motions pending before this Court. Specifically, that the verdict of the jury on Plaintiff's First Amendment Claim was against the manifest weight of the evidence, the verdicts were inconsistent, and that the adverse inference instruction was improper, not supported by facts in the records, and prejudicial.

While Judge Stephens urges the Court to read and consider all of the ALJ Decision, the following highlights aspects of the Decision pertinent to the arguments raised.

**I.  The ALJ Decision reinforces that the jury's finding in favor of Plaintiff on the First Amendment claim cannot be sustained, as the weight of the evidence does not support that Plaintiff's termination was related to her protected conduct, and the verdicts were inconsistent.**

In his Post-Trial Motions, Judge Stephens argued that Edelstein's claim that she was terminated for requesting time off for the Jewish High Holy Days lacked evidentiary support other than temporal proximity. Beyond this, Edelstein presented no evidence that would allow a reasonable factfinder to conclude that her termination was motivated by constitutionally-protected activity.

In analyzing the same arguments under the same set of facts, Judge Biro reached the following conclusions:

> I specifically reject Ms. Edelstein's allegation that Respondents' given reason for the termination, that she did not "fit in," is pretext for intentional discrimination. Complainant contends that Judge Stephens, a Southern Baptist preacher, terminated her after learning that she was an observant Jew because "Complainant practicing her religion was an issue for Stephens." C's PHB 17. She contends that Judge Stephens' own religious beliefs "show[] a lack of respect for others' religious affiliations as they are premised on the idea that everyone, or at least only good ('saved') people, must be Christian." C's PHB 17. Complainant suggests that her termination was "an act of defiance to a man who tolerated no difference of opinion from those he supervised." C's PHB 17. She argues that the "evidence

3

overwhelmingly shows" that Judge Stephens' proclamation of "Holy cow!" was due to him being "upset" about her "need to observe her religion, a religion that Stephens believes has members condemned to damnation." C's PHB 18. Complainant contends, too, that Judge Stephens interviewed two Jewish attorneys, and hired a non-practicing Jewish attorney, only to dispel any belief that Ms. Edelstein was terminated because of her religion.

The record does document Judge Stephens' religious beliefs and activities as an evangelical Christian, that he responded with an expression of surprise and displeasure at Complainant's request for eight days of leave for the Jewish High Holidays, and that he terminated Complainant promptly thereafter. However, it also indicates that Judge Stephens was considering replacing Ms. Edelstein in May, long before she submitted her religious leave request in July. Furthermore, the evidence shows that Judge Stephens was at least vaguely aware that Ms. Edelstein was Jewish from early on in his term and that, had he had possessed an explicit position against employing Jews, he could have either not hired her or terminated her sooner. Tr. V at 87 (Stephens, stating that he knew Complainant was taking time-off for Passover); RX 13 at 2 (Complainant "first had occasion to disclose her Jewish faith directly to Judge Stephens when she asked him toward the end of March if she could work through lunch and leave an hour early to observe the holiday of Purim."); Tr. III at 38–40, 43–46 (Edelstein, testifying that in requesting time off for Purim, "I didn't say Purim" but "I said holiday," and "I assumed he understood that it was a religious holiday because there are no national holidays in March, there are no other religious holidays in March. So . . . this was . . . maybe the first time he might have known that I was Jewish."); *see also* Tr. I at 158 (Edelstein, acknowledging that even if she did not mention taking leave for Purim, Passover, or Shavuot to Judge Stephens "[t]hat does not mean that Ms. Barger or Ms. Wilson didn't discuss it with him when they knew about it because I did discuss Purim and Passover in March and April with them.").

Furthermore, as to Mr. Gehr, Judge Stephens began discussing the Staff Attorney/Magistrate position with him in May 2016, three months before Ms. Edelstein submitted her leave request and when she claims Judge Stephens first learned she was Jewish. Tr. V at 121; RX 8. Judge Stephens convincingly testified that he considered hiring Mr. Gehr because of his interest in hiring someone who would "get along with the rest of the staff." Tr. V at 120–21. Similarly, although Ms. Edelstein implies that Tamara Sacks was only interviewed because she was Jewish, Tr. II at 273–75, both Ms. Sacks and Judge Stephens indicated that they had a "professional" and "positive" working relationship—the kind of relationship that Judge Stephens would greatly value. Tr. III at 204; Tr. V at 193; *see also* Tr. V at 120 (Stephens' "primary concern" was hiring "somebody that personality wise, I thought would be able to fit in within the confines of my staff"). Thus, I am unable to find that Judge Stephens' explanation for Ms. Edelstein's termination is pretextual. Despite Complainant's charge, Judge Stephens

4

> did, in fact, provide a persuasive basis for the termination—that Ms. Edelstein's presence was contributing to a negative work environment—and that basis is supported by a multitude of testimony. Most importantly, Ms. Edelstein is unable to support her charge that her termination was tainted by discrimination.

Exhibit B, pp. 51-52 (citations to the record of the EEOC Hearing removed or condensed).

Judge Biro's Decision highlights that the jury properly concluded Plaintiff did not prove that Judge Stephens discriminated against Edelstein based on her Jewish faith, deciding in Judge Stephens' favor on the Equal Protection and R.C. 4112.02 claims. At the same time, the ALJ Decision highlights that the jury's finding that Judge Stephens' termination of Edelstein was retaliation for her request to take the October Jewish High Holy Days off, in violation of her First Amendment Free Exercise rights, was against the weight of the evidence and inconsistent with finding of no discrimination. As Judge Biro noted, while Judge Stephens did express initial surprise at her request for the October Holidays, there was a "multitude of testimony" that Ms. Edelstein's presence was contributing to a negative working environment. Additionally, Judge Biro highlighted that Judge Stephens was, in fact, aware Ms. Edelstein was Jewish prior to the request, and took no adverse employment actions against her.

