**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Kimberly Edelstein,

        Plaintiff,                            Case No.  1:17cv305

        v.                               Judge Michael R. Barrett

Judge Greg Stephens, *et al*.,

        Defendants.

<u>**OPINION & ORDER**</u>

This matter is before the Court upon Defendant Judge Gregory Stephens' Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial.  (Doc. 243). Plaintiff Kimberly Edelstein filed a Response in Opposition (Doc. 251); and Defendant filed a Reply (Doc. 256).

**I.**    **<u>BACKGROUND</u>**

Following a ten-day trial, the jury found in favor of Plaintiff on her First Amendment claim but found in Defendant's favor on Plaintiff's Fourteenth Amendment Equal Protection claim under 42 U.S.C. § 1983 and Plaintiff's claim under Ohio Revised Code § 4112.02.  Plaintiff's claims stem from the termination of her employment as a magistrate and staff attorney for Defendant, a judge sitting on the Butler County Court of Common Pleas.

Defendant moved for judgment as a matter of law, pursuant to Rule 50, at both the close of Plaintiff's case and at the close of all evidence.  Defendant now renews his motion for judgment as a matter of law on Plaintiff's First Amendment claim pursuant to Federal Rule of Civil Procedure 50.  In the alternative, Defendant moves for a new trial or to amend

the judgment pursuant to Federal Rule of Civil Procedure 59.

II.     **ANALYSIS**

A.     **Standards of Review**

1.     **Federal Rule of Civil Procedure 50**

The term "motion for judgment as a matter of law" under Federal Rule of Civil Procedure 50 amalgamates the old terms "directed verdict" and "verdict JNOV." *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 779 (6th Cir. 2020) (citing *K & T Enterprises, Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175 (6th Cir. 1996)).  Under the Rule, the movant must show that a "reasonable jury would not have a legally sufficient evidentiary basis" to find for the non-moving party.  Fed. R. Civ. P. 50(a)(1).  Federal Rule 50(b) provides:

> Renewing the Motion After Trial; Alternative Motion for a New Trial. If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. ... In ruling on the renewed motion, the court may:
>
> (1) allow judgment on the verdict, if the jury returned a verdict;
>
> (2) order a new trial; or
>
> (3) direct the entry of judgment as a matter of law.

Fed. R. Civ. P. 50(b).  Where a motion under Rule 50 is based on a federal statute, "the evidence should be viewed in the light most favorable to the party against whom the motion is made, and that party given the benefit of all reasonable inferences." *K & T Enter., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 175-76 (6th Cir.1996).[1]  In addition, "[t]he

---

[1]However, "[i]n diversity cases, when a Rule 50 motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence, this Court applies the standard of review used by the courts of the state whose substantive law governs the action." *Caudill Seed*

evidence should not be weighed. The credibility of the witnesses should not be questioned. The judgment of this court should not be substituted for that of the jury." *Id*. at 175-76.

### 2.    Federal Rule of Civil Procedure 59

In the alternative, Defendant seeks a new trial under Federal Rule Civil Procedure 59.

A court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Sixth Circuit has interpreted Rule 59 to mean that "a new trial is warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc*., 53 F.4th 368, 379 (6th Cir. 2022) (quoting *Mosby-Meachem v. Memphis Light, Gas, & Water Div*., 883 F.3d 595, 606 (6th Cir. 2018)).

"When a party requests a new trial on the ground that the verdict is against the weight of the evidence, we will uphold the jury verdict if it is one 'the jury reasonably could have reached; we cannot set it aside simply because we think another result is more justified.'" *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015) (quoting *Innovation Ventures, LLC v. N2G Distrib., Inc*., 763 F.3d 524, 534 (6th Cir. 2014) (citation omitted). To the extent that Defendant's Rule 50(b) and Rule 59(a) motions both

---

*& Warehouse Co. v. Jarrow Formulas, Inc*., 53 F.4th 368, 379 (6th Cir. 2022) (quoting *Kusens v. Pascal Co*., 448 F.3d 349, 360 (6th Cir. 2006)).

challenge the sufficiency of the evidence, the Court will address them concurrently. *Accord E.E.O.C. v. New Breed Logistics*, 783 F.3d at 1066.

**B.** **First Amendment retaliation claim**

Defendant argues that the evidence does not support the jury's verdict on Plaintiff's First Amendment retaliation claim because Plaintiff did not prove that Defendant terminated her because she requested time off to observe the Jewish High Holy Days;[2] and the jury's verdict on Plaintiff's First Amendment retaliation claim is inconsistent with the verdict on Plaintiff's religious discrimination claim under the Fourteenth Amendment and Ohio law.

To establish a First Amendment retaliation claim, a plaintiff must show: "(1) the plaintiff was participating in a constitutionally protected activity; (2) the defendant's action injured the plaintiff in a way likely to deter a person of ordinary firmness from further participation in that activity; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 371 (6th Cir. 2011) (citing *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 723 (6th Cir. 2010)). "Once a plaintiff raises an inference that the defendant's conduct was motivated in part by the plaintiff's protected activity, the burden shifts to the defendant to 'demonstrate that it would have taken the same action in the absence of the protected

---

[2]Plaintiff argues that "the failure of Defendant's counsel to object to evidence regarding the First Amendment Claim at the initial Rule 50 motion at the close of evidence prohibits Defendant from prevailing on the renewed Rule 50 motion." (Doc. 251, PAGEID 4199). The Court notes that "[w]hen a party fails to raise an argument in its Rule 50(a) pre-verdict motion, it is precluded from making a Rule 50(b) post-verdict motion on that ground." *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 736 (6th Cir. 2016) (citing *Sykes v. Anderson*, 625 F.3d 294, 304 (6th Cir. 2010)). However, at the close of evidence, Defendant moved for judgment on the basis that "there is no issue for the jury on any of the plaintiff's claims." (Doc. 254, PAGEID 4499-4500).

activity.'" *Id.* at 371-72 (quoting *Arnett v. Myers*, 281 F.3d 552, 560–61 (6th Cir. 2002)). However, it is important to note "that after a jury trial, it is inappropriate for this court to revisit the prima facie stage, as we must focus our inquiry on the ultimate issue of retaliation." *Patton v. Sears, Roebuck & Co.*, 234 F.3d 1269 (6th Cir. 2000) (citing *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 714 (1983); *Equal Employment Opportunity Comm'n v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir.1997)).

