<u>**NOT RECOMMENDED FOR PUBLICATION**</u>

Nos. 23-3205/24-3243

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

<div style="float:right; border:1px solid">

**FILED**

Aug 19, 2025

KELLY L. STEPHENS, Clerk

</div>

| | |
|---|---|
| KIMBERLY A. EDELSTEIN, | ) |
| | ) |
|     Plaintiff-Appellant [23-3205], | ) |
|     Cross-Appellee [24-3243], | ) |
| | ) |
| v. | ) |
| | ) |
| JUDGE GREG STEPHENS, Individually and in | ) |
| His Official Capacity, | )   ON APPEAL FROM THE UNITED |
| | )   STATES DISTRICT COURT FOR |
|     Defendant-Appellee [23-3205], | )   THE SOUTHERN DISTRICT OF |
|     Cross-Appellant [24-3243], | )   OHIO |
| | ) |
| and | ) |
| | ) |
| BUTLER COUNTY, OH; MICHAEL T. | ) |
| GMOSER, Individually and in His Official | ) |
| Capacity; DANNY L. FERGUSON, Individually | ) |
| and in His Official Capacity, | ) |
| | ) |
|     Defendants-Appellees [23-3205]. | ) |

O R D E R

Before: STRANCH, READLER, and MATHIS, Circuit Judges.

In these consolidated cross-appeals, Kimberly Edelstein, proceeding pro se, appeals the judgment in her civil rights suit following a partial jury verdict for defendant Judge Greg Stephens on her claim that Stephens terminated her employment on account of her religion, in violation of the Fourteenth Amendment's Equal Protection Clause and Ohio law. Stephens appeals various pre-trial and post-judgment rulings. This case has been referred to a panel of the court that, upon examination, unanimously agrees that oral argument is not needed. *See* Fed. R. App. P. 34(a). For the following reasons, we affirm.

Relevant Factual and Procedural Background

Edelstein is an attorney and former magistrate. Stephens is a Butler County, Ohio, common pleas judge. Edelstein worked as a member of Stephens's judicial staff from March 2016 until August 1, 2016. She alleged that Stephens was critical of her request to take time off to observe Jewish holidays. For example, on July 27, when Edelstein requested eight days off for the Jewish holidays in October, Stephens replied, "Holy cow. Eight days?" Edelstein alleged that Stephens terminated her without notice only four days later. During the August 1 termination meeting, at which Stephens, Edelstein, and judicial assistant Melina Barger were present, Stephens told Edelstein that he "need[s] [his] staff to be able to get along and you don't fit in." Edelstein maintains that Stephens terminated her on account of her religion and in retaliation for requesting days off to practice her religion.

Through an attorney, Edelstein sent a demand letter to Stephens, asserting that her termination was religiously motivated. Edelstein alleged that, as a result of the demand letter, Stephens made false and defamatory statements about Edelstein to other members of the bar and prospective employers, which impaired her ability to find a new job.

Edelstein did find a new job in March 2017, as an assistant prosecutor for Wood County. Not long after, on June 5, 2017, Edelstein left her Wood County position; as discussed below, the parties dispute whether Edelstein voluntarily resigned, was forced to resign, or was discharged. Several months later, in 2018, Edelstein became self-employed.

Edelstein then filed a charge with the Equal Employment Opportunity Commission and later sued Stephens, Butler County, Butler County Prosecutor Michael Gmoser, and Assistant Butler County Prosecutor Dan Ferguson under 42 U.S.C. § 1983, alleging that she was discriminated against on account of her religion and denied due process and equal protection, in violation of the Government Employee Rights Act of 1991, 42 U.S.C. § 2000e-16(c); the First and Fourteenth Amendments; and Ohio law. She also asserted claims of defamation (based on statements made by Stephens, Gmoser, and Ferguson), breach of contract, intentional infliction of emotional distress, promissory estoppel, and interference with a business relationship.

The defendants moved for partial dismissal, arguing that Edelstein failed to state a claim upon which relief can be granted as to almost all of her 21 claims.  The district court granted the motion in part, dismissing 11 counts.  The defendants then moved for summary judgment on the remaining counts.  The district court granted that motion in part, and Edelstein proceeded to a jury trial on her claims against Stephens for First Amendment retaliation, Fourteenth Amendment equal protection, and state-law discrimination.

Following a ten-day trial, the jury found for Stephens on the equal protection and discrimination claims and for Edelstein on the retaliation claim, awarding her $835,000 in back pay, $250,000 in compensatory damages, and $35,000 in punitive damages.  Edelstein appealed, and that appeal was docketed as Case No. 23-3205.

Stephens moved for judgment as a matter of law or, alternatively, a new trial.  The district court granted Stephens's motion in part, reducing the amount of back pay by $20,444 based on Edelstein's failure to mitigate, and finding that she was not entitled to any of the $35,000 in punitive damages.  Stephens filed a cross-appeal as to this ruling and the amended judgment, and that appeal was docketed as Case No. 24-3243.

In this appeal, Edelstein raises 13 arguments challenging various rulings made before, during, and after trial.  In his cross-appeal, Stephens counters Edelstein's arguments and raises four of his own.