Moreover, both this case and the GERA case would, if appealed, be considered by the Sixth Circuit, setting up the potential for two different appellate decisions on the same facts and allegations. This Court has the opportunity, and discretion, to harmonize these currently inconsistent findings. As the ALJ Decision reflects, the jury's verdict on the First Amendment claim is not supported by the law and facts and, as argued in the Post-Trial Motions, was influenced by Edelstein's improper conduct at trial.

**II. The EEOC decision demonstrates that the jury instruction on "evidence which has not been produced" was improper, not supported by facts in the records, and prejudicial.**

Judge Stephens argued that the adverse inference instruction was highly prejudicial as, among other things, the information contained in the allegedly missing time sheets was not in dispute and was not relevant to Edelstein's claims. Edelstein made similar arguments at the EEOC hearing, and Judge Biro provided the following thorough analysis:

> Additionally, Complainant asserts that Respondents tampered with her personnel file. C's PHB 15. She states that someone "went into Complainant's personnel file and removed all of the 2016 [Leave of Absence] forms." C's PHB 15. Ms. Edelstein posits that the forms were removed to support Respondents' assertion that Judge Stephens knew Complainant was Jewish before her July 2016 time off request because he signed Complainant's leave forms for Passover.
>
> C's PHB 15 (citing CX 45 at 3). Complainant asserts that the Leave of Absence sheets would have shown the forms were signed by others before Judge Stephens' accession to the bench. C's PHB 15–16 (citing Tr. II at 148–52, 157–58; CX 85 (JX 13) at 144, 147). As further evidence of tampering, Complainant asserts that someone inserted an email dated October 2012 into her file to support a claim that Complainant had a reprimand in her employment history. C's PHB 16 (citing CX 85 (JX 13) at 41; Tr. II at 156–57). Likewise, Ms. Edelstein alleges that "evidence of an audit was destroyed which would have shown Complainant working while her supervisor and co-workers committed theft of services from the County." C's Reply 2; *see also* C's PHB 26–27 (citing, *inter alia*, Tr. IV at 8–10, 19; Tr. II at 183–89; CX 89–92).
>
> […]
>
> As to the tampering with Complainant's personnel file, the record indicates that Gary Yates, the Court Administrator was tasked with maintaining the staff personnel files. Tr. III at 152–54; CX 145 at 9. Ms. Edelstein described Mr. Yates as a long-time county employee and "meticulous." Tr. II at 153. However, the record evidences that the Court did not restrict access to the files to Mr. Yates, but allowed apparently unfettered access to them by many others in the Courthouse, and had no protocols in place for adding, maintaining, or removing personnel records, or documenting such occurrences. Tr. III at 152–54; CX 145 at 9–10. Further, Mr. Yates testified that he retired within two months of

6

> Complainant's termination. CX 125 at 7; Tr. II at 153. It is distinctly possible that in connection with his retirement and replacement, the personnel files of former Court employees were cleared of what was viewed as extraneous documents, such as old leave request forms, or significant documents located elsewhere (for example, reprimands located in old emails) filed within. Nevertheless, as the Respondents maintained custody and control over the leave slips, and failed to produce them, this Tribunal will assume the truth of Complainant's allegations that they would have shown that her leave request for the April 2016 Passover holiday was approved, in advance, by a judge other than Judge Stephens.

Exhibit B, pp. 41-42.

As Judge Biro reasoned, all these documents would have demonstrated was that the Passover holiday was approved on the leave slips by the visiting judges prior to Judge Stephens taking the bench. This fact was never in dispute at trial. Judge Stephens testified that early in his tenure, Edelstein told him about several planned days off, which included the week of Passover, and that he said that was fine. He never testified that he signed any leave slips related to these days off, or that it in any way factored into his decision to terminate her.

The alleged failure to produce the leave slips was simply insufficient to warrant a sanction by way of the adverse inference instruction. Judge Biro, like this Court, recognized that the leave slips, assuming they existed, were in the possession of the Butler County Common Pleas Court, and they were not produced. However, she did not extend that finding to infer some sort of "cover-up" by Judge Stephens. As demonstrated by the jury's verdict, this case hinged on a request for days off, and the adverse inference instruction that directly implicated leave slips containing irrelevant information could serve no purpose but to prejudice Judge Stephens in the minds of the jury.

### III.   CONCLUSION

Accordingly, Judge Stephens respectfully requests the Court consider the ALJ Decision and, for the reasons set forth in the Post-Trial Motions, grant his motion for judgment as a matter of law pursuant to Fed R. Civ. P. 50(b). In the alternative, Judge Stephens respectfully requests that the Court grant a new trial or amend the judgment.

Respectfully submitted,

/s/ Linda L. Woeber
LINDA L. WOEBER (0039112)
COOPER D. BOWEN (0093054)
MONTGOMERY JONSON LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
Tel: (513) 768-5239
Fax: (513) 768-9244
lwoeber@mojolaw.com
cbowen@mojolaw.com
*Counsel for Defendant*

### CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Linda. L. Woeber
LINDA L. WOEBER (0039112)