Defendant points out that during closing argument, Plaintiff told the jury that Defendant had made the decision to terminate her "two and a half business hours" after she requested time off (see Doc. 241, PAGEID 3573), even though Defendant testified that he did not decide to terminate Plaintiff until four days after her request.

The trial in this case presented the somewhat unusual circumstances of a *pro se* plaintiff who was an attorney. In the final instructions, the Court instructed the jury as follows:

> Plaintiff is representing herself in this action. Plaintiff gave testimony as a witness, but at other times Plaintiff was acting as an attorney questioning other witnesses and managing her case presentation. You must consider her testimony as evidence, as you would any other witness.

> However, you must not consider either party's opening and closing statements as evidence. Opening statements and closing arguments are not evidence. What is said in opening statements and what you will hear in closing arguments is intended to help you interpret the evidence, but it is not evidence.

(Doc. 231, PAGEID 3466). "In the absence of indications to the contrary, the Court must presume that the jurors followed its instructions." *Gillispie v. City of Miami Twp.*, No. 3:13-CV-416, 2023 WL 4868486, at *48 (S.D. Ohio July 31, 2023) (citing *Barnes v. Owens–Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000) ("[F]ederal courts generally

presume the jury will follow the instructions correctly as given.")).  Moreover, the difference between two and a half hours and four days is not significant for purposes of analyzing whether Plaintiff's termination was retaliatory.  *See Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 305-306 (6th Cir. 2012) ("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation.").  Therefore, the Court finds that Defendant is not entitled to judgment as a matter of law based on the statements Plaintiff made during closing argument because a reasonable jury would still have a legally sufficient evidentiary basis to find for Plaintiff based on other evidence in the record.

Defendant also maintains that there was evidence that he had legitimate, non-discriminatory grounds for terminating Plaintiff.  Defendant points to evidence showing Plaintiff had conflicts with both him and his staff; and Plaintiff refused to adhere to his changes in office policy.  Defendant explains that under the honest-belief rule, he did not have to be right about his perception that Plaintiff was the source of problems among his staff, as long as he had an honest belief in his proffered nondiscriminatory reason.

While the jury was not explicitly instructed on the "honest belief" standard, it was instructed as follows: "a public employer may discharge a public employee for any other reason, good or bad, fair or unfair, and you must not second guess that decision or permit any sympathy for the employee to lead you to substitute your own judgment for that of Defendant, even though you personally may not approve of the action taken and would have acted differently under the circumstances."  (Doc.  231, PAGEID 3481).  There is no

reason to suspect that the jury ignored or misconstrued this instruction while deliberating.

*See Denhof v. City of Grand Rapids*, 494 F.3d 534, 544 (6th Cir. 2007). Moreover, as another district court has recently observed:

> "Determining the weight and credibility of the evidence is the special province of the trier of fact," *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 856 (1982) . . . "One who fails to tell his story convincingly to the jury may not correct that failure" under Rule 50(b) "when his adversary has presented evidence on which a reasonable jury may reach the conclusion it did." *DMI*, 802 F.2d at 427.

*Magna Mirrors of Am., Inc. v. Samvardhana Motherson Reflectec Grp. Holdings Ltd*., No. 1:17-CV-77, 2023 WL 2742207, at *3 (W.D. Mich. Feb. 13, 2023); *see also Imwalle v. Reliance Med. Prod., Inc*., 515 F.3d 531, 549 (6th Cir. 2008) (explaining that "the task of weighing the evidence belongs to the jury, which was entitled to believe [the plaintiff's] testimony that [his employer] took retaliatory actions against him"). Here, a reasonable jury could reach the conclusion that Plaintiff's termination was in retaliation for requesting days off to observe the Jewish High Holy Days. Even though there was testimony to support Defendant's position that Plaintiff had difficulty getting along with him and his staff (Doc. 254, PAGEID 4447-4450), there was no evidence in the record that Defendant ever discussed these conflicts with Plaintiff, or that she was reprimanded for her conduct (See Doc. 254, PAGEID 4452).

Next, Defendant argues that the jury's verdict on the First Amendment retaliation claim is inconsistent with the verdict on her Equal Protection and state law claims because the jury verdict in favor of Defendant means that Plaintiff failed to prove intentional discrimination.

"The elements of a retaliation claim are similar but distinct from those of a

discrimination claim." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014).[3] "In order to establish an equal protection violation against a public employer in a section 1983 action, a plaintiff must show that the employer made an adverse employment decision 'with a discriminatory intent and purpose.'" *Boger v. Wayne County*, 950 F.2d 316, 324-25 (6th Cir.1991) (quoting *Charles v. Baesler*, 910 F.2d 1349, 1356-57 (6th Cir.1990)). Accordingly, at trial, Plaintiff was required to prove that discrimination was a determinative factor in her termination. *See Howard v. City of Southfield*, 97 F.3d 1452 (6th Cir. 1996). As for her claim of retaliation, Plaintiff was required to prove that her participation in protected activity played a role in the decision to terminate her. It was reasonable for the jury to conclude that Plaintiff had proven her termination was in retaliation for requesting days off to observe the Jewish High Holy Days; but Plaintiff failed to prove that she was terminated solely because of her religion. Therefore, the jury's verdict on Plaintiff's First Amendment retaliation claim is not inconsistent with the verdict on her Equal Protection and state law claims. Defendant's motion is denied to the extent it seeks judgment as a matter of law on Plaintiff's First Amendment retaliation claim.