Edelstein's Arguments

*Merging of Claims*

Edelstein first argues that the district court improperly "merged" her Fourteenth Amendment equal protection claim with her state-law discrimination claim because "the type of damages available [for each claim] are different."  We disagree.  Although the verdict form combined these two claims into one interrogatory, it allowed the jury to award Edelstein every type of damages available for the claims—namely, back pay, front pay, compensatory damages, and punitive damages.  And the claims are governed by the same substantive standards.  *See Voltz v. Erie County*, 617 F. App'x 417, 423 (6th Cir. 2015).  Edelstein simply has not shown that

combining her Fourteenth Amendment equal protection claim with her state-law discrimination claim on the verdict form prejudiced her, and therefore we reject her "merger" argument.

*Prejudicial Jury Instructions*

Next, Edelstein argues that the jury instructions were confusing and prejudicial and that they limited the independent opinions of the jury; she cited several examples of the allegedly improper instructions. For instance, she asserts that the instruction stating that Stephens was required to give "a nondiscriminatory reason for [his] decision to discharge [her]" in order to shift the evidentiary burden back to her improperly failed to state that the nondiscriminatory reason must have also been "legitimate," as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

"We will reverse a judgment based on inadequate jury instructions only if the instructions, viewed as a whole, were confusing, misleading and prejudicial." *Williams v. Eau Claire Pub. Schs.*, 397 F.3d 441, 445 (6th Cir. 2005) (citation modified). "In making that determination, we consider whether the instructions adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its decision." *Id.* (citation modified).

> In other words, a district court's refusal to give a jury instruction constitutes reversible error if: (1) the omitted instruction is a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; and (3) the failure to give the instruction impairs the requesting party's theory of the case.

*Id.* (citing *Webster v. Edward D. Jones & Co.*, 197 F.3d 815, 820 (6th Cir. 1999)).

Here, the instructions, viewed in their entirety, accurately articulated the law and the parties' theories of the case. Specifically, with respect to the instruction that omitted the word "legitimate," the instructions stated that "Defendant has given a nondiscriminatory reason for its decision to discharge Plaintiff" and properly instructed the jury that it "may consider whether Plaintiff has proven that Defendant's reason is merely pretext, or a cover-up, for discrimination." And the instructions accurately characterized the ultimate issue for the jury: "whether Plaintiff has proven that her religion was a determinative factor in Defendant's decision to discharge" her. In effect, the word "legitimate" was "substantially covered by other delivered charges." *Id.* at 445 (citing

*Webster*, 197 F.3d at 820); *see also Eaton v. Charter Township of Emmett*, 317 F. App'x 444, 447 (6th Cir. 2008) (rejecting plaintiffs' argument that the instructions "did not adequately inform the jury of the relevant considerations" regarding a component of her due process claim because they "adequately summarized the relevant legal principles governing [their] claim"). So the foregoing instruction and all others with which Edelstein takes issue, when viewed with the instructions as a whole, were not "confusing, misleading, and prejudicial" enough to warrant reversal. *Williams*, 397 F.3d at 445 (quotation omitted). In the end, Edelstein offers nothing but her own speculative, unsupported assertions that the instructions were prejudicial and skewed in favor of Stephens.

*Exclusion of Expert Witness*

Edelstein challenges the district court's exclusion of certain aspects of testimony by her expert, Dr. Kenneth Manges, by sustaining objections and prohibiting Dr. Manges from opining on the ultimate issue of whether there was religious discrimination in the workplace. We review the district court's evidentiary determinations, including those involving expert testimony, for an abuse of discretion. *Rheinfrank v. Abbott Lab'ys., Inc*., 680 F. App'x 369, 380 (6th Cir. 2017).

Federal Rule of Evidence 704 sets out a general rule that '[a]n opinion is not objectionable just because it embraces an ultimate issue.'" *Diaz v. United States*, 602 U.S. 526, 531 (2024) (alteration in original) (quoting Fed. R. Evid 704(a)). "Nonetheless, a witness may not testify to a legal conclusion." *Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 322 (6th Cir. 2014). Put another way, "expert witnesses may not tell the jury what result to reach on ultimate legal questions because such statements . . . invade the province of the jury." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 316 (6th Cir. 2019) (citation modified).

Here, in declining to allow Dr. Manges to testify as to "whether or not there was [religious] bias in the workplace," the district court stated that "[i]t's the ultimate conclusion for the jury to decide in this case." The court added that "the ultimate opinion expressed by Dr. Manges would not be helpful" because "[t]he jury is equally well-suited to make [the] determination [of whether there was discrimination in the workplace] based on the evidence." This was not an abuse of discretion. Edelstein sought to have Dr. Manges "testify as to whether [she] experienced