## C. Back pay

The Court now turns to the award of back pay damages. As the Sixth Circuit has explained, "a court may render judgment as a matter of law as to some portion of a jury award if it is compelled by a legal rule or if there can be no genuine issue as to the correct calculation of damages." *Lulaj v. Wackenhut Corp.*, 512 F.3d 760, 766-67 (6th Cir. 2008) (citing *Westchester Fire Ins. Co. v. Hanley*, 284 F.2d 409, 418 (6th Cir.1960) (reducing

---

[3]While the Court cites to a case deciding a claim under Title VII, "[p]roving intentional discrimination for an equal protection claim brought under § 1983 requires the plaintiff to make the same showing required to prove a violation of Title VII." *Watson v. City of Cleveland*, 202 F. App'x 844, 856 (6th Cir. 2006) (citing *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir. 1988)).

an award by twenty-five percent as required by contract where it was clear the jury had failed to do so) and *EEOC v. Massey Yardley Chrysler Plymouth, Inc*., 117 F.3d 1244, 1252-53 (11th Cir. 1997) (correcting a jury's calculation of the back pay owed to the plaintiff where once liability was found there was no issue as to the amount of damages)).

To begin its analysis, the Court notes that "'[T]he basic purpose' of § 1983 damages is 'to compensate persons for injuries that are caused by the deprivation of constitutional rights.'" *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986) (quoting *Carey v. Piphus*, 435 U.S. 247, 254, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (emphasis omitted)). "Backpay is presumptively favored as a make-whole remedy and, absent exceptional circumstances, should be awarded to successful employment discrimination plaintiffs." *Gutzwiller v. Fenik*, 860 F.2d 1317, 1333 (6th Cir. 1988) (citing *Rasimas v. Michigan Department of Mental Health*, 714 F.2d 614, 626 (6th Cir. 1983)). Nevertheless, as the Sixth Circuit has explained:

> A plaintiff has a duty to mitigate his [or her] damages by seeking suitable employment with reasonable diligence. 42 U.S.C. § 2000e–5(g); *Ford Motor Co. v. E.E.O.C.*, 458 U.S. 219, 232, 102 S.Ct. 3057, 3065-66, 73 L.Ed.2d 721 (1982); *Whatley v. Skaggs Companies, Inc*., 707 F.2d 1129, 1138 (10th Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983). If an employee suffers a "wilful [*sic*] loss of earnings," however, the employer's backpay liability is tolled.

*Thurman v. Yellow Freight Sys., Inc*., 90 F.3d 1160, 1168-69 (6th Cir. 1996). An employee suffers a willful loss of earnings where the employee acted intentionally, willfully or committed a gross or egregious wrong. *Id*. at 1169. For instance, backpay will be tolled where an employee is fired for insubordination or a willful violation of company rules. *Id*. (citing *N.L.R.B. v. Ryder System Inc*., 983 F.2d 705, 712 (6th Cir. 1993) and *Brady v. Thurston Motor Lines, Inc*. 753 F.2d 1269 (4th Cir. 1985)); *see also Drummond*

9

v. Murray-Calloway Cnty. Pub. Hosp. Corp., No. 5:19-CV-42-TBR, 2021 WL 5407851, at *2 (W.D. Ky. Nov. 18, 2021) (explaining that employees are not only required to use reasonable diligence to find suitable replacement employment, but they are also required to use reasonable diligence to maintain that employment) (citing *Brady v. Thurston Motor Lines, Inc*., 753 F.2d 1269, 1277 (4th Cir. 1985)). It is the employer's burden to prove that backpay should be tolled. *Id*. (citing *N.L.R.B. v. Ryder System Inc*., 983 F.2d 705, 712 (6th Cir. 1993)).

Here, the jury found that Defendant had not proven by a preponderance of the evidence that Plaintiff failed to mitigate her damages. (Doc. 233, PAGEID 3509). However, Defendant maintains that Plaintiff's award of back pay should be tolled based on her failure to obtain and keep employment following her termination from Butler County. Defendant explains that in March of 2017, eight months after she was terminated from Butler County, Plaintiff found employment in the Wood County Prosecutor's Office at comparable pay and benefits, but she resigned from that position because she learned that she was about to be terminated.

If an employee voluntarily quits her job, her claim for back pay is tolled as a matter of law. *Lulaj*, 512 F.3d at 767. Here, Plaintiff testified that she resigned from her job in the Wood County Prosecutor's Office on June 5, 2017. (Doc. 249, PAGEID 4135-4136). However, even though Plaintiff signed a letter of resignation, she maintains that her resignation was not voluntary. (Doc. 249, PAGEID 4136). Plaintiff explains that Paul Dobson, the Wood County Prosecutor, called her into a meeting and gave her a choice of resigning or being terminated. (Doc. 249, PAGEID 4136). Plaintiff testified that she chose to resign but disputes the reasons Dobson provided her for terminating her. (Doc.