discrimination at the workplace." "[T]he term 'discrimination' has a specialized meaning in the law and in lay use the term has a distinctly less precise meaning." *Torres v. County of Oakland*, 758 F.2d 147, 151 (6th Cir. 1985) (citation omitted). The district court instructed the jury on the meaning of "discrimination," which appropriately allowed the *jury* to conclude whether Edelstein faced discrimination while employed by Stephens. Dr. Manges's proffered opinion as to whether Edelstein faced discrimination in the workplace was an "opin[ion] on the ultimate question of liability," which was "impermissible." *Babb*, 942 F.3d at 317 (cleaned up); *see also Sheridan v. E.I. DuPont de Nemours & Co*., 100 F.3d 1061, 1071 (3d Cir. 1996) (en banc) ("The role of determining whether the inference of discrimination is warranted must remain within the province of the jury, because a finding of discrimination is at bottom a determination of intent."). And although Edelstein argues that the district court abused its discretion by sustaining defense counsel's objections to Dr. Manges's testimony "on several aspects of discrimination in the workplace," she neither identifies any specific testimony nor explains how its exclusion prejudiced her. We therefore reject Edelstein's arguments regarding the exclusion of Dr. Manges's testimony.

*Inconsistent Verdict*

According to Edelstein, the cumulative effect of the foregoing alleged errors (the merger of claims, prejudicial jury instructions, and exclusion of Dr. Manges's testimony) "caused the jury to rule in an inconsistent fashion." Under Edelstein's logic, because the jury instructions allowed the jury to find in her favor on her First Amendment retaliation claim (i.e., because the instructions allowed the jury to find that Stephens retaliated against her for practicing her religion), the instructions should have allowed—but did not allow—the jury to find that Stephens also discriminated against her based on her religion when he terminated her for practicing her religion. But, as set forth above, the jury instructions properly articulated the relevant legal principles and adequately conveyed to the jury the burdens that each party bore. Moreover, the First Amendment retaliation "standard is distinct from the adverse-action standard used in traditional employment discrimination claims." *Benison v. Ross*, 765 F.3d 649, 659 (6th Cir. 2014) (citation modified).

Edelstein's argument that the district court's instructions "[c]onfus[ed] the jury" is thus unsupported by the record.

*Denial of Motion in Limine*

Edelstein argues that the district court improperly denied her motion in limine and excluded exhibit PX18, a letter from Stephens's counsel to Edelstein in response to her demand letter.  The letter was entitled "Confidential Settlement Communication protected by Ohio and Federal Rule of Evidence 408" and, according to Edelstein, it "denie[d] that the termination was based on discrimination and . . . set[] forth the alleged basis for Stephens' decision to terminate Edelstein." Edelstein argues that the letter "was not a settlement letter" under Rule 408 but instead was "an admission against interest under [Federal Rule of Evidence] 804(b)(3)."  Alternatively, she argues that the letter was admissible under Rule 408 because it was offered to prove "motive, prejudice, bias, intent, [or] knowledge of protected activities," which bears directly on the issue of pretext.

Rule 408 precludes admission of, among other things, "conduct or a statement made during compromise negotiations about the claim" to "prove or disprove the validity or amount of a disputed claim."  Fed. R. Evid. 408(a)(2).  We review for an abuse of discretion a district court's denial of a motion in limine and decision to exclude evidence under Rule 408.  *Branham v. Thomas M. Cooley L. Sch.*, 689 F.3d 558, 562 (6th Cir. 2012); *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 797 (6th Cir. 2007).

No abuse of discretion occurred here.  According to Edelstein, her attorney's demand letter notified Stephens that he "had committed a discriminatory termination against Edelstein" and sought "a resolution to the illegal action."  In response, Stephens's counsel sent Edelstein a letter stating that "no lawsuit is necessary nor would it be warranted" given that Stephens's decision to terminate Edelstein "had absolutely nothing to do with her Jewish faith or request for time off to observe the high holy days in October."  The letter stated that, instead, Stephens terminated Edelstein because she had poor time-management skills, failed to comply with a simple request to tidy up her office, caused an office disruption while facing a filing deadline, and got into a kerfuffle with judicial assistant Barger.  These are the types of "factual admissions made in the course of

settlement negotiations" that Rule 408 excludes from introduction at trial.  *Eid v. Saint-Gobain Abrasives, Inc.*, 377 F. App'x 438, 445 (6th Cir. 2010) (citing Rule 408 advisory comm. notes (1972)).

The letter at issue here mirrors the one found to be inadmissible under Rule 408 in *Eid.* There, the plaintiff argued that a letter in which the defendant stated that "its internal investigation revealed no evidence that discrimination influenced [the plaintiff's] termination," sent in response to her letter that sought to resolve her claims "amicably before resort to litigation," did not fall under Rule 408 in part because it "was not part of a compromise negotiation." *Id*. at 439–40, 444. We rejected this argument, reasoning that the defendant's "hardline position"—i.e., denial of discrimination—did not remove the letter from the scope of Rule 408. *Id*. at 444.  We reasoned that "[a] party will often adopt a hardline position at the beginning of negotiations in order to extract greater concessions from an opponent" and that "[i]t would ignore the realities of negotiation to hold that such a position necessarily means that the parties are not engaged in compromise negotiations." *Id*.  Here, too, Stephens's denial of discrimination and explanation for why he terminated Edelstein were made in direct response to the demand letter from Edelstein's counsel in an effort to avoid litigation.  So we reject Edelstein's argument that the letter does not qualify as a settlement communication under Rule 408.