249, PAGEID 4137, 4146-4147).  Plaintiff testified that these reasons were: (1) failing to fit into the culture of the office, supported by an incident where a co-worker yelled at Plaintiff; and (2) failing to be truthful on her job application for the position in the Wood County Prosecutor's Office. (Doc. 249, PAGEID 4139-4140).  According to Plaintiff, the incident where the co-worker yelled at her was not a valid reason for her termination because her co-worker was "having a bad day."  (Doc. 249, PAGEID 4139).  However, at trial Plaintiff admitted that when she submitted her application for the position in the Wood County Prosecutor's Office she did not disclose that her last supervisor was Defendant. (Doc. 249, PAGEID 4141-4143).   Instead, Plaintiff's application stated that her last supervisor was Judge Oney, which Plaintiff admitted was not accurate.  (Doc. 249, PAGEID 4143).  Plaintiff claims she later informed Dobson that she had in fact been supervised by Defendant, but she also admitted during trial that the application included her signature and the following statement: "I understand that falsified statements or misleading information given in my application or interviews may result in discharge from employment regardless of when such information is discovered."  (Doc. 249, PAGEID 4143-4144; DX-15).

The Court concludes that based on the undisputed evidence presented at trial, Plaintiff either voluntarily quit her job with the Wood County Prosecutor's Office or was terminated from that job for making false or misleading statements on her job application. Accordingly, Plaintiff's backpay award shall reduced by the amount which Plaintiff earned or could have earned with reasonable diligence by being employed by the Wood County Prosecutor's Office.  *Accord Gutzwiller*, 860 F.2d at 1333 ("Any amount which Gutzwiller earned, or with reasonable diligence could have earned, after she was denied tenure shall

operate to reduce the backpay otherwise allowable.").  However, this does not mean that

Plaintiff's back pay award terminates when her employment with the Wood County

Prosecutor's Office ended:

> As the First Circuit has explained, "back pay is not permanently terminated
> when an employee is fired for misconduct or voluntarily quits interim
> employment. . . . Had there been no discrimination at employer A, the
> employee would never have come to work (or have been fired) from
> employer B. The discriminating employer (employer A) should not benefit
> from the windfall of not paying the salary differential when the employee is
> re-employed by employer C." *Johnson v. Spencer Press of Maine, Inc*., 364
> F.3d 368, 382 (1st Cir. 2004).  Other circuits are in agreement. *See
> E.E.O.C. v. Delight Wholesale Co*., 973 F.2d 664, 670 (8th Cir. 1992);
> *Thurston Motor*, 753 F.2d at 1278.

*Haydar v. Amazon Corp., LLC*, No. 2:16-CV-13662, 2019 WL 2865261, at *5 (E.D. Mich.

July 3, 2019).[4]  In other words, backpay is only tolled—not permanently terminated—from

the time Plaintiff's employment with the Wood County Prosecutor's Office ended until the

time Plaintiff was re-employed.

Defendant argues that Plaintiff's failure to obtain and keep employment after

leaving the Wood County Prosecutor's Office was due to a series of lawsuits filed by

Plaintiff.  It is undisputed that as a part of this lawsuit, Plaintiff not only sued Defendant,

but also brought claims against Michael Gmoser and Dan Ferguson based on allegations

---

[4]By way of example, the Court points to an application of this rule by the Fourth Circuit to
the facts in a case before it:

> Williams should receive back pay from the date of his discharge by Thurston until
> the date of his discharge by Standard Trucking; during such period Thurston
> should receive a credit of the wages actually earned. During the period of
> unemployment following the Standard Trucking discharge, Williams is entitled to
> no back pay. The back pay period commences to run again upon Williams'
> reemployment as a security guard; for such reemployment period, Thurston should
> receive a credit for the wages Williams would have earned had he remained at
> Standard Trucking at the wage rate effective upon that discharge, or the wages he
> did earn, whichever is greater.

*Brady v. Thurston Motor Lines, Inc.*, 753 F.2d 1269, 1280 (4th Cir. 1985).

that these two defendants made negative comments about Plaintiff's work. It is also undisputed that Plaintiff's lawsuit against Defendant garnered some press coverage. Plaintiff's expert, Dr. Kenneth Manges, testified that it was not uncommon for prospective employers to conduct an internet search of a candidate before making a hiring decision. (Doc. 257, PAGEID 4601). Dr. Manges explained that the news articles about the lawsuit Plaintiff filed against Defendant would create an obstacle for Plaintiff in her job search. (Doc. 257, PAGEID 4601). However, to toll the back pay award, Defendant must provide evidence that "substantially equivalent positions ... were available" and that "the claimant failed to use reasonable care and diligence in seeking such positions." *See Pittington v. Great Smoky Mountain Lumberjack Feud, LLC*, 880 F.3d 791, 801 (6th Cir. 2018) (quoting *Rasimas*, 714 F.2d at 624). Other than the media attention Plaintiff may have received from suing her former employer, Defendant has not pointed to evidence that Plaintiff failed to use reasonable care and diligence in seeking substantially equivalent positions. Moreover, "[a] claimant is only required to make reasonable efforts to mitigate damages, and is not held to the highest standards of diligence. The claimant's burden is not onerous, and does not require him [or her] to be successful in mitigation." *Rasimas*, 714 F.2d at 624; *see also Ford v. Nicks*, 866 F.2d 865, 873 (6th Cir.1989) ("An employee is not required to go to heroic lengths in attempting to mitigate his damages, but only to take reasonable steps to do so.").