We also reject Edelstein's argument that the letter was admissible under Rule 408(b), which permits admission of settlement evidence "for another purpose, such as proving a witness's bias or prejudice."  At trial, Edelstein argued that she needed the letter admitted so that she could meet her burden to prove, "by a preponderance of the evidence . . . the discrimination," i.e., that Stephens's stated reasons for her termination were pretextual.  In other words, Edelstein sought to admit the letter to "prove or disprove the validity . . . of a disputed claim," Fed. R. Evid. 408(a), as opposed to the purpose of proving Stephens's bias or prejudice, Fed. R. Evid. 408(b).  The district court therefore did not abuse its discretion in concluding that PX18 was inadmissible under Rule 408.

*Denial of Motion in Limine Regarding Titles*

Edelstein challenges the district court's denial of her motion in limine that asked for the district court to refer to Stephens as "Mr. Stephens" as opposed to "Judge Stephens" at trial.

In denying Edelstein's motion, the district court thoroughly considered the parties' arguments and distinguished the case law relied upon by Edelstein by emphasizing that Stephens is a current, not former, judge and is a party to, not witness in, this case. The court rejected Edelstein's speculative argument that referring to Stephens as Judge Stephens would lend him more credence and give the impression that he is truthful. It reasoned that "the jury is going to know that [Stephens] was a seated judge when [the events giving rise to this action] occurred" and "that he's still a seated judge when he's testifying." And, critically, Edelstein sued Stephens in his official capacity as a judge. Moreover, the district court stated that the parties could explore any potential prejudice in voir dire and could proffer jury instruction to clear up any unfair perceptions based on Stephens's title. Indeed, the jury instructions directed the jury to consider this action as one "between persons of equal standing in the community, of equal worth, and holding the same or similar stations of life." Under these circumstances, the district court did not abuse its discretion in denying Edelstein's motion in limine.

*Allowing Certain Testimony*

Edelstein argues that the district court erroneously allowed Wood County Prosecutor Paul Dobson to testify about her employment with and discharge from his office. The district court allowed Dobson to testify to counter Edelstein's claim that her employment with the Wood County Prosecutor's Office should be disregarded for purposes of her duty to mitigate damages. Edelstein asserts that she had insufficient notice that Dobson would testify and that his testimony was "unnecessarily burdensome" and "prejudicially expanded the scope of the litigation."

The district court did not abuse its discretion in allowing Dobson to testify. *See Milczak v. Gen. Motors, LLC*, 102 F.4th 772, 781 (6th Cir. 2024). Edelstein opened the door to testimony about her employment with the Wood County Prosecutor's Office when she and her expert witness testified that the Office discharged her without reason. *See Beck v. Haik*, 377 F.3d 624, 642 (6th

Cir. 2004). Moreover, Edelstein admits that "Dobson's testimony was unsuccessful in supporting Stephens' claim that [she] failed to mitigate her damages by resigning from Wood County." Her argument that Dobson's testimony should have been excluded therefore is without merit.

*Dismissal of Butler County and Vicarious Liability*

In her amended complaint, Edelstein alleged that Butler County violated her Fourteenth Amendment equal protection rights and sought to hold the county liable under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978). She also alleged that Butler County defamed her and sought to hold the county vicariously liable. The district court dismissed these claims as meritless and terminated Butler County from the suit accordingly. Edelstein now argues that the district court (1) improperly dismissed Butler County and (2) erred in rejecting her proposed vicarious-liability instruction with respect to Butler County. As set forth below, neither argument has merit.

As to Butler County's dismissal, Edelstein focuses on how, under Ohio Rev. Code § 4112.02(A), "a political-subdivision employer" is inherently subject "to vicarious liability for the discriminatory acts of its employees." *Hauser v. Dayton Police Dep't*, 17 N.E.3d 554, 559 (Ohio 2014). But Edelstein did not raise a discrimination claim specifically under § 4112.02*(A)*. Instead, in her amended complaint, she cited "§[] 4112.02 et seq." generally and alleged "Unlawful Termination Based on Religious Discrimination." Critically, under that heading, Edelstein did not mention Butler County. Instead, she emphasized Stephens' alleged misconduct and expressly claimed that Stephens' misconduct is prohibited by and actionable under "§[] 4112.02(I)" and "§[] 4112.02(J)." Those two subsections apply to individuals, not employers. *See Hauser*, 17 N.E.3d at 559 ("An individual political-subdivision employee still faces liability under other provisions of [§] 4112.02 that expressly impose liability, including the aiding-and-abetting provision in [§] 4112.02(J)."). Because Butler County was not named a defendant in connection with Edelstein's state-law discrimination claim under § 4112.02, she cannot now argue that the county should have remained in the case for vicarious-liability purposes. *See Asberry v. Bisig*, 70 F. App'x 247, 249 (6th Cir. 2003) (order) (affirming dismissal of complaint as the plaintiff "listed

the names of the defendants in the caption of his complaint, but did not identify them or explain their roles in the body of his complaint").