Therefore, Defendant's motion is granted to the extent that it seeks judgment as a matter of law on the tolling of the award of backpay from the time Plaintiff left her employment with the Wood County Prosecutor's Office on June 5, 2017 until she opened up her own firm and became self-employed in 2018. Accordingly, Plaintiff's back pay

damages shall be reduced by $20,444.00.[5]

### D. Punitive damages

Defendant argues that Plaintiff's only support for her request for punitive damages was based on her theory that she was the subject of a conspiracy in the post-termination litigation of this case. In other words, it is not Defendant's position that the punitive damages awarded to Plaintiff were excessive, but instead, Defendant argues that punitive damages were "legally unavailable to Plaintiff due to insufficient evidence proffered at trial." *Accord Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 514 (6th Cir. 2016) (distinguishing *Sykes v. Anderson*, 625 F.3d 294, 322-23 (6th Cir. 2010) which applied a fact-intensive, three-factor test for determining whether remittitur is necessary to correct an excessive punitive damages award).[6]

In Section 1983 actions, a plaintiff can recover punitive damages if it is shown that the defendant engaged in behavior that was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."

---

[5]Based on the evidence presented at trial, Plaintiff earned $10,222.16 during the time she was employed at Wood County. (PX-135). This period of time (3/23/17 to 5/5/2017) is approximately three months. If Plaintiff had remained employed at Wood County until she became self-employed in 2018, she would have been employed for approximately another six months (6/5/17 to 12/31/2017). Plaintiff's back pay award must be tolled for this six-month period and Defendant should receive a credit for the wages Plaintiff would have earned had she remained employed at Wood County. This amount is approximately $20,444.00 (3 months @ $10,222.16 x 2 = 6 months of wages at Wood County).

[6]Defendant also takes the position that it was improper for the Court to instruct the jury on punitive damages. However, in *King v. Zamiara* the Sixth Circuit held:

> "[w]hen a defendant retaliates against a plaintiff's exercise of his First Amendment rights, the defendant necessarily acts with the purpose of infringing upon the plaintiff's federally protected rights. Thus, a defendant who has been found liable for First Amendment retaliation has engaged in conduct that warrants consideration of an award of punitive damages."

788 F.3d 207, 216 (6th Cir. 2015).

*Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)); *see also id*. at 548 n.2 (explaining that "evil motive or intent" is interchangeable with the term "malice."). "[E]vil motive or intent" requires "at a minimum . . . recklessness in its subjective form." *Id*. at 536. "[E]gregious or outrageous acts may serve as evidence supporting an inference of the requisite 'evil motive.'" *Id*. at 538.

Plaintiff's arguments in support of punitive damages are focused on showing that Defendant's behavior was motivated by evil motive or intent, versus Defendant's knowledge of her federally protected rights. In her response to Defendant's Motion for Judgment as a Matter of Law, Plaintiff argues that the jury's award of punitive damages is supported by evidence of the sudden and cruel nature of her termination and Defendant's disregard for her career and reputation. Similarly, in closing arguments, Plaintiff told the jury: "I think the evidence shows that there was malice or ill will or revengeful spirit towards me by the defendant in pursuit of the litigation as extensively as possible and to beat me down until I cry uncle." (Doc. 241, PAGEID 3648).

Based on the evidence presented at trial, a reasonable jury could not find that Plaintiff's termination was motivated by evil motive or intent. Plaintiff testified that after Defendant terminated Plaintiff, he offered to provide her with a letter of reference, but Plaintiff refused the offer because she thought it was "disingenuous." (Doc. 246, PAGEID 4060). In addition, it was undisputed that Defendant provided Plaintiff a "generic" letter of termination so nothing in the letter would prevent her from getting another job. (Doc. 254, PAGEID 4462-4463). While Plaintiff attempted to demonstrate that her lack of success at Wood County was the result of actions taken by Defendant, there is no

evidence of a connection between Defendant and the end of her employment with Wood County.[7]  Plaintiff certainly has had trouble finding and keeping jobs after leaving Butler County, but Plaintiff cannot simply rely on everything which followed her termination as proof that her termination was motived by evil motive or intent.  The proper inquiry is whether the evidence demonstrates egregious or outrageous behavior by the same person she accused of retaliatory discrimination.[8]

_____

[7]Plaintiff has attempted to show that Defendant had some connection to Michael Gmoser, the Butler County Prosecutor.  As part of this litigation, Plaintiff brought a substantive due process claim against Gmoser.  The basis of Plaintiff's claim was that Gmoser was contacted by Paul Dobson for an employment reference before Dobson hired Plaintiff for her job in the Wood County Prosecutor's Office, and the statements made by Gmoser damaged her liberty interest in her reputation.  However, even if Plaintiff was able to demonstrate a connection between Defendant and Gmoser, the Sixth Circuit affirmed the dismissal of the claim against Gmoser.  The Sixth Circuit explained:

> In short, Edelstein failed to offer evidence that Gmoser made a public statement that was detrimental to her reputation or that she was so stigmatized by Gmoser's non-public statements to Dobson that she was foreclosed from obtaining another job in the legal field.  She has thus failed to raise a triable issue of fact as to whether the statements deprived her of a protected liberty interest in her reputation, good name, honor, or integrity, or foreclosed future employment opportunities.

*Edelstein v. Gmoser*, No. 21-3292, 2022 WL 4272200, at *4 (6th Cir. Aug. 29, 2022).  It follows then that any alleged influence Defendant had on Gmoser did not impact Plaintiff's future employment opportunities.

[8]For example, in a retaliation claim brought pursuant to Title VII, the Sixth Circuit held:

> From the evidence adduced at trial, the jury could conclude that Wal–Mart engaged in the following pattern of behavior, which was egregious: after cleaning out her office, reducing her responsibilities, becoming harassingly unsupportive, and effectively forcing her to transfer to the jewelry department, managers used an undeserved written reprimand for arguably appropriate behavior (Jeffries's circulating a petition) and the previous retaliatory forced transfer as pretexts to prevent Jeffries's long-sought advancement even when the candidates who were actually promoted were two people with no personnel management experience at all, one of whom was a recent hire promoted in violation of Wal–Mart's own six-month rule.  All of this occurred despite Jeffries's repeated protestations and with the actual or tacit approval of District Manager Pouliot and, to a certain extent, Bentonville-based Regional Manager Roberts.  Viewing the evidence in the light most favorable to Jeffries, the jury could have concluded that Wal–Mart engaged in a pattern of calculated retaliatory conduct so egregious as to be in reckless disregard of Jeffries's right to be free from retaliation.