As to the jury instructions, Edelstein agreed with the district court at a pre-trial conference that the jury was "not supposed to consider" whether Stephens or Butler County would ultimately be financially responsible for Stephens's alleged unlawful conduct. A party "cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course." *Peak v. Kubota Tractor Corp.*, 559 F. App'x 517, 526 (6th Cir. 2014) (quotation omitted). Edelstein's jury-instruction argument therefore fails.

*Failure to Include Cat's Paw Jury Instruction*

Further challenging the jury instructions, Edelstein argues that the district court improperly rejected her proposed jury instruction regarding a "cat's paw" theory of liability. "'[C]at's paw' refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Bose v. Bea*, 947 F.3d 983, 989 (6th Cir. 2020) (quoting *EEOC v. BCI Coca-Cola Bottling Co. of L.A.*, 450 F.3d 476, 484 (10th Cir. 2006)). Edelstein asserts that, "[u]nder the Cat's Paw Theory, Stephens 'taking Barger's side' is indicative of the influence Barger had over Stephens."

In rejecting Edelstein's proposed jury instruction, the district court explained that it considered her arguments but that the evidence did not support a cat's paw instruction. Indeed, as aptly stated by Stephens, "Edelstein does not point to any biased language or conduct of Barger of which Stephens was aware before he decided to terminate" Edelstein. She merely points to evidence that, according to her, shows that Stephens and Barger were friends and that Stephens trusted and relied on Barger. This is insufficient to compel a jury instruction on the cat's paw theory. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011) (noting that cat's paw plaintiff needs evidence that "a supervisor" "perform[ed] an act motivated by [illegal] animus" that was "*intended* to cause an adverse action" and that was "a proximate cause of the ultimate employment action"). The district court therefore did not abuse its discretion in rejecting Edelstein's proposed jury instruction.

*Exclusion of Stephens's Discovery Responses*

Edelstein argues that the district court erroneously excluded several of Stephens's discovery responses from trial, which prevented the jury from assessing the alleged discrepancies in Stephens's stated reasons for terminating her.

Fatal to Edelstein's argument is her failure to identify in her opening brief any specific discovery response that should have been admitted. *See El-Moussa v.* Holder, 569 F.3d 250, 257 (6th Cir. 2009). Even if we consider the few examples cited in her reply brief (e.g., Stephen's purported "admissions about the lack of documentation or hard evidence to support his allegation that there were continuous problems with Edelstein,") *cf. Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010), Edelstein still has not shown that an abuse of discretion occurred. The district court admitted into evidence the discovery responses that were addressed during Stephens's examination. If Edelstein wanted the jury to see any of Stephens's other discovery responses that she claims support her theory of pretext, then she should have—and could have—introduced them during Stephens's cross-examination. She did not.

*Challenge to Verdict Form – Back Pay*

Next, Edelstein argues that the district court "mistakenly indicated in Instructions regarding damages that damages should be calculated for front and back pay if there is a finding in favor of [her] in any of her three claims." According to Edelstein, the verdict form incorrectly stated that the jury could award front and back pay for her First Amendment retaliation claim because only compensatory and punitive damages are available for that type of claim. In other words, Edelstein maintains that the verdict form "mistakenly carried the damage category from the Employment Claim over to the [First Amendment retaliation] claim."

Despite the foregoing arguments, Edelstein concedes that the error on the verdict form is "minor," "does not 'manifest plain injustice,'" and "did not cause the jury to draw any ultimate conclusions as to liability" so as to warrant a new trial. Instead, she merely claims that the "misclassification of the award has tax and other legal implications." Insofar as Edelstein has neither argued nor shown that the purported error affected the outcome of her trial, she cannot

show that the district court abused its discretion in its drafting of the verdict form.  *See Davis v. City of Memphis Fire Dep't*, 576 F. App'x 464, 467 (6th Cir. 2014).

*Reduction of Back Pay*

Edelstein also argues that the district court erred in reducing the amount of back pay on the ground that she failed to mitigate her damages.

"We review a . . . decision not to award back pay for abuse of discretion."  *United States v. City of Warren*, 138 F.3d 1083, 1097 (6th Cir. 1998).  Back pay includes "the wages or salary that an employee should have received but did not because of an employer's unlawful action."  *Id*. at 730 n.3 (citation modified).  But "where an employee suffers a willful loss of earnings"—which lies "where the employee's misconduct was gross or egregious"—then "the employer's back pay liability is tolled."  *NLRB v. Jackson Hosp. Corp.*, 669 F.3d 784, 788 (6th Cir. 2012) (citation modified).

In reducing Edelstein's back pay, the district court determined that, although the jury found that Stephens had not shown that Edelstein failed to mitigate her damages, back pay should be tolled because she failed to maintain employment after her termination from the Butler County Court of Common Pleas.  The court explained that Edelstein had either voluntarily resigned or was discharged from the Wood County Prosecutor's Office when it was discovered that she made a misrepresentation on her application for employment—namely, that she failed to disclose that Stephens was her former supervisor.  Edelstein raises several arguments in an attempt to counter this conclusion, but, as set forth below, none holds any weight.