Similarly, Plaintiff told the jury in closing argument that as a part of this litigation, she had been "hammered by a machine, a team of attorneys and staff, lots of filings." (Doc. 241, PAGEID 3643). A court may award punitive damages when a party's conduct during the course of litigation is either frivolous or in bad faith. *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1215 (6th Cir.1988) (citing *Reynolds v. Pegler*, 223 F.2d 429 (2d Cir.1955); *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70 (2d Cir.), *cert. denied*, 479 U.S. 987, 107 S.Ct. 578, 93 L.Ed.2d 581 (1986)). However, a review of the record in this case in no way demonstrates that Defendant's conduct warrants this type of sanction. There is no evidence of abuse of process, or that Defendant's defense was contrived in bad faith. *See id.* While this litigation has continued for an extended period of time, there was extensive briefing on the dispositive motions, including two motions for reconsideration filed by Plaintiff. (See Docs. 42, 172). The jury trial could not be scheduled due to COVID restrictions. Therefore, Defendant's conduct during this litigation is an insufficient basis to support an award of punitive damages.

Based on the evidence presented at trial, a reasonable jury would not have a legally sufficient basis to find Plaintiff's termination was motivated by evil motive or intent. Accordingly, Defendant's motion is granted to the extent that it seeks judgment as a matter of law that Plaintiff is not entitled to an award of punitive damages.

E.    **New trial**

Defendant sets forth two additional grounds for a new trial which are not based on the sufficiency of the evidence.

---

*Jeffries v. Wal-Mart Stores, Inc.*, 15 F. App'x 252, 264-65 (6th Cir. 2001). Similar evidence was not presented to the jury in this case.

First, Defendant argues he is entitled to a new trial based on Plaintiff's prejudicial conduct during the trial: referencing facts not in evidence; making improper comments about defense counsel during closing argument; asking questions of her expert, Dr. Manges, which she reasonably should have known the answers to which would not be admissible; and presenting evidence which was excluded or should have been excluded.

"Misconduct by an attorney that results in prejudice may serve as a basis for a new trial. The burden of showing prejudice rests with the party seeking the new trial, and district courts have broad discretion in deciding whether to grant a motion for new trial." *Troyer v. T.John.E. Prods., Inc.*, 526 F. App'x 522, 525 (6th Cir. 2013) (quoting *Fuhr v. Sch. Dist. of Hazel Park*, 364 F.3d 753, 759 (6th Cir. 2004) (internal quotation marks and citation omitted)). The Court finds that Plaintiff engaged in improper conduct during the trial. The question is whether the misconduct resulted in prejudice to Defendant. As the Sixth Circuit has explained:

> Although prejudice that affects the fairness of a proceeding can certainly be grounds for a new trial, when "such prejudice is cured by instructions of the court, the motion for a new trial should be denied." *Clarksville–Montgomery County Sch. Sys. v. United States Gypsum Co*., 925 F.2d 993, 1002 (6th Cir.1991); *see also*, *e.g.*, *Smith v. Travelers Ins. Co.*, 438 F.2d 373, 375 (6th Cir.), *cert. denied*, 404 U.S. 832, 92 S.Ct. 79, 30 L.Ed.2d 62 (1971) (holding that in light of the curative instructions given by the district court and the context of the entire record, the improper comments of the plaintiff's attorney were not so prejudicial as to warrant a new trial); *Gandy v. Sullivan County*, 24 F.3d 861, 866 (6th Cir.1994) (reasoning that a new trial was not required because "[i]n sum, the two alleged errors were ameliorated by the jury charge at the close of the trial").

*Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1046-47 (6th Cir. 1996). During trial, the Court gave curative instructions on several occasions. For example, during the cross examination of Defendant, the Court interrupted Plaintiff's questioning:

Q. Okay. So that's different than what you testified here where you

witnessed barking orders or a direct constant manner, stomping around the office –

THE COURT: I have to interject myself here. If you're going to -- The jury will recall the question and the answer that was given by the witness as it relates to the terms "barking" and "stomping."

MS. EDELSTEIN: Okay.

(Doc. 253, PAGEID 4265-4266). During the re-cross examination of Defendant, the Court again interrupted Plaintiff's questioning:

THE COURT: Whose testimony is that?

MS. EDELSTEIN: That is the expert's testimony since Miss Barger -- or Miss Woeber asked him about the expert's testimony.

THE COURT: Not getting into that.

MS. WOEBER: Objection.

MS. EDELSTEIN: I'm trying to just refresh his memory.

THE COURT: We're not getting into it.

MS. EDELSTEIN: Okay. All right.

THE COURT: The opinion witness testified in this court, and the jury will recollect whatever the opinion witness said.

(Doc. 254, PAGEID 4482). The Court also reminded Plaintiff in front of the jury to only present evidence and not engage in argument. For instance, during Plaintiff's redirect of herself, the Court interrupted:

MS. EDELSTEIN: I testified on cross-examination regarding the John Wagner notes and what some of the terminology that John Wagner had written meant. I don't know why he wrote that, but I can state that --

THE COURT: Kim, that's a narrative. Just factually give a statement to the jury.

MS. EDELSTEIN: Sure. I just wanted to remind them.