First, Edelstein argues that the evidence showed that her loss of employment from the Wood County Prosecutor's Office was (1) involuntary because she was told to resign and (2) unrelated to her employment application insofar as, during her interview, she explained to Dobson that she had worked for Stephens.  But Edelstein does not dispute that she initially failed to disclose that she had worked for Stephens on her employment application, which she signed understanding that "falsified statements or misleading information given in [the] application or interviews may result in discharge from employment."  Furthermore, Dobson testified that an

"accumulation of . . . issues"—including the misrepresentation on Edelstein's employment application—led to his decision to terminate her. And although Edelstein speculates that Dobson's stated reasons for terminating her (namely, the misrepresentation) were fabricated, she offers no evidence to support her assertion. Simply put, the evidence supports the district court's conclusion that Edelstein either resigned or was discharged because she had made a willful misrepresentation on her employment application.

Second, Edelstein argues that the district court applied an incorrect standard by requiring that Stephens show only that she failed to use "reasonable diligence to find and maintain employment," as opposed to showing that she either voluntarily left her job at Wood County or was discharged "due to her own gross or egregious conduct." But as just discussed, the district court reasonably determined that Edelstein's loss of employment from the Wood County Prosecutor's Office was "willful"—i.e., gross or egregious. *See Jackson Hosp.*, 669 F.3d at 788. Insofar as the district court did not abuse its discretion in reducing Edelstein's back pay under the "gross or egregious" standard, she cannot show that the failure to apply the less-culpable standard entitles her to any relief.

Third, Edelstein argues that the back-pay reduction was contrary to law because she sought "suitable employment with reasonable diligence" after leaving the Wood County Prosecutor's Office. But in granting Stephens's motion to toll the back-pay award only in part, the district court expressly found that Stephens "has not pointed to evidence that [Edelstein] failed to use reasonable care and diligence in seeking substantially equivalent positions." So her argument is misguided.

In short, Edelstein has not shown that the district court abused its discretion when it reduced the amount of Edelstein's back pay by $20,444.

*Rejection of Punitive Damages Award*

Finally, Edelstein argues that the district court's rejection of the jury's punitive damages award was not supported by the facts or law.

We review de novo the district court's rejection of punitive damages based on insufficiency of the evidence. *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 318–19 (6th Cir. 2011). "Punitive

damages are appropriate in a § 1983 action 'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

In declining to award punitive damages, the district court determined that, based on the trial evidence, a reasonable jury could not find that Edelstein's termination was motivated by Stephens's "evil motive or intent." The court pointed to evidence that Stephens provided Edelstein with only a "generic" letter of termination (as opposed to one that might prevent her from obtaining employment elsewhere) and had offered to provide Edelstein with a letter of reference. In addition, the court rejected as speculative Edelstein's claim that Stephens contributed to her being discharged from the Wood County Prosecutor's Office. Inasmuch as these determinations are supported by the record, Edelstein cannot show that the court erred.

Edelstein argues that the district court improperly applied *King*'s "evil motive or intent" standard after the jury had awarded punitive damages based on the less-stringent "malicious or in reckless disregard" standard found in the jury instructions. Her argument falls flat because any difference between "malice" and "evil motive or intent" is "inconsequential" in the punitive-damages context. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 548 n.* (1999) (Stevens, J., concurring in part and dissenting in part); *see also Jeffries v. Wal-Mart Stores, Inc.*, 15 F. App'x 252, 268 (6th Cir. 2001) (Bell, C.D.J., concurring in part and dissenting in part). And, as the district court pointed out, it was Edelstein herself who made the malice prong dispositive by "focus[ing]" her "arguments in support of punitive damages . . . on showing that [Stephens]'s behavior was motivated by evil motive or intent," rather than on his "knowledge of her federally protected rights" or any reckless disregard thereof. The district court therefore did not err in declining to award Edelstein punitive damages.

<u>Stephens's Arguments</u>

*Denial of Post-Judgment Motion*

Stephens challenges the denial of his motion for judgment as a matter of law or for a new trial, in which he argued that the evidence did not support the jury's verdict against him on Edelstein's First Amendment retaliation claim.

We review de novo the denial of a motion for judgment as a matter of law, which "may not be granted unless reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Ford v. County of Grand Traverse*, 535 F.3d 483, 494 (6th Cir. 2008) (quotation omitted). We do not "weigh the evidence, pass on the credibility of witnesses, or substitute [our] judgment for that of the jury." *Id.* (quotation omitted). We review for an abuse of discretion the denial of a motion for a new trial. *Caudill Seed & Warehouse Co. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 379 (6th Cir. 2022) (per curiam). "A new trial is warranted when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Id.* (quotation omitted).

To establish a First Amendment retaliation claim under § 1983, a plaintiff may establish a prima facie case by showing (1) that she engaged in a constitutionally protected activity, (2) that the employer "took an adverse action against her that would deter a person of ordinary firmness from continuing to engage" in that conduct, and (3) "a causal connection . . . between the protected [activity] and the adverse employment action." *Buddenberg v. Weisdack*, 939 F.3d 732, 739 (6th Cir. 2019). "If the plaintiff establishes this prima facie case, the defendant[] can avoid liability by showing that [he] would have taken the same action even in the absence of the protected conduct." *Wenk v. O'Reilly*, 783 F.3d 585, 593 (6th Cir. 2015) (citation modified). "Unlike in the *McDonnell Douglas* burden-shifting framework, the burden does not shift back to a plaintiff to show pretext in First Amendment retaliation claims." *Id.* at 594 (quotation omitted).