THE COURT: But Kim, you don't throw in things like "I don't" -- that's closing argument.

MS. EDELSTEIN: Okay. Sure, Your Honor.

(Doc. 249, PAGEID 4159).  The Court interrupted on another occasion during Plaintiff's

redirect of herself:

THE COURT: Hang on a second. The comment you made about Kim Reynolds testified to that, that's argument you can make in front of the jury, but the jury will not consider that comment as evidence.

MS. EDELSTEIN: Correct. Because Kim Reynolds didn't hear it, so -- she did not hear it.

THE COURT: No, no, but you said she confirmed that you talked to her.

MS. EDELSTEIN: Yeah.

THE COURT: Well, that's argument. The jury --

MS. EDELSTEIN: Oh, I apologize, Your Honor.

THE COURT: You can argue that to the jury, but the jury will recall any testimony.

MS. EDELSTEIN: Thank you for clarifying that. Thank you.

(Doc. 254, PAGEID 4410).  In addition, the Court interrupted Plaintiff's closing argument

in front of the jury and instructed Plaintiff as follows:

THE COURT: Kim, that's not argument. Okay? Her deposition testimony is not in evidence in this case, just her present in-court testimony.

MS. EDELSTEIN: I apologize. I'm simply indicating that --

THE COURT: I know. But, I mean, you're using outside sources in your argument.

MS. EDELSTEIN: Okay.

(Doc. 241, PAGEID 3669-3670).

Regarding the questions Plaintiff posed to Dr. Manges during his direct

examination, the Court sustained every objection made by counsel for Defendant, save one instance.  (See Doc. 257, PAGEID 4562).  On multiple occasions, the Court explained the basis for the ruling in front of the jury.  For example:

> MS. WOEBER: Objection, Your Honor.  Excuse me, Mr. Manges.  Testifying as to facts that are not in the record.
>
> THE COURT: So far, I think that's correct. I don't recall this conversation.

(Doc. 257, PAGEID 4550).  On another occasion, there was the following exchange:

> Q. And do you have an opinion in general with regards to career trajectories for persons who were terminated? How does that affect their future?
>
> MS. WOEBER: Objection. Foundation.
>
> THE COURT: Yeah, Keith – I'm sorry. Ken, if it's based upon studies or workups you've done in the past, you can answer the question.  If you're just speculating, you cannot.  Okay.

(Doc. 257, PAGEID 4569).  Therefore, the Court finds that any prejudice created by Plaintiff by asking improper questions was cured by instructions of the Court and these questions are not a basis for granting a new trial.

With regard to the statements made in closing argument, the Sixth Circuit has instructed that a verdict may only be set aside "if there is a reasonable probability that the verdict was influenced by [the improper] argument[ ]." *Michigan First Credit Union v. Cumis Ins. Soc., Inc.*, 641 F.3d 240, 249 (6th Cir. 2011) (quoting *Bridgeport Music, Inc. v. Justin Combs Pub.*, 507 F.3d 470, 478 (6th Cir. 2007)).  Factors to consider in making this determination are: "the totality of the circumstances, including the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g. whether it is a close case), and the verdict itself."  *Id.* (quoting *City of Cleveland v.*

*Peter Kiewit Sons' Co*., 624 F.2d 749, 756 (6th Cir. 1980)).

When Plaintiff attempted to discuss an email from defense counsel during her closing argument, the following exchange occurred:

THE COURT: Time out. Wait a minute. Wait a minute. Could I see everybody sidebar for a second?

MS. EDELSTEIN: Sure.

--SIDEBAR CONFERENCE--

THE COURT: What are you saying? There's not one shred of evidence about an e-mail.

MS. EDELSTEIN: I did not introduce the e-mail because it belongs with Wood County. I don't have it. They have access to it. I've requested it. They never --

THE COURT: There's no evidence of that.

MS. EDELSTEIN: But I will retract that then and not talk about the e-mail, but she did reach out to me and then I got --

THE COURT: It's not in evidence, Kim.

MS. EDELSTEIN: All right, Your Honor.

THE COURT: You keep --

MS. EDELSTEIN: I understand.

THE COURT: No. I'm just -- look, you keep doing that. You keep discussing things that are not in evidence. They might be in your mind, but they're not in evidence. And I cautioned you before, and I'm going to instruct the jury that they are to disregard any comments you made about an e-mail. Okay?[9]

---

[9]Plaintiff had been cautioned by the Court out of the presence of the jury during the break between her closing argument and Defendant's closing argument:

. . . Kim, I just want to be clear on something. I know you've got a lot of the different hearings that are swirling around in your mind. I was wrong about David Washington, but I recognized right away that I made a mistake. But there are of lot of things -- not a lot. There are things you said that were not testified to in this case. Okay? I'm assuming that the other side has a chance to rebut that if they want to. But when you get to your final portion of closing argument, I will stop you if it's

MS. EDELSTEIN: Okay. Yes, Your Honor. I'm sorry.

THE COURT: Well --

MS. EDELSTEIN: I'm trying to just address her --

THE COURT: The way you address it is you say this is what the representations of the testimony was, this is how I recall the testimony. You don't start characterizing lawyer's conduct, behavior, things like that. It hasn't been that kind of a case. So, you know -- and I'm giving you way, way too much leeway on your impressions of what was going on versus what the evidence shows necessarily. So you stick to the evidence. I've given you a lot of leeway, but you're starting to push past those boundaries. Okay?

MS. EDELSTEIN: I apologize. I won't do it again.

THE COURT: Okay.

MS. WOEBER: Thank you.

--CONCLUSION OF SIDEBAR CONFERENCE--

THE COURT: Ladies and gentlemen, there is no evidence of any kind in the record about such an e-mail. You are to disregard any comments about that. Thank you.