Stephens argues that Edelstein failed to prove the causation element and that he would have taken the same action even in the absence of Edelstein's protected conduct. He maintains that "the

evidence does not support the jury's finding that [he] terminated Edelstein in retaliation for exercising her Jewish faith" and instead demands a finding that he had "legitimate, nondiscriminatory grounds for terminating Edelstein: personality conflicts with [him] and his staff and her resistance/refusal to adhere to [his] changes in office policy."

But the jury found a retaliatory termination, and Stephens has failed to show that the verdict is against the weight of the evidence presented at trial or that, when viewing such evidence most favorably to Edelstein, reasonable minds would necessarily reach a different conclusion.  *See Caudill*, 53 F.4th at 379; *Ford*, 535 F.3d at 494.  The evidence showed that Stephens discharged Edelstein on August 1, 2016, just four days after she requested eight days off to observe Jewish holidays in October.  When an employer takes an adverse action very soon after learning of an employee's protected activity, the temporal proximity alone may be sufficient to establish the causation element.  *See Savage v. Fed. Express Corp.*, 856 F.3d 440, 448 (6th Cir. 2017); *Dye v. Off. of the Racing Comm'n*, 702 F.3d 286, 305–06 (6th Cir. 2012).

And there was other evidence to allow the jury to draw an inference of retaliation.  For example, Edelstein presented evidence that her personnel record lacked documentation about her purported inability to fit in and adapt to office changes that Stephens maintains were the reasons for her termination.  Indeed, as the district court aptly noted, "there was no evidence in the record that [Stephens] ever discussed these [reasons] with [Edelstein], or that she was reprimanded for her conduct."  Although Stephens testified and presented evidence that he decided to discharge Edelstein because she had conflicts with staff members and was unadaptable, the jury was entitled to disbelieve his testimony and conclude that his motivation was in fact retaliatory.

In short, the evidence that Stephens retaliated against Edelstein was not so lacking as to warrant disturbing the jury's verdict.  The district court therefore properly denied Stephens's post-judgment motion as it relates to his liability on Edelstein's First Amendment retaliation claim.

*Adverse-Inference Instruction*

Stephens argues that the district court abused its discretion by giving an adverse-inference instruction based on the alleged spoliation of evidence.  Edelstein presented evidence that certain

leave-of-absence slips from 2016 were excluded from her personnel file and argued that their exclusion could be "a coverup for a discriminatory termination."  Over defense counsel's objection, the district court included an adverse-inference instruction that, "[i]f you find that defendant could have produced the evidence," i.e., the entire personnel file, "and that the evidence was within his control and that this evidence would have been material in deciding among the facts in dispute in this case, then you are permitted, but not required, to infer that the evidence would have been unfavorable to defendant."  The instruction further stated that, "[i]n deciding whether to draw this inference, you should consider whether the evidence not produced would merely have duplicated other evidence already before you.  You may also consider whether the defendant had a reason for not producing this evidence that was explained to your satisfaction."

We review a district court's decision to give an adverse-inference instruction for an abuse of discretion.  *See Ouza v. City of Dearborn Heights*, 969 F.3d 265, 285 (6th Cir. 2020).  "An adverse-inference instruction based on the destruction of evidence" is warranted if the party seeking it shows

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Id*.  (citation modified).

In its order denying Stephens's post-judgment motion, the district court agreed that "there was evidence in the record that the leaves of absences were recorded elsewhere and there was no dispute surrounding these leaves of absences."  But the court ultimately concluded that "the clarifying and limiting language in the instruction itself demonstrates that the instruction was not prejudicial to" Stephens.  We, too, agree that Stephens's failure to establish prejudice renders any error in the adverse-inference instruction harmless.  *See, e.g.*, *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 822 (6th Cir. 2000) (stating that erroneous jury instructions are subject to harmless-error review); *Williams*, 397 F.3d at 445. Indeed, the jury found in favor of Stephens on the discrimination claims—i.e., the claims to which Edelstein argued the missing leave-of-absence

Nos. 23-3205/24-3243
- 19 -

sheets were relevant. "[B]ecause harmless error resolves the issue, we do not need to decide whether the [adverse-inference] jury instruction was faulty" or unwarranted in this case. *Bash v. Textron Fin. Corp. (In re Fair Fin. Co.)*, 13 F.4th 547, 559 (6th Cir. 2021). The district court therefore did not abuse its discretion in denying Stephens's motion for a new trial based on the allegedly erroneous instruction. *See Ouza*, 969 F.3d at 285; *Caudill*, 53 F.4th at 379.