Go ahead.

---

something I don't remember being in evidence or a misstatement of law. Okay? Just so you know.

MS. EDELSTEIN: All right. Yes, Your Honor. I apologize to the Court. I was under the impression that the closing could also include theories, extrapolations, and things like that –

THE COURT: I did not say a word about your theories, extrapolations, things like that. You made a couple of comments about different things that nobody testified to and I didn't see any documents on. I just kept my mouth shut because I've given you a fair amount of leeway, and they've also got a chance to point things out to the jury. But in the rebuttal, it's going to be rebuttal to what they said, not a whole second set of closing arguments.

MS. EDELSTEIN: Yes, Your Honor.

(Doc. 241, PAGEID 3649-3650).

(Doc. 241, PAGEID 3677-3678).  As explained above, in its final instructions to the jury, the Court instructed the jury that they "must not consider either party's opening and closing statements as evidence. Opening statements and closing arguments are not evidence. What is said in opening statements and what you will hear in closing arguments is intended to help you interpret the evidence, but it is not evidence." (Doc. 231, PAGEID 3466).  The Court finds that under the totality of the circumstances, there is not a reasonable probability that the verdict was influenced by the improper argument made by Plaintiff in her closing argument.  Therefore, this is not a basis for granting a new trial.

Next, Defendant argues he is entitled to a new trial because it was improper for the Court to give an adverse inference instruction to the jury.  The evidence at issue was Plaintiff's leave of absence slips from 2016.  Plaintiff testified that when she requested a copy of her personnel file from Butler County, there were no leave of absence slips from 2016, even though she remembered filling them out.  (Doc. 242, PAGEID 3800).  The Court's instruction to the jury related to this issue was as follows:

> You have heard testimony about evidence which has not been produced. Plaintiff has argued that this evidence was in Defendant's control and would have proven facts material to the matter in controversy. If you find that Defendant could have produced the evidence, and that the evidence was within his control, and that this evidence would have been material in deciding among the facts in dispute in this case, then you are permitted, but not required, to infer that the evidence would have been unfavorable to Defendant.

> In deciding whether to draw this inference, you should consider whether the evidence not produced would merely have duplicated other evidence already before you. You may also consider whether Defendant had a reason for not producing this evidence that was explained to your satisfaction. Again, any inference you decide to draw should be based on all of the facts and circumstances in this case.

(Doc. 231, PAGEID 3478).  Defendant argues that the instruction gave the jury a false

impression that Defendant destroyed the leave of absence slips or withheld the evidence from production.   However, Defendant explains that all that the "missing" documents would have shown was that Plaintiff took sick days in June and a vacation in May, neither of which was in dispute at trial.

A new trial is not required based on flaws in the jury instructions "unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." *Nolan v. Memphis City Sch*., 589 F.3d 257, 264 (6th Cir. 2009) (quoting *Arban v. West Pub. Corp*., 345 F.3d 390, 404 (6th Cir. 2003)).   "[E]ven erroneous instructions do not require reversal, unless the instructions are confusing, misleading, and prejudicial." *Troyer v. T.JohnE. Prods., Inc*., 526 F. App'x 522, 525 (6th Cir. 2013).

It was not clear from Plaintiff's testimony that the leave of absence slips had any relevance.  (Doc. 242, PAGEID 3798-3800).  According to Plaintiff, the leave had been approved by Defendant's predecessors.  (Doc. 242, PAGEID 3798).  It was not until Plaintiff's closing argument that it became apparent that Plaintiff was relying upon the missing paperwork to impeach the testimony of Defendant on a minor point.[10]  (Doc. 241, PAGEID 3604) ("They would have demonstrated that he knew I was Jewish before he yelled at me, because that's the only bit of evidence before he yelled at me that he knew

---

[10]When asked when he first learned that Plaintiff was Jewish and regularly took time off for the religious High Holidays, Defendant explained:

> It wasn't too long after I started, because I started March 14th, 2016. It would either have been at the end of March, beginning of April, somewhere in there. She requested if -- she asked if it was okay if she took a week off for Passover. She explained that Judge Oney let her do it. I said, "That's fine. I don't care." I didn't care. And it was never discussed after that. But that's the first time that there was an indication that, yes, she was of the Jewish faith and observed those holidays.

(Doc. 254, PAGEID 4418).

I was Jewish.  It's his testimony: I knew she was Jewish. I gave her Passover off.").

However, as Defendant has pointed out, there was evidence in the record that the leaves of absences were recorded elsewhere and there was no dispute surrounding these leaves of absences.  The Court finds that the clarifying and limiting language in the instruction itself demonstrates that the instruction was not prejudicial to Defendant.  The jury was only to consider the adverse inference if the evidence would have been material in deciding among the facts in dispute in this case; and the jury was to disregard the inference if the evidence would merely have duplicated other evidence.  Therefore, a new trial is not warranted on this basis.

## III.   CONCLUSION

Based on the foregoing, Defendant Judge Gregory Stephens' Motion for Judgment as a Matter of Law, or in the Alternative, Motion for a New Trial (Doc. 243) is **DENIED IN PART** and **GRANTED in PART**:

1. The Motion is GRANTED to the extent that the Clerk's Judgment (Doc. 234) shall be amended consistent with the Court's ruling herein: Plaintiff's back pay damages shall be reduced by $20,444.00; and Plaintiff is not entitled to an award of $35,000.00 in punitive damages; and

2. The Motion is DENIED to the extent that Defendant seeks a new trial.

**IT IS SO ORDERED.**

_/s/ Michael R. Barrett_
JUDGE MICHAEL R. BARRETT