*Improper Application of Mitigation Standard*

Next, Stephens argues that back pay should have been tolled after Edelstein left the Wood County Prosecutor's Office and then offset by what she would have earned there when she subsequently opened her own firm. To refresh: the jury awarded Edelstein $835,000 in back pay, and the district court reduced that figure "by the amount which [Edelstein] earned or could have earned with reasonable diligence by being employed by the Wood County Prosecutor's Office." But the court also determined that "backpay is only tolled—not permanently terminated—from the time [Edelstein's] employment with the Wood County Prosecutor's Office ended until the time [she] was re-employed" through self-employment. In the end, the district court reduced the back pay award by $20,444 (i.e., the amount Edelstein would have earned in the six-month period from when she left the Wood County Prosecutor's Office until she obtained new employment).

According to Stephens, the district court should have offset the back pay award by what Edelstein would have earned had she not lost her employment with the Wood County Prosecutor's Office. In other words, Stephens argues that back pay should have been awarded "only during the time Edelstein was unemployed before being hired by Wood County." He relies on *Thurman v. Yellow Freight Sys., Inc.*, a Title VII case in which we held that an employer's back pay liability is tolled where the employee suffers a "wilful loss of earnings." 90 F.3d 1160, 1168 (6th Cir. 1996). But nothing in *Thurman* or any other case from this circuit supports Stephens's argument that he "was entitled to an offset of Edelstein's Wood County compensation from any backpay liability" from "the time Edelstein was terminated by Wood County." Indeed, Stephens agreed that "the trial court correctly concluded that backpay does not terminate permanently when the plaintiff fails to responsibly maintain employment." And the district court appropriately tolled

back pay from the time Edelstein willfully left her employment with the Wood County Prosecutor's Office until the time she began self-employment several months later. *See EEOC v. Delight Wholesale Co*., 973 F.2d 664, 670 (8th Cir. 1992) ("[T]he district court properly tolled the back pay award during the period between each voluntary quit and her next full-time permanent position."). In other words, no abuse of discretion occurred. *See Howe*, 801 F.3d at 744.

*Edelstein's Prejudicial Misconduct*

Finally, Stephens argues that Edelstein's recurring misconduct throughout trial prejudiced him and warranted a new trial. He asserts that Edelstein repeatedly (1) referenced facts not in evidence, (2) made improper comments about defense counsel during closing arguments, and (3) asked Dr. Manges questions that she knew would elicit inadmissible evidence. The district court agreed that Edelstein engaged in improper conduct but determined that, in view of curative jury instructions, Stephens failed to show that he suffered prejudice.

As an initial matter, we reject Edelstein's argument that Stephens waived these arguments because he did not raise any objections at trial. Stephens raised them in his post-judgment motion, which is sufficient to preserve the arguments for appellate review. *See Caudill*, 53 F.4th at 378.

When prejudice affecting the fairness of a trial is cured by jury instructions, a motion for a new trial based on such prejudice should be denied. *Holmes v. City of Massillon*, 78 F.3d 1041, 1046–47 (6th Cir. 1996). Here, throughout trial, the district court gave such curative instructions on several occasions. For example, when Edelstein attempted to make an argument during her redirect examination of herself, the district court stopped her and stated that "the jury will not consider that comment as evidence." The district court similarly asked the jury to disregard arguments and comments that Edelstein had made about defense counsel during closing arguments. In addition, the district court ensured that Edelstein did not refer to evidence outside of the record during her closing argument and direct examination of Dr. Manges. And the final written jury instructions provided that the jury "must not consider either party's opening and closing statements as evidence . . . . What is said in opening statements and what you will hear in closing arguments is intended to help you interpret the evidence, but it is not evidence."

Stephens maintains that the district court's instructions did not cure the prejudice. We disagree. A jury is presumed to follow curative instructions "unless there is an overwhelming probability that they were ignored." *United States v. Jaffal*, 79 F.4th 582, 600 (6th Cir. 2023) (citation modified). Stephens has not shown such an overwhelming probability here. We conclude, rather, that the district court's repeated, clear, and careful jury instructions throughout the proceedings and in the final written instructions were adequate to remedy any prejudice resulting from Edelstein's misconduct. The district court therefore did not abuse its discretion in denying Stephens's request for a new trial based on Edelstein's misconduct. *See Caudill*, 53 F.4th at 379.

For all of the foregoing reasons, we **AFFIRM** the district court's judgment.

ENTERED BY ORDER OF THE COURT

Kelly L. Stephens, Clerk

# United States Court of Appeals for the Sixth Circuit

**U.S. Mail Notice of Docket Activity**

The following transaction was filed on 08/19/2025.

**Case Name:**   Kimberly Edelstein v. Greg Stephens, et al
**Case Number:**   23-3205

**Docket Text:**
ORDER filed: We AFFIRM the district court's judgment. Mandate to issue, decision not for
publication, pursuant to FRAP 34(a)(2)(C). Jane Branstetter Stranch, Circuit Judge; Chad A.
Readler, Circuit Judge and Andre B. Mathis, Circuit Judge. [23-3205, 24-3243]

**The following documents(s) are associated with this transaction:**
Document Description:   Order

**Notice will be sent to:**

Ms. Kimberly A. Edelstein
1751 W. 72nd Place
Indianapolis, IN 46260

**A copy of this notice will be issued to:**

Mr. Cooper David Bowen
Mr. Richard W. Nagel
Ms. Linda L. Woeber